IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | CASE NO. 1:26-CV-09480 |
| v. | ) | |
| EVERPLAY LABS LIMITED, | ) | |
| Defendant. | ) | |

**DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY JUDGMENT**

Defendant Everplay Labs Limited ("Defendant" or "Everplay"), by its undersigned attorneys, submits this Answer and Defenses and Counterclaims in response to the Complaint for Declaratory Judgment of Plaintiffs OMZZ Trading Co., Limited ("OMZZ") and Ningbo UnionMax Technology Co., Ltd. ("UnionMax," and together with OMZZ, "Plaintiffs"). Defendant denies all allegations in Plaintiffs' Complaint except those specifically admitted below. This pleading is based upon Defendant's knowledge of its own activities, and upon information and belief as to the activities of others.

## NATURE OF THE ACTION

1. This is an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq., seeking a declaration that the claims of U.S. Patent No. 12,551,811 (the "'811 patent") are invalid. A true and correct copy of the '811 patent is attached as Exhibit 1.

**ANSWER:** Defendant admits that the Complaint purports to state an action for declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, 35 U.S.C. § 1 et seq., seeking a declaration that the claims of U.S. Patent No. 12,551,811 (the "'811 patent") are invalid. Defendant admits that Exhibit 1, attached to the

Complaint, appears to be a copy of the ’811 patent. Defendant denies any remaining allegations of this paragraph.

2. Plaintiffs sell children’s magnetic fort-building play panel sets on the Amazon.com marketplace under the “Umoving” brand, including the “Umoving Deluxe Magnetic Fort Building Panels Kit” 24-piece set, offered under Amazon Standard Identification Number (“ASIN”) B0F1F8XFQ6, and the “Umoving 20-Piece Magnetic Fort Building Kit,” offered under ASIN B0F1FC6SHD (together, the “Accused Products”).

**ANSWER:** Defendant admits Plaintiffs sell children’s magnetic fort-building play panel sets on the Amazon.com marketplace. Defendant admits Plaintiffs sells a product described as the “Umoving Deluxe Magnetic Fort Building Panels Kit” 24-piece set, offered under Amazon Standard Identification Number (“ASIN”) B0F1F8XFQ6, and a product described as the “Umoving 20-Piece Magnetic Fort Building Kit,” offered under ASIN B0F1FC6SHD (together, the “Accused Products”). Defendant denies any remaining allegations of this paragraph.

3. Everplay is the assignee of the ’811 patent and sells competing magnetic play-panel products under the “Superspace” brand.

**ANSWER:** Defendant admits it is the assignee of the ’811 patent. Defendant admits that it sells magnetic play-panel products under the “Superspace” brand. Defendant admits that its magnetic play-panel products compete Plaintiffs’ magnetic play-panel products compete with customers and sales.

4. On or about July 2, 2026, Everplay executed and submitted an Amazon Patent Evaluation Express (“APEX”) agreement asserting claim 1 of the ’811 patent against the Accused Products’ listings. A true and correct copy of the APEX agreement is attached as Exhibit 2. Under Amazon’s APEX procedures, Everplay’s submission will result in the automatic removal of Plaintiffs’ listings unless Plaintiffs opt into the APEX evaluation, resolve the accusation with Everplay, or file an action for declaratory judgment.

**ANSWER:** Defendant admits it executed and submitted an Amazon Patent Evaluation Express (“APEX”) agreement asserting claim 1 of the ’811 patent against the Accused Products’ listings. Defendant admits that Exhibit 2, attached to the Complaint, appears to be a copy of the APEX agreement. Defendant states that allegations concerning Amazons’ APEX procedures states legal conclusions to which no response is required. To the extent a response is required, Defendant

admits, on information and belief, that refusal to participate in APEX procedures may result in removal of a product listing. Defendant denies any remaining allegations of this paragraph.

5. Everplay's extra-judicial enforcement campaign has placed Plaintiffs' lawful business under imminent threat. Plaintiffs accordingly bring this action to establish that the '811 patent is invalid.

**ANSWER:** Defendant denies Plaintiffs are engaged in lawful business. Defendant denies the '811 patent is invalid. Defendant denies any remaining allegations of this paragraph.

## THE PARTIES

6. Plaintiff OMZZ Trading Co., Limited is a limited company organized under the laws of Hong Kong, with its principal place of business at Room D6377, 4/F, Spinners Industrial Building Phase 5, 760 Cheung Sha Wan Road, Lai Chi Kok, Hong Kong. OMZZ is the Amazon seller of record and account holder for the Amazon listings of the Accused Products, through which the Accused Products are offered for sale and sold to consumers in the United States. Plaintiff Ningbo UnionMax Technology Co., Ltd. is a limited company organized under the laws of the People's Republic of China, with its principal place of business at Hedong Village, Xiaying Sub-district, Yinzhou District, Ningbo, Zhejiang, China. UnionMax is an affiliate of OMZZ and is engaged in the development and supply of the Accused Products sold under the Umoving brand.

**ANSWER:** Defendant admits, on information and belief, that OMZZ is the Amazon seller of record and account holder for the Amazon listings of the Accused Products. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies the same.

7. On information and belief, Defendant Everplay Labs Limited is a private limited company organized under the laws of England and Wales, with its registered office at 20-22 Wenlock Road, London N1 7GU, United Kingdom.

**ANSWER:** Defendant admits Everplay Labs Limited is a private limited company organized under the laws of England and Wales. Defendant denies any remaining allegations of this paragraph.

8. On information and belief, Everplay is the owner by assignment of the '811 patent and identified itself as the patent owner in the APEX agreement.

