IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | CASE NO. 1:26-CV-09480 |
| v. | ) | |
| EVERPLAY LABS LIMITED, | ) | |
| Defendant. | ) | |

**COUNTERCLAIM-PLAINTIFF'S BRIEF IN SUPPORT OF THE MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS


I. INTRODUCTION ..................................................... 1

II. BACKGROUND ..................................................... 2

A. Everplay and SUPERSPACE ..................................................... 2

B. OMZZ's Knock-Off Products ..................................................... 2

C. The Season and the Inventory ..................................................... 4

D. APEX, Related Chinese Legal Proceedings, and This Suit ..................................................... 4

III. LEGAL STANDARD ..................................................... 5

IV. ARGUMENT ..................................................... 5

A. Everplay Will Suffer Irreparable Harm Before This Case Can Be Tried ..................................................... 6

B. Everplay Will Likely Succeed on Its Claim of Patent Infringement ..................................................... 8

i. The Accused Products Infringe At Least Claim 1 of the '811 Patent ..................................................... 8

ii. Everplay Is Likely to Withstand OMZZ's Invalidity Challenge ..................................................... 10

C. The Balance of Equities Favors an Injunction ..................................................... 13

D. An Injunction Would Not Disserve the Public Interest ..................................................... 13

E. The Requested Order Is Narrow, and Security Should Be Set Accordingly ..................................................... 14

V. CONCLUSION ..................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Ass'ns*,
52 F.4th 934 (Fed. Cir. 2022) ....................6

*Altana Pharma AG v. Teva Pharms. USA, Inc.*,
566 F.3d 999 (Fed. Cir. 2009)....................6, 10

*Apple, Inc. v. Samsung Elecs. Co.*,
678 F.3d 1314 (Fed. Cir. 2012)....................6

*Apple, Inc. v. Samsung Elecs. Co.*,
735 F.3d 1352 (Fed. Cir. 2013)....................7

*Apple Inc. v. Samsung Elecs. Co.*,
809 F.3d 633, 641 (Fed. Cir. 2015)....................6

*BlephEx, LLC v. Myco Indus., Inc.*,
24 F.4th 1391 (Fed. Cir. 2022) ....................5

*Celsis in Vitro, Inc. v. CellzDirect, Inc.*,
664 F.3d 922 (Fed. Cir. 2012)....................7, 13

*E-Link Tech. Co. v. Shenzhen Uni-Sun Elecs. Co.*,
No. 20 C 00247, 2020 WL 8079816 (N.D. Ill. May 14, 2020) ....................13

*Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*,
35 F.3d 1134 (7th Cir. 1994) ....................14

*Graham v. John Deere Co.*,
383 U.S. 1 (1966)....................10

*Grubhub Inc. v. Relish Labs LLC*,
80 F.4th 835 (7th Cir. 2023) ....................13

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014)....................9

*International Rectifier Corp. v. IXYS Corp.*,
383 F.3d 1312 (Fed. Cir. 2004)....................14

*In re Kahn*,
441 F.3d 977 (Fed. Cir. 2006)....................11

*Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*,
39 F.4th 1377 (Fed. Cir. 2022) ....................6

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................11, 12

*Life Spine, Inc. v. Aegis Spine, Inc.*,
8 F.4th 531 (7th Cir. 2021) ....................13

*Mead Johnson & Co. v. Abbott Labs.*,
201 F.3d 883 (7th Cir. 2000) ....................14

*Microsoft Corp. v. i4i Ltd. P'ship*,
564 U.S. 91 (2011)....................10

*Mintz v. Dietz & Watson, Inc.*,
679 F.3d 1372 (Fed. Cir. 2012)....................11

*Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*,
122 F.4th 860 (Fed. Cir. 2024) ....................9

*Natera, Inc. v. NeoGenomics Labs., Inc.*,
106 F.4th 1369 (Fed. Cir. 2024) ....................6, 10

*O'Shea v. Littleton*,
414 U.S. 488 (1974)....................6

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc)....................9

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
522 F.3d 1299 (Fed. Cir. 2008)....................11

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)....................6

*Shire LLC v. Amneal Pharms., LLC*,
802 F.3d 1301 (Fed. Cir. 2015)....................11

