# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | CASE NO. 1:26-CV-09480 |
| v. | ) | |
| EVERPLAY LABS LIMITED, | ) | |
| Defendant. | ) | |

**DECLARATION OF ANTHONY ERWIN**

I, Anthony Erwin, declare as follows:

1. I am over the age of 18, have personal knowledge of the statements made in this declaration, and if called as a witness, could testify competently thereto.

2. I make this declaration in support of Everplay Labs Limited's ("Everplay") Motion for Preliminary Injunction and the accompanying brief.

3. I am a Director of Everplay and I have been since the company was formed and registered with Companies House UK on November 14, 2021.

4. In that role, I have been directly involved in the conception, design, development, manufacture, marketing, sale, and support of the SUPERSPACE products, as well as Everplay's inventory planning, financing, U.S. operations, customer service, and monitoring of competing products and marketplace listings. I also have personal knowledge of the creation and development of SUPERSPACE and of Everplay's business

operations relevant to this motion.

5. I regularly receive and review sales reports, advertising and marketing reports, inventory and financing records, customer-service records, and marketplace captures, and I rely on those materials in making business decisions. The exhibits identified below are true and correct copies, excerpts, or summaries of records or point-in-time captures that I recognize from that work. The records cited below were created by or on behalf of Everplay or maintained by Everplay in the regular course of its business. I identify the source of each exhibit below.

6. The SUPERSPACE products are life-sized magnetic play-panels. An important aspect of the SUPERSPACE user experience is that children can bring panels together from different directions without having to match a particular orientation. Everplay emphasizes the ease and versatility of the connection in its product development and marketing because it allows children to build, take apart, and reconfigure structures themselves.

7. I am one of the named inventors of U.S. Patent No. 12,551,811 ("the '811 patent") and personally participated in developing the system disclosed in the patent, and I am familiar with claim 1. The other named inventor, Craig Spencer, and I are fathers. We began by trying to create the kind of life-sized play space our children had improvised from couch cushions, but that children could build, take apart, and rebuild themselves. We intended the product to spark creativity, foster teamwork, develop critical thinking, and facilitate sensory play.

8. We tried multiple unsuccessful prototypes before settling on the design that

became the SUPERSPACE products. Early versions had magnets placed at the sides of the edges, not at the corners. These versions did not utilize frames and were ultimately impractical because material that was strong enough, light enough, and inexpensive enough to implement the design was not available. We also considered various types of magnets, including adding strong (neodymium) rectangular fixed magnets. The fixed position using a strong magnet of that size repels too hard and did not work at the scale of our design. Eventually we came up with using a neodymium ball magnet in a casing that would allow it to rotate and so attract to the corresponding magnet in the opposite panel no matter which way the panels were aligned, but the surface area of ball / spherical magnets is small and so not strong enough relative to the size and cost. After substantial investigation and additional work, we switched to the magnetic orientation of a cylindrical magnet so that the magnetism runs through the long rounded cylinder side and not the flat ends (as a standard cylinder magnet does). This is called a diametrically-opposed cylindrical magnet and was not an off the shelf magnet. This gave us more magnetic surface area (long side of cylinder) relative to cost compared to a ball magnet and still allowed the spin to attract and connect inside a casing. Moving the magnets to the corner clips, allowing them to spin, and enabling the use of lightweight rigid frame materials like bamboo made the product feasible. The effort took more than 18 months and involved lots of failed iterations.

9. Everplay filed its first priority patent application on August 25, 2020, and launched a Kickstarter crowdfunding campaign in April 2021. The Kickstarter campaign drew more than 3000 backers, who pledged more than $1 million before a single unit

shipped. **<u>Exhibit A</u>** contains a true and correct capture of the campaign results, together with the public award pages and dated website-review evidence described below.

10. Since then, Everplay has invested significant resources into developing, patenting, and selling the SUPERSPACE products. SUPERSPACE products have received Gold awards from Core77 and the Industrial Designers Society of America. Customers overwhelmingly report satisfaction with SUPERSPACE products. Everplay's website reported a 4.8-star average across more than 1,100 customer reviews.

11. Everplay has also cultivated a brand reputation for high-quality craftsmanship through its great reviews, extensive social media presence, a business-to-business development program, a local presence in the U.S., and a commitment to customer service and product quality. Everplay also has a positive reputation for product safety and quality control. Everplay conducts rigorous product safety testing and goes above-and-beyond minimum requirements to make products that are safe for use by children.

12. Everplay has invested in a U.S.-based marketing team, a U.S. logistics team and California warehouse, a customer-service team in the U.S., and a U.S.-based business-to-business education team. These operations are more expensive than providing services remotely, but they allow Everplay to support U.S. customers and protect the reputation associated with SUPERSPACE.

