# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

OMZZ TRADING CO., LIMITED et al,

Plaintiff,

vs.

EVERPLAY LABS LIMITED,
Defendant.

Case No. 1:26-cv-09480

# DECLARATION OF TIM P. FLETCHER

# TABLE OF CONTENTS


I. INTRODUCTION .... 1

A. Scope of Opinions .... 1

B. Compensation, Work Experience, and Education .... 2

C. Specific Experience with Toys, Magnets and Textile Environments .... 5

D. Software used .... 7

E. Diametrically Magnetized Cylindrical Magnet - Definition .... 7

II. SUMMARY OF CONCLUSIONS .... 9

III. STATEMENT OF RELEVANT LEGAL PRINCIPLES .... 10

A. Infringement of a utility patent .... 10

IV. LEVEL OF ORDINARY SKILL IN THE ART .... 11

V. EVERPLAY MAGNETIC PLAY FORT AND THE ACCUSED PRODUCTS .... 11

VI. ANALYSIS OF THE '811 PATENT IN LIGHT OF THE ACCUSED PRODUCTS .... 21

A. Claims of the '811 Patent .... 21

B. Infringement Analysis of the '811 Patent .... 24

C. The OMZZ Accused Product Infringes Claim 1 of the '811 Patent .... 24

D. The OMZZ Accused Product Infringes Claim 2 of the '811 Patent .... 29

E. The OMZZ Accused Product Infringes Claim 3 of the '811 Patent .... 30

F. The OMZZ Accused Product Infringes Claim 4 of the '811 Patent .... 31

G. The OMZZ Accused Product Infringes Claim 6 of the '811 Patent .... 32

H. The OMZZ Accused Product Infringes Claim7 of the '811 Patent .... 32

I. The OMZZ Accused Product Infringes Claim 8 of the '811 Patent .... 33

J. The OMZZ Accused Product Infringes Claim 12 of the '811 Patent .... 34

K. The OMZZ Accused Product Infringes Claim 13 of the '811 Patent .... 34

L. The OMZZ Accused Product Infringes Claim 16 of the '811 Patent .... 35

M. The OMZZ Accused Product Infringes Claim 17 of the ‘811 Patent .................. 36

N. The OMZZ Accused Product Infringes Claim 18 of the ‘811 Patent .................. 40

O. The OMZZ Accused Product Infringes Claim 19 of the ‘811 Patent .................. 41

P. The OMZZ Accused Product Infringes Claim 20 of the ‘811 Patent .................. 42

Q. The OMZZ Accused Product Infringes Claim 21 of the ‘811 Patent .................. 43

VII. VALIDITY OF THE ’811 PATENT: NONOBVIOUSNESS........................................ 44

A. The Asserted Claims of the ‘811 Patent are Not Rendered Obvious Alone or in Combination ........................................................................................ 45

1. Ornstein....................................................................................... 46

2. Wei.............................................................................................. 48

3. Kim ............................................................................................. 50

VIII. CONCLUSION................................................................................................ 53

# I. INTRODUCTION

## A. Scope of Opinions

1. My name is Tim P. Fletcher. I am an industrial designer and president of One BusinessDesign, LLC in Garner, North Carolina.

2. I understand that Everplay Labs, Limited ("Everplay" or "Defendant") alleges that OMZZ Trading Co., Limited et al ("OMZZ" or "Plaintiff") infringes multiple claims of U.S. Patent No. 12,551,811 (the '811 Patent) titled, "System, Panel and Method" in litigation that is currently pending in the Northern District of Illinois. A true and correct copy of the '811 Patent is attached as **Exhibit A.**

3. I have been retained by Everplay to review and analyze certain issues related to this lawsuit, and render expert opinions as set forth more fully below.

4. Specifically, I understand that Everplay alleges OMZZ's 20 and 24 Piece Magnetic Fort Building Kits – Amazon ASIN numbers B0F1F8XFQ6 and B0F1FC6SHD ("the Accused Product") infringe at least asserted claims 1, 2, 3, 4, 6, 7, 8, 12, 13, 16, 17, 18, 19, 20 and 21 ("the Asserted Claims") of the '811 Patent.

5. I have been asked by counsel for Everplay to review the '811 Patent, the Asserted Claims, Everplay's "SUPERSPACE" product, the accused product, the patent law provided by counsel, and other documents, evidence, and testimony provided by counsel that is related to this litigation. In doing so, I have been asked by counsel for Everplay to analyze whether the accused products sold by OMZZ infringe the Asserted Claims of the '811 Patent.

6. This declaration includes my opinions and bases regarding the analysis mentioned above relating to the '811 Patent and the accused product and is based upon information currently available to me. I reserve the right to supplement this declaration with additional analysis and opinions regarding this matter.

7. To the extent that additional information becomes available, I may continue my investigation and study, which may include a review of information and documents that recently have been or may be produced, as well as testimony from depositions that have not yet taken place in the litigation. I may also supplement my opinions in response to any additional information that becomes available to me, any matters raised by OMZZ and/or opinions or submissions provided by any of OMZZ's experts, or in light of relevant orders from the Court. I may supplement or formulate new opinions if there is a material change in the law, facts, or opinions offered by others between now and trial in this matter.

**B. Compensation, Work Experience, and Education**

8. I am being compensated at the rate of $600.00 per hour for my work on this matter. My compensation is in no way contingent on the nature of my findings, presentation of these findings in my testimony, or the outcome of this litigation or any proceeding related to the same.

9. I am an industrial designer and president of One BusinessDesign, LLC in Graner, North Carolina. Industrial designers are graduates of schools of design either from a fine art orientation or a product development orientation. I come from the product development orientation side of design. Industrial Designers Society of America ("IDSA") defines industrial designers as: "typically focus on the physical appearance, functionality, and manufacturability of a product, though they are often involved in far more during a development cycle. All of this ultimately extends to the overall lasting value and experience a product or service provides for end-users."[1] My curriculum vitae is attached as **Exhibit B**. A listing of my patent publications and courses taught is attached as **Exhibit C**.