**ANSWER:** Defendant admits that it is the owner by assignment of the '811 patent and identified itself as the patent owner in the APEX agreement.

9. On information and belief, Everplay sells and offers to sell its "Superspace" magnetic play-panel products to consumers throughout the United States, including in Illinois and this District, through Amazon.com, through its own website, and through its United States subsidiary, Everplay Learning Labs Inc., and has enrolled its "Superspace" brand in Amazon's Brand Registry.

**ANSWER:** Defendant admits that it sells and offers to sell its "Superspace" magnetic play-panel products to consumers throughout the United States, including in Illinois and this District, through Amazon.com, through its own website, and through its United States subsidiary, Everplay Learning Labs Inc., and has enrolled its "Superspace" brand in Amazon's Brand Registry.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 because the action arises under the patent laws of the United States and seeks declaratory relief with respect to an actual controversy within the Court's jurisdiction.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant admits that this Court has subject-matter jurisdiction for the claims and counterclaims asserted in this action. Defendant denies any remaining allegations of this paragraph.

11. An immediate, real, and justiciable controversy exists between Plaintiffs and Everplay concerning the alleged infringement and the validity of the '811 patent, as evidenced by Everplay's APEX submission targeting the Accused Products' listings and the imminent removal of those listings. *See SnapPower v. Lighting Defense Group*, 100 F.4th 1371 (Fed. Cir. 2024).

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant admits a justiciable controversy exists between it and Plaintiffs as to the alleged infringement and the validity of the '811 patent. Defendant denies an APEX submission, in and of itself, necessarily establishes an immediate, real, and justiciable controversy. Defendant denies *SnapPower v. Lighting Defense Group*, 100 F.4th 1371 (Fed. Cir. 2024), relates to subject-matter jurisdiction. Defendant denies any remaining allegations of this paragraph.

12. This Court has personal jurisdiction over Everplay under Federal Rule of Civil Procedure 4(k)(2). Plaintiffs' claims arise under federal law. On information and belief, Everplay,

a United Kingdom company, is not subject to the general jurisdiction of the courts of any single state. Exercising jurisdiction over Everplay comports with due process because Everplay has purposefully directed its activities at the United States as a whole, including by (a) obtaining and asserting a United States patent; (b) executing and submitting the APEX agreement to invoke Amazon's processes against Plaintiffs' listings on the United States Amazon.com marketplace, with the intent and foreseeable effect of removing those listings from United States commerce; and (c) on information and belief, selling and offering its Superspace products throughout the United States, directly and through its United States subsidiary. See *SnapPower*, 100 F.4th at 1376 –79.; see also *Shenzhen Wanfan Tech. Co. v. Orbital Structures Pty Ltd.*, No. 23-cv-2330, 2024 WL 325339 (N.D. Ill. Jan. 29, 2024) (sustaining personal jurisdiction under Rule 4(k)(2) over a foreign rights holder whose infringement complaints to Amazon caused the removal of a Chinese seller's listings, and holding that venue is proper in any judicial district under 28 U.S.C. § 1391(c)(3)).

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant does not contest this Court exercising personal jurisdiction over it for purposes of this action only. Defendant denies any remaining allegations of this paragraph.

13. In addition and in the alternative, this Court has specific personal jurisdiction over Everplay because Everplay's extra-judicial patent-enforcement activities were directed at listings through which the Accused Products are offered and sold to consumers in Illinois and this District, with intended and foreseeable effects in Illinois, and because, on information and belief, Everplay regularly sells and offers its Superspace products to consumers in Illinois and this District through Amazon.com and other channels and derives revenue from those sales.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant does not contest this Court exercising personal jurisdiction over it for purposes of this action only. Defendant denies any remaining allegations of this paragraph.

14. Venue is proper in this District under 28 U.S.C. § 1391(b)(3) and (c)(3) because Everplay is not resident in the United States and may therefore be sued in any judicial district.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant does not contest venue in this district for purposes of this action only. Defendant denies any remaining allegations of this paragraph.

15. This action is properly filed in the Eastern Division of this District.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant does not contest venue in this division of this district for purposes of this action only. Defendant denies any remaining allegations of this paragraph.

## FACTUAL BACKGROUND

### A. Plaintiffs and the Accused Products

16. Plaintiffs design and sell consumer products for children under the Umoving brand, including the Accused Products — magnetic fort-building play panel sets that allow children to build walk-in forts, playhouses, tunnels, and similar structures.

**ANSWER:** Defendant admits Plaintiffs sell the Accused Product, which are children's magnetic fort-building play panel sets. Defendant denies "Umoving" is a brand. Defendant denies any remaining allegations of this paragraph.

17. Each Accused Product consists of a set of large, lightweight felt play panels in shapes such as rectangles and trapezoids, made of felt produced from recycled plastic bottles. The panels attach to one another magnetically, edge to edge. The panels are sold fully assembled and are used as supplied: a user does not assemble the panels from component parts, and the Accused Products include no clips.

**ANSWER:** Defendant admits the Accused Products including large, lightweight felt play panels in various shapes. Defendant admits the panels may attach to one another magnetically. The remaining allegations of this paragraph state legal conclusions to which no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies the same.

18. Plaintiffs have invested substantially in developing their products, their Amazon listings, and their customer goodwill. The listings for the Accused Products are a significant channel of Plaintiffs' United States sales.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies the same.