*Southwall Techs., Inc. v. Cardinal IG Co.*,
54 F.3d 1570 (Fed. Cir. 1995)....................9

*Sunoco P'ship Mktg. & Terminals L.P. v. U.S. Venture, Inc.*,
436 F. Supp. 3d 1099 (N.D. Ill. 2020) ....................11

*Tinnus Enters., LLC v. Telebrands Corp.*,
846 F.3d 1190 (Fed. Cir. 2017)....................10

*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011) (en banc)....................14

*Volvo Penta of the Americas, LLC v. Brunswick Corp.*,
81 F.4th 1202 (Fed. Cir. 2023) ....................12

*Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*,
698 F.2d 862 (7th Cir. 1983) ....................13

*Winter v. NRDC*,
555 U.S. 7 (2008)....................5

**Other Authorities**

Rule 65(a)....................1

Rule 65(c)....................13, 14

Counterclaim-Plaintiff Everplay Labs Limited ("Everplay") hereby files this Brief in Support of the Motion for a Preliminary Injunction (the "Brief") against Counterclaim-Defendants OMZZ Trading Co., Limited and Ningbo UnionMax Technology Co., Ltd. (collectively, "OMZZ") pursuant to Rule 65(a) of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

Everplay has invested significant resources developing, patenting, and selling the "SUPERSPACE" products, which are life-sized magnetic play-panels. Everplay is committed to positively impacting children's lives through SUPERSPACE, which cultivates problem solving skills and unlocks a new level of imaginative play.

OMZZ is a company based in China and Hong Kong that sells a knock-off product, identified on the Amazon.com marketplace by ASINs B0F1F8XFQ6 and B0F1FC6SHD (the "Accused Products"). It has blatantly copied SUPERSPACE, and the Accused Products infringe at least claim 1 of U.S. Patent No. 12,551,811 ("the '811 patent"). Everplay seeks a preliminary injunction to prevent irreparable harm, including but not limited to lost sales, lost market share, and brand erosion caused by OMZZ's infringing sale of the Accused Products, particularly during the critical upcoming holiday season. Everplay is likely to succeed in proving both infringement and validity, is likely to suffer irreparable harm absent relief, and the balance of equities and the public interest both favor an injunction. Therefore, Everplay respectfully requests that the Court grant this motion and enter a preliminary injunction in the form of the proposed order.



## II. BACKGROUND

### A. Everplay and SUPERSPACE

The ’811 patent was invented by two fathers—Craig Spencer and Anthony Erwin—who set out to build what their children kept improvising from couch cushions: a life-sized play space a child could build, unbuild, and rebuild. Erwin Decl., ¶¶ 6–7. The aim was to provide a spark for a child’s creativity to grow, foster teamwork, develop critical thinking, and facilitate sensory play for special needs children. *Id.* Out of this inspiration, SUPERSPACE was born. No such product existed because a fixed magnet positioned in opposition to another will repel, and at life-sized, this repelling will create a toy that is difficult to play with. *Id.* at ¶ 8. Everplay changed the way the magnet, housing it in a connector with room to rotate so that it orients itself and panels can join from any direction. *Id.* Everplay launched the product through an April 2021 Kickstarter, which drew more than 3000 backers pledging more than $1 million before a single unit shipped. *Id.* at 9. SUPERSPACE has since won numerous awards including from the Industrial Designers Society of America and holds a 4.8-star rating across more than 1,100 website reviews. *Id.* at ¶ 10. Everplay has also cultivated a SUPERSPACE brand reputation for high-quality craftsmanship through great reviews, extensive social media presence, a business-to-business development program, a local presence in the U.S., and a commitment to customer satisfaction. *Id.* at ¶¶ 11–13. This reputation is the product of hard work, significant advertising expense, and extensive investment of time and money in developing SUPERSPACE. *Id.*

### B. OMZZ’s Knock-Off Products

Success invites imitation. OMZZ, the seller of the Accused Products, is organized under the laws of and operates exclusively from Hong Kong and China. On information and belief, OMZZ’s assets are held exclusively outside of the U.S., presenting significant challenges to any

potential recovery by Everplay in this action. Given the success of SUPERSPACE, OMZZ saw an opportunity to capitalize on Everplay's market by mimicking SUPERSPACE's design, colors, and advertising. OMZZ directly benefits from Everplay's hard-earned brand reputation without any comparable investment of time, energy, or capital. The Accused Products are sold on the Amazon.com marketplace, to consumers throughout the U.S., and in the same product subcategory where SUPERSPACE sells. Erwin Decl., ¶ 14.