13. From 2021 through 2025, Everplay spent more than $5 million on actual advertising and marketing.

14. The SUPERSPACE products are sold through Everplay's website and on Amazon.com. Everplay monitors competing listings and products, including on Amazon.

Everplay identified the UMoving products sold by OMZZ Trading Co., Limited and Ningbo UnionMax Technology Co., Ltd. (collectively, "OMZZ") through Amazon under ASINs B0F1F8XFQ6 and B0F1FC6SHD as the "Accused Products." The Accused Products are sold on Amazon.com in the same product subcategory where SUPERSPACE products are sold.

15. The Accused Products use the same general panel shapes and fort-building format, gray felt faces with pine trim, and similar window and triangular roof panels. The side-by-side photographs below fairly and accurately depict the products as I observed them. The UMoving product is not branded "SUPERSPACE," but its appearance and marketplace presentation are sufficiently similar that consumers may associate the products or sellers.















16. The additional comparisons shown above likewise fairly and accurately depict corresponding rectangular, triangular, square, trapezoid, and window panels of the SUPERSPACE and UMoving products.

17. OMZZ appears to intentionally target SUPERSPACE customers. The dimensions of the SUPERSPACE products were the product of careful and deliberate selection. A child must be able to crawl into a window and stay inside a structure built with the panels, but the panels cannot be so big that they are unwieldy for the child nor too small so that it takes too many panels to make a decent sized structure. The SUPERSPACE products struck a balance, but variations of a few inches bigger or smaller would have been acceptable without compromising the overall design. The dimensions of the UMoving products, however, are virtually identical to those of the SUPERSPACE products, and the connectors and magnets of the UMoving products are positioned such that they line up with those of the SUPERSPACE products. The panel shapes sold by OMZZ are almost identical and function identically. Thus, the design of the UMoving products appears to be a deliberate and intentional choice to offer a substitution for SUPERSPACE products. Indeed, the UMoving Amazon page includes several "Product Videos," one of which is a "customer review" from 'Kasey' featuring play panels that appear to be from a SUPERSPACE set, suggesting compatibility and interchangeability to customers. A significant part of Everplay's business is selling add-on packs and accessories. OMZZ's compatibility design choice and marketing strategy directly undermines this aspect of Everplay's business. OMZZ also offers the UMoving product in similar sets, with a large set of 24 panels and a small set of 20 panels compared to SUPERSPACE's "Big Set," which includes 24 panels, and a "Little Set," which includes 16 panels. Everplay is not aware of any discernible advantage or justification for creating panels of this particular size or panel sets of this particular number, other than the

commercial benefit of "compatibility" with SUPERSPACE.

18. OMZZ appears to have extended its infringing conduct and is likely to extend it further unless enjoined. For instance, OMZZ initially only offered the smaller set of 20 panels for sale. After selling those successfully, OMZZ then expanded to offer a larger set of 24 panels in February 2026, with an almost identical distribution of panel shapes. I anticipate that OMZZ's duplication efforts will continue to expand the longer the Accused Products are permitted to be sold. Any expansion of its offerings is expected to deepen the harm to Everplay's sales.

19. Everplay used Amazon's Patent Evaluation Express ("APEX") process to challenge the Accused Products promptly after the '811 patent issued. Everplay made its original submission on May 4, 2026. Amazon sent an APEX agreement back to Everplay on May 7, 2026. After administrative delay and an attempted resubmission that Amazon rejected because the original matter remained open, Everplay signed the agreement for the original matter on July 2, 2026, and Amazon began identifying and notifying the affected seller on July 6. Amazon initiated the evaluation on July 28, 2026, selected a neutral evaluator on August 4, and Everplay paid the evaluator's fee on August 5. OMZZ filed this action on August 7, 2026, and Amazon then paused the APEX evaluation.

20. Everplay advertises through search-engine optimization, social media, and paid keyword advertising, including on Amazon. I am familiar with and regularly review those efforts. I do not have access to OMZZ's Amazon advertising account and do not know which search terms, if any, OMZZ purchased. I do know that at the point-in-time the Amazon search captured in **<u>Exhibit B</u>** was created, a UMoving listing was returned when

consumers searched "SUPERSPACE," alongside SUPERSPACE listings. The images below are annotated to identify the search term used and the product results, which include the Accused Products.




21. Similarly, when consumers searched "SUPERSPACE MAGNETIC TILES," UMoving lists appear among the top results, including as "Sponsored" listings, alongside SUPERSPACE listings. **Exhibit B** contains full-page captures of the relevant SUPERSPACE and UMoving listing pages, with the ASINs, URLs, prices, and capture information preserved.




22. The Amazon listing for SUPERSPACE identifies the product as "magnetic fort building panels" and emphasizes the magnetic connection and ease of building with the panels.