[1] https://www.idsa.org/about-idsa/advocacy/what-industrial-design/

10. I earned my Bachelor of Environmental Design Degree in Product Design from North Carolina State University in 1989 and my Master of Design Degree in Advanced Strategies at the Hong Kong Polytechnic University in 2008. For more than 35 years, I have worked as an industrial designer, product designer and developer, professor of industrial design courses, speaker, and consulting industrial designer. I am the named inventor on 22 design and utility patents in the United States as well as World Intellectual Property Organization ("WIPO"), Europe and Australia patent applications.

11. I have been employed as an industrial designer (designing new products) and product development manager (developing products and improving the process of product development and creation) for the following consumer/commercial products companies: Stahlwood Manufacturing Co.; Gerber Products Company; DP; Evenflo Company, Inc; Elumens; DAKA Designs; and Performance Bike. In total, I have designed or have overseen the design of over 150 products and product lines, including with respect to the design of toys, safety products, cups, bottles, nipples, pacifiers, teethers, strollers and other products for infants and toddlers, commercial electronics, immersive environments, exercise equipment and storage solutions, and various other consumer products.

12. As an industrial design consultant, I have designed consumer/commercial products or new product strategies for the following firms: Gamil Design, Daedalus, and One BusinessDesign. As a product development manager, I have sourced and inspected manufacturing plants in the United States, China, and Thailand, and I have been involved in troubleshooting manufacturing issues in the development of consumer/commercial products.

13. Beginning with my work at Evenflo in March 1996, I have worked with attorneys to prepare drawings for U.S. design patents. At Gamil Design and Elumens, I was involved in

the preparation of drawings and text for multiple U.S. and WIPO utility patent applications. I also have developed design patent drawings for clients.

14. Throughout my career, I have also been involved in consumer ethnographic research. Ethnography is the study of what people actually do in the particular social setting that is being observed.

15. I have taught industrial design courses at North Carolina State University, The Hong Kong Polytechnic University and Carnegie Mellon University. Courses include, but are not limited to, Manufacturing Materials and Processes, Professional Practice and Industrial Design Studio Courses, the latter of which included material relating to the form and preparation of design drawings.

16. I was an invited speaker for the 2017 Design in Plastics conference put on by the Society of Plastics Engineers. My presentation was titled *Visual Intellectual Property: The Value of Design Patents & Trade Dress*. In the presentation, I gave a brief history of design patents and trade dress, followed by a more in-depth analysis of patent application strategies as well as an explanation of design patent and trade dress registration and litigation. In 2006, the Danish Patent and Trademark Office invited me to speak, and I provided a presentation titled *IP as the Basis of Business for Innovative Companies in Asia*. In this presentation, I used case studies to explain alternative methods of protecting intellectual property from copying manufacturers in China.

17. I was inducted into the IDSA Academy of Fellows in 2009. The criteria for induction are that the Board of Directors may confer, by a two-thirds majority vote, a fellowship membership to a member in good standing who has earned the special respect and affection of the membership through distinguished service to the industrial design profession.

18. In December 2023, I was highlighted in IDSA' s 20/23 Recognition program, given to IDSA Members who dedicated their time and talents in the current year to the betterment of the Society and advancing the industrial design profession through information, education, community, and advocacy.

19. Based on my education and experience as described above and as set out in my C.V. and list of publications, I believe I am qualified as an expert to render the opinions provided in this declaration.

20. My opinions in this declaration are based on my judgment, training, education, experience, and expertise in designing and developing consumer/commercial products. To the extent I considered specific documents or data in formulating the opinions expressed in this declaration, all such items are listed in **Exhibit D**. I may, if appropriate at deposition or trial, cite to these documents for additional support for any of my opinions, beyond what I expressly cite in this declaration.

**C. Specific Experience with Toys, Magnets and Textile Environments**

21. In addition to the experience outlined above, I also have significant design experience in the creation and development of toys, products using magnets and textile-based environments.

22. At Stahlwood Manufacturing, Gerber Products Company and Evenflo Company, Inc. I designed a great many infant and toddler toys. Research in the design of these toys included understanding of theories of play. Photos of a small representative sample are provided below:










23. At Elumens, I designed fabric immersive environments including those for children. Images of these environments are provided below:






24. At Gamil Design, I designed collapsible fabric play yards for infants and toddlers. An image of this design is below:




25. At DAKA Designs Ltd, I designed products using magnets for holding products in place as well as allowing multiple configurations. Images of these products are provided below:







**D. Software used**

26. For the purposes of creating graphics and modifying images that are used throughout this declaration, I used the CorelDraw suite. This suite includes CorelDraw, which is a competitor to Adobe Illustrator, and Corel Photo, which is a competitor to Adobe Photoshop.

**E. Diametrically Magnetized Cylindrical Magnet - Definition**

27. Diametrically magnetized cylindrical magnets are discussed in claims 7 and 17 of the ‘811 Patent. As the differentiation between diametrically magnetized cylindrical magnets and axially magnetized cylindrical magnets is pertinent to the function of the ‘811

Patent, and as the difference between these two magnet types is very simple to understand, I have given a short description of each.

28. First, axially magnetized cylindrical magnets are the more standard magnets. They are magnetized through their length or thickness, or as they are cylinders, through the central axis of the cylinder, as shown below[2]:




29. Axially magnetized cylindrical magnets attract, and repel each other from their flat circular faces, as shown below:




[2] https://www.apexmagnets.com/news-how-tos/what-are-diametric-magnets-and-when-should-you-use-them/?srsltid=AfmBOoq2Jh2Rki5TQZZWyU4KmRfJI1bdIKFhnrCvyIgRVrxhDGB5RwLI

30. Diametrically magnetized cylindrical magnets, while readily obtainable, are used for specific purposes. They are magnetized across their diameter or width, or as they are cylinders, through the sides of the cylinder, as shown below:




31. Diametrically magnetized cylindrical magnets attract, and repel, each other from the curved sides of the cylinder, as shown below:




## II. SUMMARY OF CONCLUSIONS

32. As explained throughout this declaration, it is my opinion that the Accused Products sold by OMZZ infringe claims 1, 2, 3, 4, 6, 7, 8, 12, 13, 16, 17, 18, 19, 20 and 21 (the Asserted Claims) of the '811 Patent. It is further my opinion that, in designing the Accused Product, OMZZ copied the system for building a play area comprising two or more panels functionality and key features of Everplay Magnetic Play Fort products.