### B. The '811 Patent

19. The '811 patent, titled "System, Panel and Method," issued on February 17, 2026, from U.S. Application No. 18/023,046, which is the national-stage entry of International Application No. PCT/EP2021/073530, filed on August 25, 2021. The '811 patent claims priority

to United Kingdom applications filed on August 25, 2020, and January 29, 2021.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant admits the ’811 patent is entitled, titled “System, Panel and Method,” issued on February 17, 2026, from U.S. Application No. 18/023,046, which is the national-stage entry of International Application No. PCT/EP2021/073530, filed on August 25, 2021. Defendant admits the ’811 patent claims priority to United Kingdom applications filed on August 25, 2020, and January 29, 2021.

20. The ’811 patent contains 24 claims, of which claims 1, 17, 22, and 24 are independent.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant admits the ’811 patent contains 24 claims, of which claims 1, 17, 22, and 24 are independent.

21. The ’811 patent issued only after repeated rejections. The examiner rejected the pending claims as obvious under 35 U.S.C. § 103 in a non-final Office action dated March 18, 2025, and again in a final Office action dated August 5, 2025, each time over prior art that included U.S. Patent Publication No. 2016/0184727 (“Ornstein”). The claims were allowed on November 12, 2025, only after the applicant amended the claims following the final rejection and added new claim 24.

**ANSWER:** Defendant admits the United States Patent and Trademark Office found the claims of the ’811 patent to be patentable over the prior art, including U.S. Patent Publication No. 2016/0184727 (“Ornstein”), and allowed the claims on November 12, 2025. Defendant states the prosecution history file for the application that issued as the ’811 patent speaks for itself, and Defendant denies the allegations of this paragraph to the extent they are inconsistent with the prosecution history. Defendant denies any remaining allegations of this paragraph.

22. Claim 1 of the ’811 patent is directed to a “system for building a play area” and requires, among other limitations: “two or more panels,” each comprising “a plurality of connectors” defining first and second recesses at first and second ends; “a plurality of magnets,” each “positioned in a connector of the plurality of connectors such that the magnet is able to rotate”; “a plurality of dowels,” including a first dowel received within recesses of two different connectors and a second dowel “angled with respect to the first dowel”; and a wherein clause requiring that, when an edge of a first panel is brought towards an edge of a second panel “from

any direction," at least one magnet in each panel "orientates" such that a magnetic connection is formed.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant states that claim 1 of the '811 patent includes the language quoted in this paragraph, among other language that this paragraph omits. Defendant denies any remaining allegations of this paragraph.

### C. Everplay's APEX Submission Against Plaintiffs' Listings

23. APEX is an extra-judicial program administered by Amazon under which a patent owner may pay a third-party evaluator to assess whether listed products infringe one claim of a United States utility patent. The APEX evaluation involves no discovery, no hearing, and no live testimony, and it does not permit the accused seller to challenge the validity of the asserted patent. On information and belief, under Amazon's APEX procedures, once the patent owner submits an executed APEX agreement identifying the accused listings, Amazon notifies the targeted seller, and the accused listings are removed at the end of a twenty-one (21) day period unless, within that period, the seller (a) resolves the claim with the patent owner, (b) agrees to participate in the APEX evaluation, or (c) files an action for declaratory judgment and notifies Amazon of the filing. The only way for a seller to obtain a full adjudication of its defenses — including patent invalidity — without losing its listings is to file a declaratory judgment action.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant admits that APEX is a program administered by Amazon under which independent evaluators may assess infringement of a patent by an accused product. Defendant denies any remaining allegations of this paragraph.

24. On or about July 2, 2026, Everplay, acting through its counsel, executed the APEX agreement attached as Exhibit 2, identifying itself as the patent owner, asserting claim 1 of the '811 patent, and listing ASINs B0F1F8XFQ6 and B0F1FC6SHD — OMZZ's listings — as the accused products.

**ANSWER:** Defendant admits it executed an APEX agreement, identified itself as the owner of the '811 patent, and alleged that at least claim 1 of the '811 patent is infringed by at least the products identified by ASINs B0F1F8XFQ6 and B0F1FC6SHD. Defendant denies any remaining allegations of this paragraph.

25. On or about July 6, 2026, Amazon notified OMZZ of Everplay's APEX submission. Absent Plaintiffs' participation in the APEX evaluation, a resolution with Everplay, or the filing of this action, Amazon will remove the accused listings.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph, and therefore denies the same.

26. Removal of the listings would cause Plaintiffs immediate and serious harm, including lost sales, loss of search ranking and "buy box" placement that cannot readily be regained, harm to seller-account health, and loss of customer goodwill.

**ANSWER:** Defendant denies the allegations of this paragraph, including because Plaintiffs selling and offering for sale of the Accused Products, which infringe the '811 patent, does not entitle Plaintiffs to sale, search ranking, "buy box" placement, seller-account health, or customer goodwill. Defendant denies any remaining allegations of this paragraph.

### D. An Actual and Justiciable Controversy Exists

27. By its APEX submission, Everplay has affirmatively asserted that the Accused Products infringe claim 1 of the '811 patent and has invoked a process designed to remove Plaintiffs' products from the marketplace. Plaintiffs deny infringement and contend the claims are invalid. The parties therefore have adverse legal interests in a dispute that is definite, concrete, real, and immediate, and a judicial declaration will resolve it.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant admits that it asserts that the Accused Products infringe claim 1 of the '811 patent and invoked a process to remove Plaintiffs' products from the Amazon.com marketplace. Defendant admits a justiciable controversy exists between it and Plaintiffs as to the alleged infringement and the validity of the '811 patent. Defendant denies an APEX submission, in and of itself, necessarily establishes an immediate, real, and justiciable controversy. Defendant denies any remaining allegations of this paragraph.