Side by side, the Umoving panels copy SUPERSPACE panel for panel. The same large felt play panels, in the same shapes, offered in the identical set sizes and highly similar colors. Erwin Decl., ¶¶ 15–18 (side-by-side comparisons). The resemblance is more than cosmetic. The Umoving panels are built on the same architecture the '811 patent claims: connectors defining a recess at each end; a magnet in each recess, designed to rotate; dowels received in the connectors; and panels connect magnetically. *See, e.g.,* Fletcher Decl., ¶¶ 52–63. OMZZ capitalizes on the similarity of the products and associated consumer confusion to divert sales from SUPERSPACE. OMZZ copied not only the functional design of the panels, but also their look and feel—using similar sizes, shapes, and combinations of felt and trim color.

On information and belief, OMZZ also uses the SUPERSPACE registered trademark as a keyword in its product listings and even as a sponsored keyword. The result is that OMZZ leaches off Everplay's hard work and ingenuity, including by using the SUPERSPACE name to feature




Umoving products in search results when consumers are searching specifically for SUPERSPACE. Erwin Decl., ¶¶ 20–23. OMZZ

sells its copies at a discount, underpricing genuine SUPERSPACE sets. *Id.* at ¶ 24.

**C. The Season and the Inventory**

Everplay's business is built primarily around the year-end holiday selling season. Erwin Decl., ¶¶ 30, 32. Approximately 75% of Everplay's annual revenue arrives in the fourth quarter. *Id.* To meet the surge of demand, panels are manufactured and imported months in advance, and Everplay finances that inventory with capital committed long before the first holiday sale. *Id.* at ¶ 31. The result is a company that depends on one quarter—and that has already committed itself to the costs of the holiday 2026 season. *Id*. at ¶¶ 30–33. Holiday sales lost to a discounted infringer are simply gone. Diverted customers will have bought their play systems, the committed inventory and financing costs will remain, and no later judgment (that might not even be collectable due to the location of the infringer) can truly make Everplay whole. *Id.*

**D. APEX, Related Chinese Legal Proceedings, and This Suit**

The '811 patent issued on February 17, 2026. Dkt. 9-1. Everplay acted quickly to protect its intellectual property rights: on July 2, 2026, it invoked the APEX program, asserting claim 1 of the '811 patent against OMZZ.[1] Erwin Decl., ¶ 19. Amazon notified OMZZ on July 6. *Id.* OMZZ neither resolved the claim nor agreed to participate in the evaluation. Amazon initiated the evaluation on July 28, a neutral evaluator was selected on August 4, and Everplay paid the evaluator's fee on August 5. *Id.* Rather than participate in APEX, on August 7, OMZZ filed this action to keep its own listings live and sought a declaration of invalidity. Dkt. 1. Notably, OMZZ did not request a declaratory judgment of non-infringement. *Id.* Everplay answered and

---

[1] In parallel, Everplay has sought to enforce its rights in China, asserting a foreign related patent against Wenzhou Attract Play, which manufactures the Accused Products. Wenzhou initially admitted infringement and agreed to stop, but later recanted and those proceedings are now moving forward in China.

counterclaimed for infringement on August 31. Dkt. 9. In a further effort to stall through the holiday season, OMZZ recently filed a request for *ex parte* reexamination.[2]

## III. LEGAL STANDARD

A preliminary injunction requires a showing that the movant is likely to succeed on the merits, likely to suffer irreparable harm absent relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. *Winter v. NRDC*, 555 U.S. 7, 20 (2008); *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1398 (Fed. Cir. 2022). While these factors are not applied mechanically, a movant must establish both of the first two factors to obtain a preliminary injunction. *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009).