23. The Amazon listing for the Accused Products identifies them as "magnetic fort building kit[s]" and similarly emphasizes strong magnetic connections and fort-building with the panels.




24. The captures also show exemplary price undercutting. The 24-panel SUPERSPACE Big Set was listed at $449, while the 24-piece UMoving product was

listed at $379.99, or $69.01 (approximately 15.4%) less. Amazon prices can change, but in my experience and personal knowledge UMoving products are consistently priced at a discount to the SUPERSPACE products.

25. **Exhibit C** contains dated screenshots of public reviews posted to the UMoving Amazon listings. A review on dated August 31, 2025 called UMoving "A great alternative to SUPERSPACE and much better value." Another review on that listing, dated June 26, 2026, stated that the family already owned "the original, Super Space tiles," chose UMoving because it was "on sale and more than half of what we paid" for the SUPERSPACE set, and, if starting again, would have chosen UMoving first. Those statements show consumers comparing the products directly and making purchase decisions based in part on price.

26. **Exhibit C** also includes a one-star review dated March 6, 2026. The review publicly alleges that corners broke and came apart, and that customer service was "terrible." Negative reviews about UMoving products matter to Everplay because the complaints are publicly associated with a product that closely resembles SUPERSPACE. Indeed, Everplay has received a customer-service inquiry in which the customer mistook a UMoving listing and return policy for SUPERSPACE.

27. For example, **Exhibit D** is a redacted copy of an ordinary-course customer-service record that I recognize from Everplay's records. On November 7, 2025, a customer asked Everplay whether returns were free. After Everplay explained its return policy, the customer responded, "If you order on Amazon it says free returns," and sent screenshots of a UMoving listing. Everplay's representative had to explain, "this is

'UMoving,' not Superspace." This is an actual instance in which a consumer associated a UMoving Amazon listing and its return policy with SUPERSPACE, requiring Everplay to spend customer-service time correcting the confusion. The customer contacted Everplay directly, which illustrates that a UMoving listing on Amazon affects Everplay's customer relationships beyond transactions completed through Amazon.

28. Everplay has invested in safety testing, product refinement, a U.S. customer-service team, and warranty support because parents and educators must trust the product. That trust is an important part of the SUPERSPACE reputation. Sale of the Accused Products creates a risk that consumers who see or experience problems with the UMoving product will associate those problems with SUPERSPACE. The resulting loss of control over reputation and safety perceptions cannot be cured later with corrective advertising or money damages, especially because SUPERSPACE operates in the children's-product market where concerns can spread quickly through reviews and social media.

29. Everplay is a small company with one product family: SUPERSPACE sets and related add-ons. (*See* https://www.getsuperspace.com/collections/all). The Accused Products compete for the same consumers considering life-sized magnetic fort-building panel systems. Amazon is one place where those consumers discover and compare products, but the effect is not confined to Everplay's Amazon sales. Because the SUPERSPACE product family is the entirety of Everplay's business, diverted customers, price pressure, and source confusion affect the company as a whole rather than a discrete sales channel.

30. The holiday sale cycle is increasingly important to Everplay's business model. In 2022, fourth-quarter net sales accounted for 50.7% of full-year net sales. In 2023, this increased to 53.9%. In 2024, it increased to 65%, and in 2025, it increased to 72.1%. In 2025, November alone generated approximately 53.0% of Everplay's full-year U.S. net sales. **Exhibit E** is a true and correct summary of those actual records.

31. Everplay must manufacture and import holiday inventory months in advance. It commits cash and financing to be prepared for demand, and it cannot simply replenish after the holiday window has passed because production and international shipping require substantial lead time. Once these costs are committed, they remain even if sales are diverted. Unsold panels generate storage and carrying costs, consume working capital, and cannot restore the missed holiday revenue when sold later or at a discount.

32. The holiday season supplies much of the cash Everplay uses for operations, marketing, product development, customer support, and growth initiatives. A material shortfall during this finite window would reduce the resources available for those activities and could delay or foreclose opportunities that cannot be recovered later. At the same time, Everplay would remain responsible for the inventory, financing, warehouse, and carrying costs. Diverted holiday sales would therefore leave Everplay with committed costs and financed inventory after the quarter that historically determines most of its year.

33. Given the direct product comparison, the point-in-time price gap, the public review evidence, the actual customer confusion, and the finite holiday window, I expect continued sale of the Accused Products through the 2026 holiday season to divert sales

and customer relationships from Everplay. The Accused Products also create price pressure that can lead to permanent price erosion. A later damages award cannot transfer those customers and sales to Everplay or restore the original price premium once the opportunity for the 2026 holiday season is lost. For these reasons, the continued sale of the Accused Products through the 2026 holiday season would cause harm that is immediate and not fully measurable or reversible by a later damages award.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 15 September, 2026.

Anthony Erwin