## III. STATEMENT OF RELEVANT LEGAL PRINCIPLES

33. I considered legal issues regarding claim construction, infringement, noninfringement, obviousness, and validity, as well as legal principles specific to utility patents.

34. I am not a legal expert. My understanding of the legal standards that I applied in reaching my opinions set forth in this declaration were provided to me by counsel for Everplay, are known to me from prior testimony that I have given, or come from my reading of some of the pleadings and rulings in this case or other cases I have been involved in. In preparing this declaration, I have tried to faithfully apply these legal standards in rendering my opinions.

35. Below, I will describe the law that I applied in considering these legal issues and principles when reaching my opinions.

### A. Infringement of a utility patent

36. I understand that whoever makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent, infringes the patent.

37. I understand that the claims of a patent define the invention covered by the patent.

38. I understand that when a product is accused of infringing a patent, the claims must be compared to the accused product to determine if the claims cover the accused product.

39. I understand that determining whether a given claim in the patent is infringed by the accused product requires a two-step analysis. First, the claim must be construed, and then the properly construed claim must be compared to what is accused of infringement.

40. I understand that Everplay bears the burden of proving that the accused products sold by OMZZ infringe at least one of the Asserted Claims of the '811 Patent by a preponderance of the evidence.

41. It is my understanding that for a claim to be infringed, each and every limitation of the claim must be present in the accused product. A claim can be infringed if each and every claim limitation of the claim is either literally found in the accused product or is found by an equivalent.

## IV. LEVEL OF ORDINARY SKILL IN THE ART

42. It is my opinion that a person of ordinary skill in the art ("POSITA") at the time of invention of the '811 Patent would have had a minimum of a Bachelor's degree in Industrial Design, Mechanical Engineering, or related field and approximately 5 years professional experience in the field of consumer products design and manufacturing. Additional graduate education could substitute for professional experience, or significant experience in the field could substitute for formal education. Thus, the more experience one has in a relevant field, the less formal education that may be required in order to attain the level of ordinary skill in the art, and vice versa.

43. I qualify as a person of ordinary skill in the art and meet these qualifications, at least as early as August 25, 2020, which is the earliest filing date of a foreign application to which the '811 Patent claims priority.

## V. EVERPLAY MAGNETIC PLAY FORT AND THE ACCUSED PRODUCTS

44. Everplay is a private limited company registered with the Companies House UK. The inventors—Anthony Erwin and Craig Spencer—are New Zealanders, who between them had a houseful of children who were continually boxing off areas in the living room, claiming them as their own territory, and building spaces out of couch cushions, pillows, and cardboard boxes. *See* Erwin Declaration and https://www.getsuperspace.com/pages/our-story. *See also, Counterclaim*.

45. The inventors saw a problem that could be solved. Children do not want a

playhouse an adult has already finished for them. They want to build the space, at their own scale, and then get inside it. Nothing on the market let them do that. The inventors also wanted something big that would let them physically play with their kids indoors and also encourage creativity and imaginative play. There was a gap in the market. Magnetic tiles existed, but at tabletop size. Play tents existed but arrived pre-shaped. There were no life-size, child-buildable, reconfigurable magnetic tiles. Everplay created the product category. Creating large, child-accessible magnetic tiles is not obvious and requires overcoming challenges. For example, a fixed axial magnet has a fixed polarity. Two panels brought together the wrong way repel. Holding a panel the size of a door and discovering it pushes away is the end of the play session. As magnets scale in size, the reaction is stronger. High-strength magnets near small children can present a serious hazard in the toy industry. Everplay's answer was to stop fixing the magnet in place, but to let it rotate. They housed a diametrically magnetized cylindrical magnet inside a connector with room to turn, and the magnet itself resolves the polarity. Bring two panels together from any orientation and each magnet spins to present the pole that attracts. There is no wrong way to hold the panel, and the same housing keeps the magnets from being pried out by a child. *Id*.

46. Everplay brought its invention to market by way of a Kickstarter campaign that closed with more than 3000 backers pledging more $1 million, with roughly three-quarters of that committed in the first three days. The invention was an instant hit with consumers and the industry, collecting numerous trade awards including: (a) Gold at the Core77 Design Awards (2022) Gold; (b) top prize in the Children's Product category at the 2022 IDEA / Industrial Designers Society of America; (c) twice winning the NAPPA (National Parenting Product Award) in 2022, and again 2026; (d) being selected as a Finalist for Playset of the Year at Toy of

the Year Awards by The Toy Foundation (US); and (e) winning one of the best "Helping Kids Learn, Play and Grow" prizes for the 2026 Good Housekeeping awards. The invention also accumulated significant press from outlets including the New York Times Wirecutter, Forbes, TODAY, CBS, USA Today, Yahoo, and BuzzFeed. *Id*.

47. At this time, Everplay sells its products under the brand name SUPERSPACE. *Id*.

48. I understand OMZZ is a limited company organized under the laws of Hong Kong, with its principal place of business at Room D6377, 4/F, Spinners Industrial Building Phase 5, 760 Cheung Sha Wan Road, Lai Chi Kok, Hong Kong. OMZZ is the Amazon seller of record and account holder for the Amazon listings of the Accused Products, through which the Accused Products are offered for sale and sold to consumers in the United States. An example of the OMZZ Accused Products are provided below:




20 Piece Set




24 Piece Set

https://www.amazon.com/20-Piece-Magnetic-Fort-Building-Kids/dp/B0F1FC6SHD/ref=sr_1_5 , which links to both the 20 and 24 Piece sets through a button on the Amazon page.