## COUNT I
## (Declaratory Judgment of Invalidity of the '811 Patent)

28. Plaintiffs restate and incorporate by reference the allegations of the preceding paragraphs.

**ANSWER:** Defendant repeats and incorporates by reference its responses to the foregoing paragraphs as if fully stated herein.

29. The claims of the '811 patent are invalid for failure to comply with one or more

conditions of patentability set forth in Title 35 of the United States Code, including §§ 102, 103, and/or 112.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of this paragraph.

30. By way of example and without limitation, the claims of the ’811 patent are invalid as obvious under 35 U.S.C. § 103 over combinations of prior art — each reference published or issued before the earliest claimed priority date of the ’811 patent — including: U.S. Patent Publication No. 2016/0184727 (“Ornstein”); Chinese Patent Publication No. CN 104274984 A (“Wei”); International Publication No. WO 2006/112679 A1 (“Kim”); European Patent Publication No. EP 3549649 A1 (“Anu”); U.S. Patent No. 6,843,700 (“Glickman”); U.S. Patent No. 9,873,061 (“Cheung”); U.S. Patent No. 5,070,665 (“Marrin”); U.S. Patent Publication No. 2013/0072314 (“Goodman”); U.S. Patent No. 5,393,232 (“Haines”); and U.S. Patent No. 9,314,707.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of this paragraph.

31. For example, claim 1 is obvious over Ornstein in view of Wei and Kim. Ornstein discloses magnetic building tiles for constructing play structures — including play houses, castles, and forts — whose frames are formed of connectable segments housing magnets and whose tiles connect edge to edge at any angle. Wei discloses connectors having recesses at opposite ends, each recess housing a magnet, with elongated main pipes — dowels — received in the recesses of adjacent connectors, including at angles, to form three-dimensional frames. Kim discloses magnets held in receiving portions of a connecting member by mounting caps such that the magnets rotate and self-orient when another magnet approaches, the caps defining holes that receive rod bodies. A person of ordinary skill in the art would have been motivated to combine these teachings — applying Kim’s rotatable, self-orienting magnet mountings to the panel frames of Ornstein and Wei to solve the familiar problem of mismatched magnetic poles — with a reasonable expectation of success, yielding the system recited in claim 1.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of this paragraph.

32. The remaining limitations of the dependent claims and of independent claims 17, 22, and 24 are likewise disclosed by this art: Anu discloses diametrically magnetized cylindrical magnets that freely rotate to self-orient; Marrin discloses play panels whose fabric covers form sleeves over frame members; Goodman discloses life-size playhouse structures; Haines discloses display boards magnetically carried on panels; Glickman discloses rod-and-connector construction sets with sockets at right and acute angles; and Cheung discloses construction members carrying rotatable magnet assemblies at opposite ends. Kim’s mounting caps — each holding a magnet and defining a hole that receives a rod — disclose the “clip” limitations of claims 5 and 24, the very feature the examiner had identified as allegedly allowable during examination.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of this paragraph.

33. Plaintiffs' prior-art investigation is ongoing, and Plaintiffs reserve the right to rely on additional prior art and grounds of invalidity. Plaintiffs will provide detailed invalidity contentions in accordance with the Local Patent Rules of this District, including LPR 2.6, at the time those rules require.

**ANSWER:** This paragraph states legal conclusions to which no response is required. To the extent a response is required, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this paragraph, and therefore denies the same.

34. Plaintiffs are entitled to a judgment declaring that the claims of the '811 patent are invalid.

**ANSWER:** Defendant denies the allegations of this paragraph.

## RESPONSE TO PRAYER FOR RELIEF

Defendant denies that Plaintiffs are entitled to any of the relief set forth in their "Prayer for Relief" in the Complaint, or to any other relief for any remaining allegations set forth in the Complaint.

## AFFIRMATIVE DEFENSES

Without any admission as to burden of proof and expressly reserving its right to assert any additional defenses or counterclaims that discovery may reveal, Defendant states the following defenses:

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

* * *

Defendant expressly reserves the right to supplement and/or amend its Answer to Plaintiffs' Complaint, including but not limited to supplementation and/or amendment of its defenses and amplifications of denials, as additional facts and information become known through the course of this case and discovery.

## COUNTERCLAIMS

Counterclaim-Plaintiff Everplay Labs Limited ("Everplay"), for its counterclaims against Counterclaim-Defendants OMZZ Trading Co., Limited ("OMZZ") and Ningbo UnionMax Technology Co., Ltd. ("UnionMax," and together with OMZZ, "Counterclaim-Defendants"), alleges as follows:

1. These counterclaim actions are for infringement of U.S. Patent No. 12,551,811 ("the '811 patent"), trademark infringement in violation of 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A) and common law, and unfair competition.

## THE PARTIES

2. Everplay is a private limited company organized under the laws of England and Wales, with its registered office at 167-169 Great Portland Street, London, W1W 5PF, England.

3. On information and belief, OMZZ is a limited company organized under the laws of Hong Kong, with its principal place of business at Room D6377, 4/F, Spinners Industrial Building Phase 5, 760 Cheung Sha Wan Road, Lai Chi Kok, Hong Kong. On information and belief, OMZZ is the Amazon seller of record and account holder for the Amazon listings of the Accused Products, through which the Accused Products are offered for sale and sold to consumers in the United States.

4. On information and belief, UnionMax is a limited company organized under the laws of the People's Republic of China, with its principal place of business at Hedong Village, Xiaying Sub-district, Yinzhou District, Ningbo, Zhejiang, China. On information and belief, UnionMax is an affiliate of OMZZ and is engaged in the development and supply of the Accused Products, including importation into the United States.