Likelihood of success has two parts: the patentee must show that "(1) it will likely prove infringement and (2) its infringement claim will likely withstand challenges to validity and enforceability." *Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024). Federal Circuit law governs the likelihood of success on infringement; the law of this circuit governs the remaining factors. *ABC Corp. I v. P'ship & Unincorporated Ass'ns*, 52 F.4th 934, 941 (Fed. Cir. 2022).

## IV. ARGUMENT

Each of the preliminary-injunction factors favors Everplay. OMZZ is infringing the very claim the examiner allowed over OMZZ's own primary reference; the harm from continued

[2] The USPTO is unlikely to decide whether to grant the reexamination request until after the holiday season. Nor is the USPTO likely to grant the request because the prior art identified in the reexamination request, which is the same prior art identified in the declaratory judgment complaint, was submitted to the USPTO in the prosecution of related U.S. Application No. 19/353,521, which subsequently received a notice of allowance without further adverse office actions. See Exs. 3, 4.

infringement will permanently imperil Everplay's ability to commercialize its patented invention; the balance of equities tips in Everplay's favor; and an injunction is in the public interest. Finally, the proposed preliminary injunction is sufficiently narrow and tailored to the Accused Products.

### A. Everplay Will Suffer Irreparable Harm Before This Case Can Be Tried

A party seeking a preliminary injunction must show harm that is likely, not speculative. *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022). It must be "substantial and immediate." *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)). To show irreparable harm, it is necessary to show that the infringement caused harm in the first place. *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 641 (Fed. Cir. 2015) ("a finding that the competitor's infringing features drive consumer demand for its products satisfies the causal nexus inquiry"). Price erosion, lost market share from a direct competitor, loss of goodwill, damage to reputation, and loss of business opportunities support a finding that remedies at law are inadequate. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011); *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

As an initial matter, the harm resulting from the sale of the Accused Products is tied to the patented feature. Everplay need not show that the claimed invention is the sole driver of demand, only "some connection between the patented feature and demand" for the accused products. *Apple, Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, the connection between the patented feature and demand is direct. The rotating magnetic connection permits children to connect and reconfigure the life-sized panels from different orientations, and Everplay emphasizes that ease and versatility in marketing SUPERSPACE. Erwin Decl., ¶¶ 6, 22. OMZZ likewise markets the Accused Products as a "magnetic fort building kit" and emphasizes their "strong

magnetic connections." *Id.* at ¶ 23. Fletcher confirms that the Accused Products employ the claimed rotating magnetic connector architecture. Fletcher Decl., ¶¶ 55, 59, 63.The connection is further underscored by OMZZ's product listings, which intentionally target SUPERSPACE customers. Erwin Decl., ¶ 17.

The facts establish that the harm is irrecoverable here. Everplay is a small company with a single product family. Erwin Decl., ¶ 29. The parties here compete head-to-head, selling play sets in the same Amazon subcategory, and the Accused Products are priced below Everplay's SUPERSPACE. *Id.* Given the size of Everplay and the direct competition with OMZZ, harm to Everplay is not a segment loss but a loss of the business as a whole. *Id.* Everplay effectively earns its year in the fourth quarter. *Id.* at ¶ 30. A holiday season lost to a cheaper copy of the patented system cannot be restored by a later award, because there is no second 2026 holiday season. Any recovery of damages will be insufficient to compensate Everplay for the loss of market share to OMZZ through sales during this peak season.

Additionally, Everplay will endure significant, irreparable harm. First, the pricing pressure and price erosion from OMZZ threatens to undercut Everplay's ability to sustain its business. OMZZ is currently undercutting the sale price of SUPERSPACE by approximately 10–15%. Erwin Decl., ¶ 24. With each sale of OMZZ's product, customers are likely to acclimate to OMZZ's lower price point, and customers are unlikely to repurchase through Everplay if they have already purchased the Accused Products on account of the price difference. *Id.* at ¶¶ 24–27. Any recovery of damages cannot compensate Everplay for the damage to customer expectations regarding price point. The infringement also threatens Everplay's reputation for product quality and safety. Everplay has designed, tested, and certified the SUPERSPACE product as safe to use for children. *Id.* at ¶ 28. Everplay has invested heavily in product safety testing, quality control,

customer service, and warranty support. *Id. at* ¶¶ 11, 28. The harm is not hypothetical: Everplay has already received a customer-service inquiry from a consumer who mistook a UMoving Amazon listing and return policy for SUPERSPACE, forcing Everplay to correct the confusion. *Id.* at ¶¶ 26–28. If a child is harmed by an OMZZ product, customers are likely to attribute the danger to Everplay. *Id.* at ¶¶ 27–28.