49. I understand that OMZZ received notice via Amazon of infringement at least as of

July 6, 2026. I requested and received samples of the SUPERSPACE product and the Accused Product. In particular, for comparison I reviewed both square panels, but in reviewing the products I understand similar features are found in other panels. I reviewed the '811 Patent for specifications explaining the materials, dimensions, magnet descriptions, shapes and construction methods. Below I list the pertinent sections of the specifications and describe both verbally and graphically the comparisons between the SUPERSPACE product and the Accused Product. Using images from their respective Amazon pages, below, it can be seen that both the SUPERSPACE product and the Accused Product include the shapes of a square, triangle, rectangle and trapezoid. The images below also show panels with and without apertures.

| SUPERSPACE | Accused Product |
|---|---|
|  |  |
| https://www.amazon.com/Superspace-Giant-Magnetic-Building-Panels/dp/B0G6SFC5V3 | https://www.amazon.com/20-Piece-Magnetic-Fort-Building-Kids/dp/B0F1FC6SHD/ref=sr_1_5 |

50. The below images illustrate, in a side-by-side manner, that both the SUPERSPACE product and the Accused Product contain panels with the same shapes, same sizes, same construction methods, and are functionally interchangeable:

| Square Closed |
|---|

| |
|---|
| <br>Accused Product SUPERSPACE product |
| **Square With Aperture** |
| <br>Accused Product SUPERSPACE product |
| **Triangular** |
| <br>Accused Product SUPERSPACE product |
| **Rectangular Closed** |



Accused Product SUPERSPACE product

**Rectangular With Aperture**



Accused Product SUPERSPACE product

**Trapezoid**



Accused Product SUPERSPACE product

51. The below images illustrate that both the SUPERSPACE product and the Accused Product both are able to create a play house and that they are also both child-sized:

| SUPERSPACE | Accused Product |
|---|---|
|  |  |
|  |  |

52. I have analyzed samples of the SUPERSPACE products and the Accused Products.. My below opinions are not based on ornamental appearances of either product. My analysis is based on merely visual or tactile observations, with no consideration of ornamentality. **Same materials:** Both the SUPERSPACE and Accused Products are comprised of plastic connectors, wooden dowels and sheets of felt material. The wooden dowels are fixed in position, to the felt sheets using textile webbing material, forming a loop along the length of the wooden dowel, sewn on both edges to the felt panels. **Same dimensions:** Using a metric tape measure, I measured the length and height of each square panel. The SUPERSPACE square panel and the Accused Product square panel were 0.5 meter in both length and height. **Magnet Positions:** Using a set of calipers, I measured the overall width of the connector, the depth that the outer face of magnets sat from the outer surface of the connector recess, as well as the magnets' length. An image showing these dimension locations are shown below:




53.

54. In each case the dimensions were as follows:

| | Connector Overall | Magnet Length | Recess to Magnet |
|---|---|---|---|
| SUPERSPACE | 60 mm | 10 mm | 23 mm |
| Accused Product | 60 mm | 10 mm | 27 mm |

55. **Magnet Types:** Both the SUPERSPACE product and the Accused Product use cylindrical magnets. Both also use diametrically magnetized cylindrical magnets. I determined the magnets were diametrically magnetized, further illustrated in the analysis of

claim 7 below by: marking the cylinder, allowing it to rotate in the connector, bringing a known diametrically magnetized cylindrical magnet to different portions of the curved surface, and observing the behavior of the magnets. These observations showed that opposite magnetic poles were located on opposing curved sides of the cylinder. Thus, the Accused Product includes diametrically magnetized cylindrical magnets. Images of the magnets from SUPERSPACE product and the Accused Product, separately and attracted can be seen below:

| **Accused Product** | **SUPERSPACE Product** |
|---|---|
|  |  |
| **Magnets Attracted** | |
|  | |

56. **Same Construction Methods:** Using panels from SUPERSPACE and the Accused Product I was able to build very similar constructions. Below is an image of this construction:




57. **Functionally Interchangeable:** Using the square panels, I have from SUPERSPACE and the Accused Product, I tested the interchangeability between each and its effect on function. I built two open cubes, or assemblies, for the purpose of giving a clear view as to which panels are from which party and to make sure both assemblies of panels would function equally. Below are images showing the panels fit together and allowed the creation of a structure:

| Assembly 1 | Assembly 2 |
|---|---|
| | |







## VI. ANALYSIS OF THE ‘811 PATENT IN LIGHT OF THE ACCUSED PRODUCTS

58. On February 17, 2026, the United States Patent and Trademark Office (“USPTO”) issued U.S. Patent No. 12,551,811, which is a utility patent entitled “SYSTEM, PANEL AND METHOD”. The ‘811 Patent was filed, at the USPTO on August 25, 2021 and was published on February 24, 2023. The ‘811 Patent is a national stage entry application of PCT Application No. PCT/EP2021/073530 filed August 25, 2021. The ‘811 Patent also claims priority through the PCT application to two earlier foreign applications: Great Britain Application No. 2013279 filed on August 25, 2020 and Great Britain Application No. 2101227 filed on January 29, 2021. The inventors of the ‘811 Patent are Anthony Mariner Erwin and Craig Ronald Spencer, and the current assignee is Everplay Labs, Limited.

59. The technology claimed in the ‘811 Patent, specifically as set forth in the Asserted Claims, is fully embodied in Everplay proprietary and commercially successful SUPERSPACE Magnetic Play Fort products. The claim analysis presented below concerns the infringement of the ‘811 Patent by the Accused Product. It is my opinion that the features of the Asserted Claims (claims 1, 2, 3, 4, 6, 7, 8, 12, 13, 16, 17, 18, 19, 20 and 21) would also be present in SUPERSPACE product.

### A. Claims of the ‘811 Patent

60. The ‘811 Patent has 3 independent claims, and 21 dependent claims for a total of 24 claims. I have only been asked to analyze the Asserted Claims (claims 1, 2, 3, 4, 6, 7, 8, 12, 13, 16, 17, 18, 19, 20 and 21), which are depicted below:

**1.** A system for building a play area comprising:
two or more panels, each of the two or more panels comprising:
a plurality of connectors, each connector of the plurality of connectors defining a first recess at a first end of the connector and a second recess at a second end of the connector;
a plurality of magnets, each magnet of the plurality of magnets positioned in a connector of the plurality of connectors such that the magnet is able to rotate, the plurality of magnets comprising:
a first magnet housed in the first recess of a first connector of the plurality of connectors; and
a second magnet housed in the second recess of the first connector; and
a plurality of dowels comprising:
a first dowel, a first end of which is received within the first recess of the first connector and a second end of which is received within the first recess of a second connector of the plurality of connectors; and
a second dowel, a first end of which is received within the second recess of the first connector and a second end of which is received within the first recess of a third connector of the plurality of connectors, wherein the first connector is coupled to the first dowel and the second dowel, the second dowel angled with respect to the first dowel;
wherein, for each of the two or more panels,-when an edge of a first panel of the two or more panels is brought towards an edge of a second panel of the two or more panels from any direction, at least one magnet of the plurality of magnets in each of the first panel and the second panel orientates such that a magnetic connection is formed between the first panel and the second panel.