## JURISDICTION AND VENUE

5. This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

6. This Court has supplemental jurisdiction over Plaintiffs' common law claims under 28 U.S.C. § 1367 in that the pendent claims raised herein are integrally related and intertwined with the federal claims raised herein.

7. Counterclaim-Defendants have availed themselves of this forum in this action and are therefore subject to personal jurisdiction in this district. The Court therefore has personal jurisdiction over Counterclaim-Defendants based on the filing of this lawsuit in this jurisdiction.

8. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b). Venue is also proper as a result of Counterclaim-Defendants choice of forum in filing this lawsuit in this forum, and Counterclaim-Defendants have further waived any objection to venue in this District based on the filing of this lawsuit in this forum.

## BACKGROUND

### Everplay's Pioneering SUPERSPACE Magnetic Fort-Building Play Panel Sets

9. Like many of the most creative inventions, Everplay traces its origins to everyday people solving problems in their daily lives. The inventors—Anthony ("Ant") Erwin and Craig Spencer—are New Zealanders, friends since college, who between them had a houseful of children who were continually boxing off areas in the living room, claiming them as their own territory, and building spaces out of couch cushions, pillows, and cardboard boxes.

10. Where others might be overwhelmed trying to keep up with the mess, the inventors saw a problem that could be solved. Children do not want a playhouse an adult has already finished for them. They want to build the space, at their own scale, and then get inside it. Nothing on the market let them do that. Plus, as Dads, the inventors wanted something big that would let them physically play with their kids indoors and also encourage creativity and imaginative play. There was a gap in the market there, too. Magnetic tiles existed, but at tabletop size. Play tents existed

but arrived pre-shaped. There were no life-size, child-buildable, reconfigurable magnetic tiles. Everplay created the product category.

11. Creating large, child-accessible magnetic tiles is not obvious and requires overcoming challenges. For example, a fixed magnet has a fixed polarity. Two panels brought together the wrong way repel. Holding a panel the size of a door and discovering it pushes away is the end of the play session. As magnets scale in size, the reaction is stronger. High-strength magnets near small children can present a serious hazard in the toy industry. Plus, at large scale the physics changes and so new materials and compositions are required.

12. Everplay's answer was to stop fixing the magnet in place, but to let it rotate. House a diametrically magnetized cylindrical magnet inside a connector with room to turn, and the magnet itself resolves the polarity. Bring two panels together from any orientation and each magnet spins to present the pole that attracts. There is no wrong way to hold the panel, and the same housing keeps the magnets from being pried out by a child. Everplay also identified the right mix of materials, ensuring the tiles were light enough for children to use, but also strong enough to maintain structural support; and that the magnets were strong enough to secure the tiles to each other while being able to be separated and manipulated by a child. Balancing these, and other, considerations required different ideas and different engineering solutions. Just scaling up tabletop plastic magnetic tiles would not work as the physical weight of plastic at life-size scale would be too heavy for magnets to hold properly and plastic panels would be dangerous if they fell on a child, so the inventors went through many iterations of different materials and compositions for the panels for over 18 months with a lot of trial and error and eventually engineered a combination of new lightweight materials that worked which included durable but lightweight "eco felt" (made from recycled plastic bottles), a lightweight frame and corner clips that simultaneously held the magnets and let them spin and connect in any direction while also holding the frame together.

13. Everplay brought its invention to market by way of a Kickstarter campaign that closed with more than 3000 backers pledging more $1 million, with roughly three-quarters of that committed in the first three days. The invention was an instant hit with consumers and the industry, collecting numerous trade awards including: (a) Gold at the Core77 Design Awards (2022) Gold; (b) top prize in the Children's Product category at the 2022 IDEA / Industrial Designers Society of America; (c) twice winning the NAPPA (National Parenting Product Award) in 2022, and again 2026; (d) being selected as a Finalist for Playset of the Year at 2023 Toy of the Year Awards by The Toy Foundation (US); and (e) winning one of the best "Helping Kids Learn, Play and Grow" prizes for the 2026 Good Housekeeping awards. The invention also accumulated significant press from outlets including the New York Times Wirecutter, Forbes, TODAY, CBS, USA Today, Yahoo, and BuzzFeed.

14. Everplay continues to put huge time, effort and money towards building its brand reputation via marketing (including a large social media presence), advertising spend, PR, its own Website with 1,200+ positive reviews with an average of 4.5+ stars and great customer service via dedicated teams.

15. On top of this, Everplay continuously develops its product via research and development at considerable cost. Everplay has also invested considerable time and money into developing resources that expand the use of Superspace panels from being just a toy into a preeminent educational resource for the classroom and home school setting. Everplay is aware through experience and study that significant educational gains are made from children learning through play and have developed lesson plans that use the patented Superspace panels to link back to many Common Core standards in math and science. Alongside this Everplay has developed Numeracy packs of felt numbers and shapes that stick to the panels though a hook-fastening system, as well as a Literacy pack using phoneme-based structured literacy programs, developed

by the inventors to align with Orton-Gillingham and ISME. Everplay has worked with occupational therapists and psychologists to develop activity guides and case studies for neurodivergent learners. In all cases, the physical properties of the panels lend themselves to an educational setting where building at body-sized scale involves gross motor movement, bilateral coordination and motor planning, while the soft, non-reflective felt surface avoids the glare and hard edges associated with conventional plastic construction toys. This has the advantage of imposing a less sensory load which can be overwhelming for some learners.

16. Since the outset, Everplay has invested in protecting its invention and intellectual property. It filed its priority application on August 25, 2020. When the first United States utility patent finally issued on February 17, 2026, Everplay was diligent in asserting it against infringers, including Counterclaim-Defendants, against which it initiated intellectual property dispute procedures with Amazon within months.