The cumulative effect will cause Everplay to lose out on business opportunities. The sale of the Accused Products will immediately cost Everplay revenue. As sales are reduced, so is Everplay's ability to seek new opportunities, develop new products, or secure partnerships necessary for further growth. The holiday retail-cycle exacerbates the harm. Holiday inventory is manufactured and imported months ahead of the season, funded by working capital Everplay commits—and finances—long before the first November sale. Erwin Decl., ¶ 31. If holiday demand is diverted to a discounted infringer, Everplay is not merely losing sales; it is left carrying committed costs and financed inventory against revenue that never arrives, in the quarter that determines its year. *Id.* at ¶¶ 31–32. The long-term losses incurred by Everplay will be difficult to quantify and even harder to recover, especially because OMZZ is a foreign corporation with no assets in the U.S. and, as a result, limited exposure even in the face of an adverse judgment.

**B. Everplay Will Likely Succeed on Its Claim of Patent Infringement**

To obtain a preliminary injunction, Everplay must show that it is likely to succeed on the merits of its claim. Everplay will likely prevail on both halves of the merits showing: (1) the Accused Products practice every limitation of claim 1 and (2) claim 1 will likely withstand the invalidity challenge asserted by OMZZ.

**i. The Accused Products Infringe At Least Claim 1 of the '811 Patent**

To succeed on a claim for direct infringement, the allegedly infringing product must

practice all elements of a patent claim. *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Infringement is determined by construing the claim and then comparing it to the accused product. *Mirror Worlds Techs., LLC v. Meta Platforms, Inc.*, 122 F.4th 860, 868–69 (Fed. Cir. 2024). Claim terms are given the meaning they would have to a person of ordinary skill in the art at the time of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). That meaning controls unless the patentee acted as his own lexicographer or disavowed claim scope. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). Neither exception applies here, and at least for purposes of this preliminary injunction motion, all the claim terms should be afforded their plain and ordinary meaning.

Comparing the Accused Products to the limitations of the claims, the Accused Products infringe at least claim 1. The claim language specifies that the system comprises two or more panels, comprising a plurality of connectors, dowels that fit within them, and rotatable magnets positioned within them to connect the panels to each other. *See* Dkt. 9-1, claim 1. Each of these elements is present in the Accused Products. The Accused Products are sets of two or more panels. Fletcher Decl., ¶¶ 50–51, 63. Each panel is built from connectors, and each connector defines a recess at each of its two ends. *Id.* at ¶¶ 52–53, 63. A magnet sits in each recess with clearance to turn. *Id.* A dowel enters each of those same recesses, joining one connector to the next, and the two dowels meeting at a corner connector are angled to one another. *Id.* at ¶¶ 53–55, 63. When two panels are brought together from any direction, at least one magnet in each panel turns to present an attracting pole and the panels join. *Id.* The charts in the declaration of Everplay's expert, Mr. Tim Fletcher, compares each element against photographs of the Accused Product and confirms every element of the claim is practiced. Fletcher Decl. at ¶ 63.

Notably, OMZZ did not seek a declaratory judgment of non-infringement. Although it

pleaded conclusory allegations that it does not infringe, its Complaint does not specifically allege any elements of claim 1 that are missing from the Accused Products. Instead, it brought the declaratory judgment action to stall the APEX process long enough for it to sell through the coming holiday season, at which point OMZZ will have effectively secured its ill-gotten gains. To the extent OMZZ raises any challenge to infringement, Everplay is likely to succeed because the Accused Products practice each element of claim 1 of the ’811 patent.