**2.** The system as claimed in claim **1,** wherein the first dowel holds the first magnet in the first recess of the first connector and the second dowel holds the second magnet in the second recess of the first connector.

**3.** The system as claimed in claim **1,** wherein at least one panel of the two or more panels further comprises fabric having sleeves through which the first dowel and second dowel pass through.

**4.** The system as claimed in claim **1,** wherein the play area comprises a life-size play area comprising a structure between 0.5 meters and 2.5 meters tall.

**6.** The system according to claim **1,** wherein each of the two or more panels are formed by connecting the plurality of connectors and the plurality of dowels;

and wherein each dowel of the plurality of dowels connects two of the plurality of connectors together.

**7.** The system according to claim **1,** wherein each of the first magnet and the second magnet is a diametrically magnetized cylindrical magnet.

**8.** The system according to claim **1,** wherein each recess of the first connector is shaped to house an outer profile of the at least one magnet.

**12.** The system according to claim **1,** wherein the two or more panels comprise at least one of: a triangular panel; a square panel; a rectangular panel; or a trapezoid panel, and wherein at least one of the two or more panels defines an aperture which provides a window for the play area.

**13.** The system according to claim **1,** wherein the system is able to be arranged to build the play area, and wherein the play area comprises at least one of: a play house; a stage; a scene; an exhibition display; a play car; a play spaceship; a box;
furniture; floor tiles; a floor mat of combined panels; a toy roadway, or a stage.

**16.** The system according to claim **1** wherein a frame of each of the two or more panels is formed by connecting the plurality of connectors and the plurality of dowels; and wherein each dowel of the plurality of dowels connects two of the plurality of connectors together.

**17.** A panel for building a play area, the panel comprising:
a connector defining a first recess at a first end of the connector and a second recess at a second end of the connector;
a plurality of magnets, each magnet positioned in the connector such that each magnet is able to rotate; and
a plurality of dowels comprising:
a first dowel, a first end of which is received within the first recess; and
a second dowel, a first end of which is received within the second recess;
wherein the plurality of magnets comprises a cylindrical magnet, the cylindrical magnet being diametrically magnetized;
wherein the plurality of magnets comprises:
a first magnet housed in the first recess; and
a second magnet housed in the second recess; wherein the connector is coupled to the first dowel and the second dowel.

**18.** The panel according to claim **17,** comprising a plurality of connectors comprising the connector and a plurality of dowels comprising the first dowel and the second dowel, wherein the panel is formed by connecting the plurality of connectors and the plurality of dowels; and wherein each dowel of the plurality of dowels connects two of the plurality of connectors together.

**19.** The panel according to claim 17, the panel comprising a frame, the frame comprising: a plurality of connectors comprising the connector; a plurality of dowels comprising the first dowel and the second dowel; wherein each dowel of the plurality of dowels connects two of the plurality of connectors together to form the frame.

**20.** The panel according to claim **17,** wherein:
the second dowel is angled at a right angle, an acute angle, or an obtuse angle with respect to the first dowel.

**21.** The panel according to claim **20,** wherein:
the first dowel holds the first magnet in the first recess; and
the second dowel holds the second magnet in the second recess.

### B. Infringement Analysis of the '811 Patent

61. It is my opinion that the Accused Products that OMZZ makes, uses, sells, offers for sale, and/or imports in the U.S. infringe the Asserted Claims of the '811 Patent.

62. In the charts below for all Asserted Claims, I analyze how each and every claim limitation is met by the accused products. Where appropriate, I utilize corresponding images of the OMZZ accused product. In some instances, I utilize photographs of the OMZZ accused product that I have taken from the OMZZ Amazon web page[3] or documents produced by counsel showing images of the OMZZ accused product.

### C. The OMZZ Accused Product Infringes Claim 1 of the '811 Patent

63. As shown below, the OMZZ Accused Product infringes all limitations of Claim 1 of the '811 Patent:

[3] https://www.amazon.com/20-Piece-Magnetic-Fort-Building-Kids/dp/B0F1FC6SHD/ref=sr_1_5

| Claim 1 of '811 Patent | OMZZ Accused Product |
|---|---|
| A system for building a play area comprising: |  Play Area |
| two or more panels, each of the two or more panels comprising: |   |
| a plurality of connectors, each connector of the plurality of connectors defining a first recess at a first end of the connector and a second recess at a second end of the connector; |     |

| Claim 1 of '811 Patent | OMZZ Accused Product |
|---|---|
| a plurality of magnets, each magnet of the plurality of magnets positioned in a connector of the plurality of connectors such that the magnet is able to rotate, the plurality of magnets comprising: | I marked each magnet with a black Sharpie® marker in order to aid in understanding their orientation. As indicated above, I found that the magnet is able to rotate. |

| Claim 1 of '811 Patent | OMZZ Accused Product |
|---|---|
| a first magnet housed in the first recess of a first connector of the plurality of connectors; and |     |
| a second magnet housed in the second recess of the first connector; and |     |
| a plurality of dowels comprising: | |

| Claim 1 of '811 Patent | OMZZ Accused Product |
|---|---|
| |   |
| a first dowel, a first end of which is received within the first recess of the first connector and a second end of which is received within the first recess of a second connector of the plurality of connectors; and |   |
| a second dowel, a first end of which is received within the second recess of the first connector and a second end of which is received within the first recess of a third connector of the plurality of connectors, wherein the first connector is coupled to the first dowel and the second dowel, the second dowel angled with respect to the first dowel; |   |

<table>
<tr><th>Claim 1 of ‘811 Patent</th><th>OMZZ Accused Product</th></tr>
<tr><td></td><td>
</td></tr>
<tr><td>wherein, for each of the two or more panels,- when an edge of a first panel of the two or more panels is brought towards an edge of a second panel of the two or more panels from any direction, at least one magnet of the plurality of magnets in each of the first panel and the second panel orientates such that a magnetic connection is formed between the first panel and the second panel.</td><td>