17. Everplay offers for sale and sells children’s magnetic fort-building play panel sets that embody the inventions of the ’811 patent.

18. Everplay has gone to great lengths to protect their interests in its children’s magnetic fort-building play panel sets, as well as the ’811 patent. No one other than Everplay and its distributors are authorized to manufacture, import, export, advertise, offer for sale, or sell any product covered by the ’811 patent.

19. Everplay and Counterclaim-Defendants are competitors in a highly competitive industry where competitors closely monitor each other’s products and patents. Counterclaim-Defendants have long been aware of Everplay and its patents, including the ’811 patent. On information and belief, before Counterclaim-Defendants launched the Accused Products, they knew of the ’811 patent.

**<u>Counterclaim-Defendants' Infringing Accused Products</u>**

20. Counterclaim-Defendants offer to sell and sell products on Amazon.com, Inc.'s ("Amazon") well-known online retail marketplace and ecommerce platform.

21. Counterclaim-Defendants' infringing products including products identified as "Umoving Deluxe Magnetic Fort Building Panels Kit" 24-piece set, offered under Amazon Standard Identification Number ("ASIN") B0F1F8XFQ6, and a product described as the "Umoving 20-Piece Magnetic Fort Building Kit," offered under ASIN B0F1FC6SHD (together, the "Accused Products").

22. Counterclaim-Defendants' Accused Products are direct knock-offs or copycats of Everplay's children's magnetic fort-building play panel sets. Side-by-side comparisons of the parties' respective products are below:

| **Everplay's SUPERSPACE Product** | **The Accused Products** |
|---|---|
| <br>Sponsored<br>Superspace Giant Magnetic Fort Building Panels - The Big Set, Pine, 24 Panels, Life-Siz... | <br>Umoving 20-Piece Magnetic Fort Building Kit for Kids – Giant Modular Playhouse Panels, STEM Construction Toy for Creative Indoor Play, Ages 3+<br>**ASIN B0F1FC6SHD** |

| Everplay's SUPERSPACE Product | The Accused Products |
|---|---|
| <br>Superspace Giant Magnetic Fort Building Panels - The Big Set, Turquoise, 24 Panels, Life-Size Magnetic Tiles Kids, Build Forts... | <br>Umoving Deluxe Magnetic Fort Building Panels Kit – 24-Piece Giant Modular Playhouse Set with Rectangle & Trapezoid Panels –...<br>**ASIN B0F1F8XFQ6** |

23. Rather than invest in the hard work, time, and money necessary to earn consumer recognition and goodwill in products and identity of their own, Counterclaim-Defendants have taken an unlawful shortcut by trading off the innovations, identity, and goodwill that Everplay has built in its industry-leading children's magnetic fort-building play panel sets. Counterclaim-Defendants have done so by manufacturing inferior knock-offs or copycats of Everplay's patented children's magnetic fort-building play panel sets and marketed the same by misusing Everplay's federally registered trademark and otherwise engaging in unlawful, unfair competition.

**COUNT I.**
**Infringement of the '811 Patent**

24. Everplay repeats and incorporates by reference each of the foregoing paragraphs of its counterclaims.

25. On February 17, 2026, the ’811 patent, entitled “System, Panel and Method,” was duly and regularly issued to Everplay, as assignee of the inventors Anthony Mariner Erwin and Craig Ronald Spencer. A true and correct copy of the ’811 patent is attached hereto as Exhibit A. Everplay is now and has been at all times since the issuance date of the ’811 patent the owner of the patent and all rights thereto and thereunder.

26. Counterclaim-Defendants have infringed and continue to infringe at least one claim of the ’811 patent pursuant to 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell, selling, or importing the infringing Accused Products within the United States and/or importing them into the United States, without authority or license. The children’s magnetic fort-building play panel sets that embody the inventions claimed in the ’811 patent include the Superspace Giant Magnetic Fort Building Panels, available on Amazon under ASINS including B0G6SVYWS9, B0G6SWT4FL, B0GS34QYC6, B0G6SFC5V3, or B0G6SN52QH, as well as through the GetSuperSpace.com website.

27. On August 7, 2026, Counterclaim-Defendants filed this lawsuit, seeking a declaratory judgment that the ’811 patent is invalid. Counterclaim-Defendants did not seek a declaratory judgment that the ’811 patent was not infringed by the Accused Products. Counterclaim-Defendants did not allege in their complaint that the Accused Products do not practice the elements of claim 1 of the ’811 patent.

28. Counterclaim-Defendants’ infringing products are sold on Amazon under the following ASIN designations: B0F1F8XFQ6 and B0F1FC6SHD.

29. By way of further example, and by no means limiting, Exhibit B attached hereto and incorporated by reference is a claim chart establishing infringement of Claim 1 of the ’811 patent by the Accused Products.

30. Counterclaim-Defendants' infringement has damaged and will continue to damage Everplay, which is entitled to recover the damages resulting from Counterclaim-Defendants' wrongful acts in an amount to be determined at trial, and in any event no less than a reasonable royalty.

31. Counterclaim-Defendants' infringement has caused, and will continue to cause, irreparable injury to Everplay, for which damages are an inadequate remedy, unless Counterclaim-Defendants are enjoined from any and all activities that would infringe the claims of the '811 patent.

32. Counterclaim-Defendants' infringement of the '811 patent is willful, justifying an award of enhanced damages of treble the amount found or assessed under 35 U.S.C. § 284.