**ii. Everplay Is Likely to Withstand OMZZ’s Invalidity Challenge**

The ’811 patent is presumed valid. *Microsoft Corp. v. i4i Ltd. P’ship*, 564 U.S. 91, 95 (2011). At the preliminary injunction stage, “[t]he burden on the accused infringer to show a substantial question of invalidity...is lower than [that] required to prove invalidity at trial.” *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017) (quoting *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1006 (Fed. Cir. 2009)). The “relevant inquiry is ...whether the patentee has shown it is more likely than not to prevail over an invalidity challenge.” *Natera, Inc. v. NoeGenomic Lab’ys, Inc.*, 106 F.4th 1369, 1377 (Fed. Cir. 2024). In its Complaint, OMZZ summarily invokes sections 102, 103, and 112 as alleged grounds for invalidity of the ’811 patent, but the only substantively articulated theory is alleged obviousness or section 103. Obviousness turns on the scope and content of the prior art, the differences between the prior art and the claims, and the level of ordinary skill, with relevant secondary considerations providing indicia of obviousness or nonobviousness. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

OMZZ has not raised a substantial question of invalidity. The Complaint lists ten references but only specifies one combination: Ornstein (U.S. Pub. No. 2016/0184727) in view of Wei (CN 104274984) and Kim (WO 2006/112679). Compl. ¶¶ 30–31. The USPTO carefully considered Ornstein during prosecution. The examiner specifically applied Ornstein ***twice***—in

both the non-final rejection of March 18, 2025, and the final rejection of August 5, 2025. Exs. 5, 6. However, in a July 18, 2025 interview, the examiner stated that the claims could be amended to overcome Ornstein. Ex. 7. The amendment was made on August 28, 2025, Ex. 8, and on November 12, 2025, the examiner allowed claim 1, explaining:

> The closest prior art of record fails to make obvious a magnetized panel system comprising dowels and connectors having the structure as claimed, the connectors housing a magnet in each of two end recesses and the recesses each receiving a dowel in the manner claimed.

Ex. 9. Because Ornstein was before the examiner, OMZZ carries "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job[.]" *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (quoting *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008)); *accord Sunoco P'ship Mktg. & Terminals L.P. v. U.S. Venture, Inc.*, 436 F. Supp. 3d 1099, 1118 (N.D. Ill. 2020). Absent compelling evidence to overcome the decision of the patent examiner, OMZZ's obviousness challenge in light of Ornstein will fail.

OMZZ's obviousness argument is also likely to fail because there is no reasonable basis to combine the prior art. A conclusion of obviousness requires "articulated reasoning with some rational underpinning[.]" *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (quoting *In re Kahn*, 441 F.3d 977, 988 (Fed. Cir. 2006)). Defining the problem by reference to the invention that solved it is hindsight. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1377 (Fed. Cir. 2012). OMZZ's combination does not merely need to supply a rotatable magnet; it must teach the claimed arrangement in which magnets are housed in end recesses of the connectors and the dowels are received in those same recesses. Fletcher Decl. ¶¶ 81–94. OMZZ argues Ornstein can be combined

with Wei and Kim to supply rotatable, self-orienting magnets, Compl. ¶ 31, but these combinations lack the requisite suggestion or motivation to combine.




Wei (illustrated at right) concerns a 3D pipeline component. Wei discloses no panels. Fletcher Decl., ¶¶ 84–89. It is a pipeline assembly, which is structurally inconsistent with the claimed invention. *Id.* While Kim (illustrated at left) discloses a "magnetic toy set," Kim is a rod-and-ball set as described in relation to FIGS 3 and 4. Fletcher Decl., ¶¶ 90–93. These references, separately or combined, do not show a substantial question that claim 1 is obvious. *Id.* at ¶¶ 78–94.




Additionally, under *KSR Int'l Co. v. Teleflex Inc.* there must be some non-hindsight reasoning with rational underpinning that has not been supplied by OMZZ. While OMZZ has filed a reexamination request, the USPTO has not determined a substantial new question of patentability exists.[3] The process at the USPTO for determining if the substantial new question of patentability exists will take a minimum of two months, but statutorily the USPTO can take up to three months, which would be December 1, 2026. Waiting for the USPTO process would permit OMZZ to continue selling through the critical holiday season, while any eventual judgment would have to be enforced against foreign entities with no identified U.S. assets..