I observed that magnets inside the connectors, such that the magnet orientates such that a magnetic connection is formed. Additionally, I observed that the magnets in the two panels form a magnetic connection when an edge of a first panel is brought towards  and edge of a second panel.</td></tr>
</table>

**D. The OMZZ Accused Product Infringes Claim 2 of the ‘811 Patent**

64. As shown below, the OMZZ Accused Product satisfies all the limitations of

Claim 2 as shown below:

| Claim 2 of '811 Patent | OMZZ Accused Product |
| --- | --- |
| The system as claimed in claim **1,** wherein the first dowel holds the first magnet in the first recess of the first connector and the second dowel holds the second magnet in the second recess of the first connector. | <br>I observed that the first dowel holds the first magnet in the first recess of the first connector and the second dowel holds the second magnet in the second recess of the first connector. |

## E. The OMZZ Accused Product Infringes Claim 3 of the '811 Patent

65. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 3 of the '811 Patent:

| Claim 3 of '811 Patent | OMZZ Accused Product |
| --- | --- |
| The system as claimed in claim **1,** wherein at least one panel of the two or more panels further comprises fabric having sleeves through which the first dowel and second dowel pass through. |  |

| | |
|---|---|
| |  |

**F. The OMZZ Accused Product Infringes Claim 4 of the '811 Patent**

66. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 4 of the '811 Patent:

| Claim 4 of '811 Patent | OMZZ Accused Product |
|---|---|
| The system as claimed in claim **1,** wherein the play area comprises a life-size play area comprising a structure between 0.5 meters and 2.5 meters tall. | <br>19.7 inches equals 0.5 meters<br><br>Structure shown is greater than 0.5 meters and is less than 2.0 meters |

### G. The OMZZ Accused Product Infringes Claim 6 of the '811 Patent

67. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 6 of the '811 Patent:

| Claim 6 of '811 Patent | OMZZ Accused Product |
|---|---|
| The system according to claim **1,** wherein each of the two or more panels are formed by connecting the plurality of connectors and the plurality of dowels; and wherein each dowel of the plurality of dowels connects two of the plurality of connectors together. |  |

### H. The OMZZ Accused Product Infringes Claim7 of the '811 Patent

68. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 7 of the '811 Patent:

<table>
<tr><th>Claim 7 of ‘811 Patent</th><th>OMZZ Accused Product</th></tr>
<tr><td>The system according to claim 1, wherein each of the first magnet and the second magnet is a diametrically magnetized cylindrical magnet.</td><td>



I marked each magnet with a black Sharpie® marker in order to aid in understanding their orientation.

Cylindrical Magnet</td></tr>
</table>

**I. The OMZZ Accused Product Infringes Claim 8 of the ‘811 Patent**

69. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 8 of the ‘811 Patent:

| Claim 8 of '811 Patent | OMZZ Accused Product |
|---|---|
| The system according to claim **1,** wherein each recess of the first connector is shaped to house an outer profile of the at least one magnet. |  |

**J. The OMZZ Accused Product Infringes Claim 12 of the '811 Patent**

70. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 12 of the '811 Patent:

| Claim 12 of '811 Patent | OMZZ Accused Product |
|---|---|
| The system according to claim **1,** wherein the two or more panels comprise at least one of: a triangular panel; a square panel; a rectangular panel; or a trapezoid panel, and wherein at least one of the two or more panels defines an aperture which provides a window for the play area. |  |

**K. The OMZZ Accused Product Infringes Claim 13 of the '811 Patent**

71. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 13 of the '811 Patent:

| Claim 13 of '811 Patent | OMZZ Accused Product |
|---|---|
| The system according to claim **1,** wherein the system is able to be arranged to build the play area, and wherein the play area comprises at least one of: a play house; a stage; a scene; an exhibition display; a play car; a play spaceship; a box; furniture; floor tiles; a floor mat of combined panels; a toy roadway, or a stage. |   |

### L. The OMZZ Accused Product Infringes Claim 16 of the '811 Patent

72. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 16 of the '811 Patent:

| Claim 16 of '811 Patent | OMZZ Accused Product |
|---|---|
| The system according to claim **1** wherein a frame of each of the two or more panels is formed by connecting the plurality of connectors and the plurality of dowels; and wherein each dowel of the plurality of dowels connects two of the plurality of connectors together. |  |

M. **The OMZZ Accused Product Infringes Claim 17 of the '811 Patent**

73. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 17 of the '811 Patent:

| Claim 17 of '811 Patent | OMZZ Accused Product |
|---|---|
| A panel for building a play area, the panel comprising: | <br>Panel |
| a connector defining a first recess at a first end of the connector and a second recess at a second end of the connector; |  |

| Claim 17 of '811 Patent | OMZZ Accused Product |
|---|---|
| a plurality of magnets, each magnet positioned in the connector such that each magnet is able to rotate; and |   I marked each magnet with a black Sharpie® marker in order to aid in understanding their orientation. |
| a plurality of dowels comprising: |   |
| a first dowel, a first end of which is received within the first recess; and | |

| Claim 17 of '811 Patent | OMZZ Accused Product |
| --- | --- |
| |  |
| a second dowel, a first end of which is received within the second recess; |  |
| wherein the plurality of magnets comprises a cylindrical magnet, the cylindrical magnet being diametrically magnetized; | <br><br>I marked each magnet with a black Sharpie® marker in order to aid in understanding their orientation. In observing the magnet, I was able to determine that it was diametrically magnetized. |

| Claim 17 of '811 Patent | OMZZ Accused Product |
|---|---|
| |  Cylindrical Magnet |
| wherein the plurality of magnets comprises: |   |
| a first magnet housed in the first recess; and |   |
| a second magnet housed in the second recess; wherein the connector is coupled to the first dowel and the second dowel. |   |

### N. The OMZZ Accused Product Infringes Claim 18 of the '811 Patent

74. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 18 of the '811 Patent:

| Claim 18 of '811 Patent | OMZZ Accused Product |
|---|---|
| The panel according to claim 17, comprising a plurality of connectors comprising the connector and a plurality of dowels comprising the first dowel and the second dowel, |  Panel   |