## COUNT II.
## Trademark / Trade Dress Infringement / False Advertising / Designation of Origin (15 U.S.C. §§ 1114 and 1125(a) and Common Law)

33. Everplay repeats and incorporates by reference each of the foregoing paragraphs of its counterclaims.

34. This Count is for trademark / trade dress infringement, false designation of origin, and false and misleading advertising pursuant to the Lanham Act and common law.

### The Amazon Marketplace

35. Generally, manufacturers choose between two business models to sell their products on Amazon's marketplace: a first-party or "1P" relationship or a third-party or "3P" relationship.

36. A 1P relationship with Amazon is a direct relationship, where Amazon is a traditional retailer in which it buys products wholesale from a manufacturer, and then resells them to consumers on the Amazon online store. As a 1P seller, known as a "vendor," manufacturers supply products to Amazon upon request via purchase orders in its "Vendor Central" portal.

Amazon handles customer fulfillment from its warehouses, and it controls pricing, product listings, availability, inventory, shipping, returns, and customer service for the products.

37. A 3P relationship with Amazon is a third-party selling model that allows manufacturers to sell products directly to customers on Amazon's marketplace. A 3P seller lists its own products for sale, sets its own pricing, and describes its own products. A 3P seller also controls the information displayed in the product listings for its products and store on Amazon. Amazon generates revenues by charging 3P sellers to use its platform and payment processing, and at the 3P seller's option, Amazon's fulfillment services.

38. Amazon also generates revenue by offering 1P and 3P sellers advertising solutions to aid with increased awareness, consideration and sales of their products on Amazon. In this respect, Amazon offers various sponsored ads that appear in high visibility placements on Amazon, such as on the first shopping results page of a keyword search and on specific product pages. Sellers select products to advertise and choose keywords to target. The sponsored ads are shown to customers based on keywords on which Amazon allows sellers to bid and purchase. When customers "click" or select a sponsored ad, they are taken to the advertised product's detail page. Many times, it is not immediately obvious from sponsored ad who is selling the advertised product.

**Counterclaim-Defendants' Willful Trademark Infringement**

39. Since at least as early as August 17, 2021, Everplay has used the name and trademark SUPERSPACE in connection with "magnetic modular toy building panels and tiles," among other toys, and in the marketing and sale of the same in interstate commerce. These children's magnetic fort-building play panel sets have been widely advertised and extensively offered under this name and mark throughout the United States, and their sales have been and are significant. Everplay's name and mark SUPERSPACE are displayed prominently on its children's magnetic fort-building play panel sets and on all product packaging. Everplay has invested a

substantial amount of effort and expense in promoting its name and mark and in ensuring the high quality of children's magnetic fort-building play panel sets provided thereunder.

40. Everplay's children's magnetic fort-building play panel sets sold under the name and mark SUPERSPACE are recognized to be of the highest quality.

41. As a result of Everplay's substantial advertising and sales under the name and mark SUPERSPACE, and the maintenance of premium quality and safety standard relating thereto, and Everplay's substantially exclusive use, the name and mark SUPERSPACE have become widely and favorably accepted and recognized by consumers as a unique and distinctive indication of the origin of Everplay's children's magnetic fort-building play panel sets. The name and mark SUPERSPACE has become and is an asset of substantial value as a symbol of Everplay, its high-quality products, its reputation, and goodwill.

42. On May 16, 2023, the United States Patent and Trademark Office ("USPTO") granted federal trademark registration to Everplay for the mark SUPERSPACE for "magnetic modular toy building panels and tiles," among other toys, as Certificate of Registration No. 7,051,724. This registration is in full force and effect, is owned by Everplay.

43. Everplay's mark SUPERSPACE and the goodwill of the business associated with it throughout the United States is of great value to Everplay, is highly distinctive, and has become uniquely associated in the public mind with the highest quality, safety, and reputation finding their source with Everplay. Everplay uses the registration symbol ® in association with its trademark.

44. On information and belief, Counterclaim-Defendants have a 3P relationship with Amazon. On information and belief, Counterclaim-Defendants list their products for sale, set their pricing, and describe their products. On information and belief, Counterclaim-Defendants control the information displayed in the product listings for their products and store on Amazon. On information and belief, Counterclaim-Defendants use sponsored ads on Amazon to boost product

listing placement, increase appearances in search results, and drive traffic to their product listings and store on Amazon.

45. On information and belief, without Everplay's authorization or consent and having knowledge of Everplay's prior rights in the mark SUPERSPACE, Counterclaim-Defendants have knowingly and intentionally used Amazon's sponsored ads to trade on that mark to advertise their infringing Accused Products and drive traffic to the product page listings of their infringing Accused Products on Amazon.

46. On information and belief, Counterclaim-Defendants have purchased the keyword SUPERSPACE in connection with Amazon's sponsored ads described above, so their infringing Accused Products are prominently displayed on the first shopping results page of a keyword search of Everplay's trademark and on product pages for Everplay's children's magnetic fort-building play panel sets.

47. Counterclaim-Defendants' systematic, deliberate use of Everplay's mark is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of Counterclaim-Defendants' infringing Accused Products and is likely to deceive the public into believing that these infringing Accused Products originate from, are associated with, or are otherwise authorized by Everplay, all to the damage and detriment of Everplay's reputation, goodwill, and sales.

48. All of Counterclaim-Defendants' acts combined are likely to cause initial interest and initial source confusion, mistake, and deception among consumers who are deceptively drawn to Counterclaim-Defendants' infringing Accused Products believing they originate from, are affiliated, connected or associated with, or are otherwise sponsored or authorized by Everplay, even if such consumers ultimately do not purchase Counterclaim-Defendants' Accused Products as a result of such confusion.