Finally, there is substantial evidence of nonobviousness tied to the unique characteristics of the claimed invention, which rebuts OMZZ's contention, including commercial success,

[3] Nor is the USPTO likely to find such a question because, as noted, claims in a related application were recently allowed over the very same references OMZZ cites. *See* Exs. 3, 4.

industry praise, and copying. *See Volvo Penta of the Americas, LLC v. Brunswick Corp.*, 81 F.4th 1202, 1211–12 (Fed. Cir. 2023). Those objective indicia bear a nexus to the claimed invention: SUPERSPACE embodies claim 1, and Everplay specifically promotes the claimed magnetic connection functionality as an important feature of the product. Fletcher Decl. ¶ 59; Erwin Decl. ¶¶ 6, 22. Here, SUPERSPACE found immediate and considerable commercial success with than 3000 Kickstarter backers pledged more than one million dollars for pre-orders. Erwin Decl., ¶ 9. SUPERSPACE has received significant and repeated industry praise. *Id.* at ¶ 11. The evidence also supports copying, which is particularly strong evidence of nonobviousness. *Volvo*, 81 F.4th at 1213. Here, OMZZ selected virtually identical dimensions and compatible connector positions, markets comparable panel sets, and the Accused Products are functionally interchangeable with SUPERSPACE. Erwin Decl. ¶¶ 15–18; Fletcher Decl. ¶¶ 49–57. These facts are indicative of nonobviousness and undermine OMZZ's effort to raise a substantial question about validity.

### C. The Balance of Equities Favors an Injunction

The Court weighs the harm of denying relief against the harm of granting it, "using a sliding scale—the greater the movant's likelihood of success on the merits, the less the harms need be in its favor." *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 539 (7th Cir. 2021). Everplay is a small company whose only product line and overall financial viability are at risk. The Accused Products are one line among OMZZ's offerings, and any loss OMZZ suffers from ceasing infringing sales during the pendency of this case is compensable by security under Rule 65(c). An infringer's interest in continuing to infringe carries little equitable weight.

### D. An Injunction Would Not Disserve the Public Interest

The question is "not whether the public interest will be served, but whether the public

interest will be disserved." *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 868 (7th Cir. 1983). It would not. The public interest favors enforcement of valid patent rights. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012). Moreover, consumers retain alternative fort-building options, and where the market contains numerous competitors offering comparable products at comparable prices, a consumer may simply purchase a similar model even with an injunction in place. *E-Link Tech. Co. v. Shenzhen Uni-Sun Elecs. Co.*, No. 20 C 00247, 2020 WL 8079816, at *3 (N.D. Ill. May 14, 2020).

### E. The Requested Order Is Narrow, and Security Should Be Set Accordingly

The proposed order is directed at OMZZ and reaches solely the Accused Products and products not more than colorably different from them. An injunction must "describe in reasonable detail" the acts restrained, *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 885 (Fed. Cir. 2011) (en banc), and must not sweep beyond the adjudicated conduct, *see International Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004). The proposed order satisfies both requirements. Everplay will post security in the amount the Court deems proper under Rule 65(c). Given the limited scope of the proposed order, the security required to cover OMZZ's potential losses from a wrongful injunction is correspondingly limited. *See Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1141–42 & n.6 (7th Cir. 1994).

## V. CONCLUSION

Everplay respectfully requests that the Court enter a preliminary injunction in the form of the proposed order submitted herewith, enjoining Counterclaim-Defendants from making, using, offering to sell, or selling within the United States, or importing the Accused Products into the United States during the pendency of this action, upon security in an amount the Court deems proper.

POLSINELLI PC

/s/Mark T. Deming
Mark T. Deming, Ill. Bar No. 6299631
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
(312) 819-1900
mdeming@polsinelli.com

M. Lawrence Oliverio
*(pro hac vice)*
POLSINELLI PC
One International Place, Suite 3900
Boston, MA 02110
(617) 406-0335
loliverio@polsinelli.com

Andrew Z. Weaver
*(pro hac vice forthcoming)*
POLSINELLI PC
1000 Louisiana Street
Suite 6400
Houston, TX 77002
(713) 374-1600
aweaver@polsinelli.com

*Attorneys for Everplay Labs Limited.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and Local Rule 5.9.

/s/Mark Deming