<table>
<tr><th>Claim 18 of '811 Patent</th><th>OMZZ Accused Product</th></tr>
<tr><td>wherein the panel is formed by connecting the plurality of connectors and the plurality of dowels; and</td><td>

Panel</td></tr>
<tr><td>wherein each dowel of the plurality of dowels connects two of the plurality of connectors together.</td><td>
</td></tr>
</table>

## O. The OMZZ Accused Product Infringes Claim 19 of the '811 Patent

75. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 19 of the '811 Patent:

| Claim 19 of '811 Patent | OMZZ Accused Product |
|---|---|
| The panel according to claim 17, the panel comprising a frame, the frame comprising: a plurality of connectors comprising the connector; a plurality of dowels comprising the first dowel and the second dowel; wherein | |

<table>
<tr><th>Claim 19 of ‘811 Patent</th><th>OMZZ Accused Product</th></tr>
<tr><td>each dowel of the plurality of dowels connects two of the plurality of connectors together to form the frame.</td><td>

Panel

</td></tr>
</table>

**P. The OMZZ Accused Product Infringes Claim 20 of the ‘811 Patent**

76. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 20 of the ‘811 Patent:

| Claim 20 of ‘811 Patent | OMZZ Accused Product |
|---|---|
| The panel according to claim 17, wherein: | |

| Claim 20 of '811 Patent | OMZZ Accused Product |
|---|---|
| |  Panel |
| the second dowel is angled at a right angle, an acute angle, or an obtuse angle with respect to the first dowel. |   Right angle shown above |

**Q. The OMZZ Accused Product Infringes Claim 21 of the '811 Patent**

77. As shown below, the OMZZ Accused Product satisfies all the limitations of Claim 21 of the '811 Patent:

| Claim 21 of '811 Patent | OMZZ Accused Product |
|---|---|
| The panel according to claim 20, wherein: | |

| Claim 21 of '811 Patent | OMZZ Accused Product |
| --- | --- |
| |  Panel |
| the first dowel holds the first magnet in the first recess; and |   |
| the second dowel holds the second magnet in the second recess. |   |

## VII. VALIDITY OF THE '811 PATENT: NONOBVIOUSNESS

78. Based on my review of the documents in **Exhibit D** of this declaration, I reviewed the Complaint for Declaratory Judgement, while OMZZ has suggested several prior art references, OMZZ has only stated one obviousness combination in regard to claim 1. OMZZ alleges that the claims are obvious based upon a combination of U.S. Patent Publication No. 2016/0184727 ("Ornstein") in view of Chinese Patent Publication No. CN 104274984 A ("Wei")

and further in view of International Publication No. WO 2006/112679 A1 ("Kim"). OMZZ asserts the following in regard to the obviousness rationale:

> "For example, claim 1 is obvious over Ornstein in view of Wei and Kim. Ornstein discloses magnetic building tiles for constructing play structures — including play houses, castles, and forts — whose frames are formed of connectable segments housing magnets and whose tiles connect edge to edge at any angle. Wei discloses connectors having recesses at opposite ends, each recess housing a magnet, with elongated main pipes — dowels — received in the recesses of adjacent connectors, including at angles, to form three-dimensional frames. Kim discloses magnets held in receiving portions of a connecting member by mounting caps such that the magnets rotate and self-orient when another magnet approaches, the caps defining holes that receive rod bodies. A person of ordinary skill in the art would have been motivated to combine these teachings — applying Kim's rotatable, self-orienting magnet mountings to the panel frames of Ornstein and Wei to solve the familiar problem of mismatched magnetic poles — with a reasonable expectation of success, yielding the system recited in claim 1." (OMZZ's Complaint for Declaratory Judgement at paragraph 31)

79. I have reviewed Ornstein, Wei and Kim. It is my opinion that the combination of references relied on by OMZZ, in the above, do not render obvious any of the Asserted Claims of the '811 patent. Again, based on the one combination given by OMZZ, none of the prior art cited by OMZZ, alone or when combined with the other two cited prior art, disclose all the elements of the Asserted Claims.

### A. The Asserted Claims of the '811 Patent are Not Rendered Obvious Alone or in Combination

1. **Ornstein**

80. It is my opinion that Ornstein does not render the Asserted Claims obvious.

81. During the prosecution of the '811 Patent, in the Response to Final Office Action, notes from an Examiner Interview make quite clear that modifications to the claim language of the '811 Patent would render it nonobvious to Ornstein. Excerpts from these notes are below:

> "Independent claim 1, 17, and 20 (as presented in Applicant's already filed response) were discussed. U.S. Patent Publication No. 2016/0184727 to Ornstein, et al. ("Ornstein").....
>
> Regarding independent claim 1, no specific agreement was reached but Examiner Ford indicated that, in her view, additional description of the structure of the connectors would likely be necessary to overcome the rejection under 35 U.S.C. § 103 in view of the cited references. Specifically, Examiner Ford indicated that a further definition of the connector, e.g., reciting the recesses in ends of the connector and how they receive the first and second dowels therein, would likely overcome the cited references, which Examiner Ford described as having perpendicularly angled first and second dowels relative to one another. Additionally, Examiner Ford indicated that claiming the angle of the dowels relative to each other would overcome the cited references.
>
> More generally, Examiner Ford indicated that, in her view, the claims with further amendments along the lines of those discussed in the Examiner Interview could be distinguished from the discussed references, including Ornstein, Hoenigschmid, Rosen, and Xie, each of which fail to disclose separate "connectors" and "dowels" as discussed

and are of quite a different nature." Office Action Response dated August 28, 2025, pages 9-10.