49. On information and belief, Counterclaim-Defendants have used Everplay's trademark with the intention of misleading, deceiving, or confusing consumers and of trading on Everplay's reputation and goodwill. Counterclaim-Defendants have engaged in their infringing activity despite having constructive notice of Everplay's federal registration rights under 15 U.S.C. § 1072 and, upon information and belief, despite having actual knowledge of Everplay's use of the mark SUPERSPACE. Counterclaim-Defendants' use of Everplay's mark constitutes willful, deliberate, and intentional trademark infringement.

50. As a direct and proximate result of Counterclaim-Defendants' trademark infringement, Everplay has suffered and will continue to suffer irreparable loss of income, profits, and goodwill and Counterclaim-Defendants have unfairly acquired and will continue to unfairly acquire income, profits, and goodwill.

51. Counterclaim-Defendants' acts of infringement will cause further irreparable injury to Everplay if Counterclaim-Defendants are not restrained by this Court from further violation of Everplay's rights. Everplay has no adequate remedy at law.

**Counterclaim-Defendants' Purposeful Trade Dress Infringement**

52. Counterclaim-Defendants have purposefully copied the style, product configuration and color scheme of Everplay's original SUPERSPACE giant magnetic panel sets. A simple side by side comparison of Counterclaim-Defendants' product as advertised on Amazon against Everplay's product as noted above in paragraph 15 and further demonstrated immediately below irrefutably demonstrates a purposeful copying of Everplay's product:

| Novel Trade Dress of Everplay's SUPERSPACE Product | Counterclaim-Defendants' Confusingly Similar Trade Dress as Advertised on Amazon |
|---|---|
|  |  |

**COUNT III.**
**Unfair Competition**

53. Everplay repeats and incorporates by reference each of the foregoing paragraphs of its counterclaims.

54. By virtue of Counterclaim-Defendants' acts, herein above described, Counterclaim-Defendants have engaged in unfair competition under common law.

55. Counterclaim-Defendants' actions constitute business conduct that is contrary to honest practice in industrial and commercial matters that has interfered with Everplay's ability to conduct business.

56. These acts of unfair competition include, but are not limited to, misuse of Everplay's trademark.

57. By virtue of Counterclaim-Defendants' acts, hereinabove described, Counterclaim-Defendants have obtained business it could not otherwise obtain fairly on the open market.

58. Counterclaim-Defendants' acts, hereinabove described, are being committed with the intent, purpose and effect of procuring an unfair competitive advantage by misappropriating the valuable goodwill developed by Everplay at substantial effort and expense and represented by its intellectual property.

59. As a result of Counterclaim-Defendants' unfair competition, Everplay has incurred substantial damages, loss of goodwill and profits which has adversely affected its ability to conduct its business, control its goodwill and reputation, and has sustained still further damages in an amount difficult to ascertain. Unless restrained by this Court, Counterclaim-Defendants will continue to compete unfairly with Everplay and Everplay will continue to incur such damage.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Everplay respectfully requests a trial by jury of all issues and claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Everplay prays that the Court:

1. Enter judgment that:

   a. Counterclaim-Defendants have infringed the '811 patent;

   b. Counterclaim-Defendants have infringed the SUPERSPACE trademark in violation of 15 U.S.C. §§ 1114(1) and 1125(a)(1)(A) and common law;

   c. Counterclaim-Defendants have engaged in unfair competition under common law; and

   d. The foregoing infringement and violations have been willful.

2. Issue a preliminary and permanent injunction restraining, enjoining, and prohibiting Counterclaim-Defendants and any subsidiaries, affiliates, parents, successors, assigns, officers, agents, representatives, servants, and employees, and all person in active concert or participation with it, from:

   a. Infringing the '811 patent;

   b. Using the trademark SUPERSPACE or any confusingly similar designation alone or in connection with other words, as a trademark, component of any

keyword advertising, or otherwise to market, advertise, or identify Counterclaim-Defendants' Accused Products or related products;

c. Otherwise infringing Everplay's trademark; and

d. Unfairly competing with Everplay in any manner whatsoever.

3. Require Counterclaim-Defendants to deliver up and destroy its entire inventory of infringing Accused Products and the books and records (including computerized or electronic records) related thereto;

4. Order Counterclaim-Defendants to pay Everplay's costs in producing and disseminating corrective advertising;

5. Order Counterclaim-Defendant to pay damages adequate to compensate Everplay for Counterclaim-Defendants' infringement and unlawful activity, together with prejudgment and post-judgment interest thereon, and including enhanced damages for its willful conduct;

6. Award Everplay Counterclaim-Defendants' profits resulting from their infringement and unlawful activity after an accounting;

7. Award Everplay punitive or enhanced damages as may be allowed by law;

8. Direct Counterclaim-Defendants to pay Everplay its costs and reasonable attorneys' fees incurred in this action; and

9. Award Everplay such other and further relief as the Court may deem just and proper under the circumstances.

POLSINELLI PC

/s/Mark T. Deming

Mark T. Deming, Ill. Bar No. 6299631
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
(312) 819-1900

mdeming@polsinelli.com

M. Lawrence Oliverio
*(pro hac vice forthcoming)*
POLSINELLI PC
One International Place, Suite 3900
Boston, MA 02110
(617) 406-0335
loliverio@polsinelli.com

Andrew Z. Weaver
*(pro hac vice forthcoming)*
POLSINELLI PC
1000 Louisiana Street
Suite 6400
Houston, TX 77002
(713) 374-1600
aweaver@polsinelli.com

*Attorneys for Everplay Labs Limited.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and Local Rule 5.9.

/s/Mark T. Deming