82. In the same document, under the section entitled Claim Rejections Based on 35 U.S.C. § 103, the following was stated:

"a. Claims 1, 2, 6-9, 12, 13, and 15-23 are Allowable over Ornstein in view of Hoenigschmid

The Office Action indicates that **claims 1**-2, 6-9, 12-13, and 15-23 **stand rejected under 35 U.S.C. § 103 as allegedly being obvious over U.S. Patent Publication No. 2016/0184727 to Ornstein, et al. ("Ornstein")** in view of U.S. Patent Publication No. 2022/0047960 to Hoenigschmid ("Hoenigschmid")."(**emphasis added**) Office Action Response dated August 28, 2025, page 11

83. After my review I agree with the examiner on the reasons that Ornstein would not render the '811 Patent obvious. Ornstein's frame portions include, in a different way, what would be the connector, first dowel and halves of a second and third dowel in the '811 Patent. Below is the text from Ornstein as well as the figures referenced in their description:

"As shown in FIGS. 2 and 3, .......... the first and second **frame portions 14, 16** where the frame portions 14, 16 meet together when disposed around portions of the tile panel." (Ornstein, , paragraph [0132], and FIGS. 2 and 3) (**emphasis added**)




FIG. 2




FIG. 3

2. **Wei**

84. OMZZ suggests that Wei "Wei discloses connectors having recesses at opposite ends, each recess housing a magnet, with elongated main pipes — dowels — received in the recesses of adjacent connectors, including at angles, to form three-dimensional frames." A POSITA would not equate pipes with dowels, as they are two fundamentally different things. A pipe is a cylindrical extrusion with a hollow interior. A dowel is a cylindrical extrusion with a solid interior, such as a peg, used for holding together components of a structure. A dictionary definition of dowel confirms this as shown in **Exhibit E**.

85. The function of the magnets in Wei and the '811 Patent are completely different. In Wei the magnets, in conjunction with magnetically attractable metal, serve as an assembly method between different frame portions that when assembled create an open framework. Simply it allows the connection of individual components to create a frame. This is described in Wei as follows:

> "If the concave joining ends of the adapters are all provided with magnets, the convex joining ends of the main-body pipelines are all provided with magnetically attractable metal, and the connecting block is magnetically attractable metal. If the concave joining ends of the adapters are all provided with magnetically attractable metal, the convex joining ends of the main-body pipelines are all provided with magnets, and the connecting block is a magnet." Wei, machine translation at claim 3.

86. Wei is a pipeline assembly, which is structurally inconsistent with the claimed invention. This fundamentally different method of construction and assembly teaches away from the '811 Patent, eliminating the POSITA's motivation to combine. An image of this open framework can be seen in Figure 1 of Wei, as shown below:




图 1

87. These magnets are also axially magnetized magnets, meant to connect the flat faces of the magnets to the flat faces of the magnetically attractable metal, and not to connect to another magnet.

88. In the ‘811 Patent the magnets, and only magnets, serve as an assembly method only between two or more completely assembled frames, with panels, allowing them to create fully closed, fully open or windowed three-dimensional enclosed spaces. The magnets in the ‘811 Patent are diametrically magnetized magnets, meant to connect at the rounded outer surface of the magnet, allowing it to retain a connection as the completely assembled frames rotated about each other.

89. Therefore, while Wei may state that the magnets may have “connectors having recesses at opposite ends, each recess housing a magnet”, all of their functional attributes are completely different, eliminating the motivation to combine, and a POSITA would not be taught by Wei.

3. **Kim**

90. OMZZ suggests that “Kim discloses magnets held in receiving portions of a connecting member by mounting caps such that the magnets rotate and self-orient when another magnet approaches, the caps defining holes that receive rod bodies.”

Kim discloses a “magnetic toy set,”, however, Kim is a rod-and-ball set as described in relation to FIGS 3 and 4, as shown:




91. The function, type and use of the magnets in Kim and the ‘811 Patent are completely different. In Kim, the magnets are axially magnetized magnets, meant to connect the flat faces of the magnets to each other Kim at [24]. In order to do this, a flat positive side of the magnet needs to connect with a flat negative side of another magnet. In Kim, the magnets spin their flat faces around on an axis, across the diameter of the circle, in order to allow the needed flat face to be in position to mate flat faces with the other magnet. An annotated image from Kin, showing this axis of rotation is below:




Annotated FIG. 14 of Kim

92. In the ‘811 Patent the magnets are diametrically magnetized magnets, meant to connect at the rounded outer surface of the magnet. In the ‘811 Patent, these magnets spin along a central axis of the cylinder, in order to allow the fully assembled panels to be

attached either in-line or at different angles from each other. An annotated image from the '811 Patent, showing this axis of rotation is below:




Annotated and Amended FIG. 13 of the '811 Patent

93. Therefore, while Kim may state "that the magnets may have that the magnets rotate and self-orient when another magnet approaches", all of their functional attributes are completely different, eliminating the motivation to combine, and a POSITA would not have been able to use Kim to arrive at the claimed subject matter.

94. Based on my above analysis, it is my opinion that the proposed combination given by OMZZ does not raise a substantial question of invalidity. Specifically, none of the prior art cited by OMZZ, alone or when combined with the other two cited prior art, disclose all the elements of the Asserted Claims, and a POSITA would not have been taught the Asserted Claims by the prior art because of the functional differences between the elements of the cited prior art and the '811 Patent. Based on my experience and opinions above this combination appears to be a hindsight-based accumulation of prior art references, not based on motivations to combine. Therefore, it is my opinion '811 Patent is not obvious over Ornstein in view of Wei and Kim and OMZZ has not raised a substantially question of invalidity.

## VIII. CONCLUSION

95. Based upon my experience and expertise, my review of the relevant documents in this case and the relevant legal principles, it is my opinion that (1) the Accused Products sold by OMZZ infringe at least claims 1, 2, 3, 4, 6, 7, 8, 12, 13, 16, 17, 18, 19, 20 and 21 of the '811 Patent; (2) the Accused Products embody the patented invention set forth in Asserted Claims 1, 2, 3, 4, 6, 7, 8, 12, 13,16, 17, 18, 19, 20 and 21 of the '811 Patent; (3) in designing the Accused Products , OMZZ copied the system for building a play area comprising two or more panels functionality and key features of Everplay Magnetic Play Fort products.

96. I reserve the right to supplement my opinions in the future to respond to any arguments or evidence that may be raised by OMZZ's experts and to take into account new information as it becomes available to me. I may prepare additional visual aids to use at trial to help illustrate my opinions, including animations, charts, or other demonstratives.

September 16, 2026

Tim P. Fletcher