IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) |
| Plaintiffs, | ) CASE NO. 1:26-CV-09480 |
| v. | ) |
| EVERPLAY LABS LIMITED, | ) |
| Defendant. | ) |

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF EVERPLAY LABS LIMITED'S OPPOSITION TO PLAINTIFFS' MOTION TO STAY PROCEEDINGS PENDING EX PARTE REEXAMINATION**

Everplay Labs Limited ("Everplay") hereby opposes the Motion to Stay Proceedings Pending *Ex Parte* Reexamination (Dkt. 19) filed by OMZZ Trading Co., Limited ("OMZZ") and Ningbo UnionMax Technology Co., Ltd. ("UnionMax") (together, "Plaintiffs").

## I. INTRODUCTION

This motion is a delay tactic. Every month of delay lets Plaintiffs sell copies into the market Everplay created—including the holiday season that drives most of Everplay's year—while any money judgment against these China- and Hong Kong-based sellers grows harder to collect. Everplay created the market for life-sized magnetic play panels. In an all too familiar story, Plaintiffs flooded into the market with their discounted knock-offs, diverting sales and creating downward pressure on Everplay's prices.

Everplay takes intellectual property rights seriously. Everplay secured U.S. Patent No. 12,551,811 (the "'811 patent") and tried to enforce the '811 utility patent quickly and e fficiently through Amazon's APEX program. Plaintiffs could have defended the allegations of infringement and separately challenged validity through reexamination, but instead they strategically chose to file a declaratory judgment action to stop the APEX proceedings. Now, having derailed the APEX proceedings, Plaintiffs claim the burden of the case *they chose to bring* would be too much and ask the Court to stay it indefinitely pending a reexamination that the Patent Office has not ordered and for which the Patent Office has not issued any office actions.

The motion should be denied. *First*, the Federal Circuit has made clear that an injunction motion must be decided on its merits rather than displaced by a stay. Plaintiffs concede as much. *Second*, a stay would simplify nothing. No reexamination has been ordered. Even if it were, an *ex parte* proceeding binds no one. Plaintiffs' own statistics show only 16.1% of third-party reexaminations result in cancellation of all claims, and reexaminations average more than two

years, at which time Plaintiffs will be free to re-litigate the same theories they had presented to the Patent Office. Moreover, regardless of what may happen with the ’811 patent, Everplay’s Lanham Act and unfair-competition counterclaims will need to be reached. *Third*, a stay will grant Plaintiffs a tactical advantage and prejudice Everplay by allowing a head-to-head competitor to remain on the market with impunity, selling copies of Everplay’s product at a discount. The Court should deny the motion, and at a minimum, it should defer any consideration of a stay until after it has ruled on the injunction.

## II. BACKGROUND

### A. Everplay Invents SUPERSPACE and Patents It

Everplay is a small company whose only product line is SUPERSPACE, a set of life-sized magnetic panels children use to build forts and play spaces. (Dkt. 13-1 ¶¶ 6–9, 29.) Its founders developed the product and launched it through an April 2021 Kickstarter campaign that drew more than 3,000 backers and over $1 million in pledges. (*Id.* ¶¶ 8–9; Dkt. 13-2.) Everplay sought patent protection from the start: the ’811 patent claims priority to a U.K. application filed August 25, 2020, and to an international application filed August 25, 2021. (Dkt. 13-8 at 2.)

### B. The Examiner Allows the Claims over the Art Plaintiffs Now Invoke

The ’811 patent issued on February 17, 2026, after more than two years of examination. (Dkt. 13-8 at 2.) The examiner twice rejected the claims as obvious over U.S. Patent Publication No. 2016/0184727 (“Ornstein”)—the primary reference Plaintiffs assert both in their declaratory judgment action in this case and in the reexamination request before the Patent Office—but then ***allowed*** the claims after the applicants amended them to recite features the examiner found absent from the art. (Dkt. 13-18; Dkt. 13-19; Dkt. 13-20; Dkt. 13-21; Dkt. 13-22 at 8.)

The same examiner has also now considered every other reference on which the

reexamination request relies during the prosecution of Everplay's continuation applications. In U.S. App. No. 19/353,521, Everplay submitted Wei, Kim, Anu, Marrin, Goodman, Haines, Glickman, and Cheung in an information disclosure statement on September 1, 2026. The examiner marked all of them considered on September 3, 2026, and issued a Corrected Notice of Allowability for the continuation claims on September 4. (Dkt. 13-16; Dkt. 13-17.) In a second continuation, U.S. App. No. 19/353,042, the same examiner considered all nine references in the reexamination request—including Ornstein, Wei, and Kim—and on September 29, 2026, issued a Notice of Allowance. (Ex. A, USPTO App. No. 19/353,042: Notice of Allowance (Sept. 29, 2026); references considered Sept. 10, 2026 and Nov. 18, 2025).

### C. Everplay Enforced the '811 Patent at Amazon, and Plaintiffs Sued to Stop It

Within weeks of issuance, Everplay began working to enforce the '811 patent, first by completing the requirements for Amazon's Brand Registry program, and then by lodging a complaint against Plaintiffs' "Umoving" listings through Amazon's Patent Evaluation Express ("APEX") program on May 4, 2026. Administrative problems delayed the process until Everplay executed the APEX agreement on July 2. (Dkt. 1-2 at 3; Dkt. 13-1 ¶19.) Things then moved quickly, with Amazon notifying Plaintiffs on July 6, initiating the evaluation on July 28, selecting a neutral on August 4, and Everplay paying the neutral on August 5. (Dkt. 13-1 ¶19.)

APEX gives a seller three options: they can settle the dispute with the patent owner, they can defeat the infringement claim with a legitimate non-infringement position, or they can effectively remove the question to federal court by filing a declaratory judgment action. *SnapRays, LLC v. Lighting Def. Grp.*, 100 F.4th 1371, 1373, 1376 (Fed. Cir. 2024). Plaintiffs chose the last option. On August 7—two days after Everplay paid the neutral—Plaintiffs filed this action seeking a declaration that the '811 patent is invalid, notably without seeking any declaration of non-

infringement. (Dkt. 1.) Amazon paused the APEX proceedings after this action was filed. (Dkt. 19 at 3.)

### D. Everplay Voluntarily Appears, Counterclaims, and Moves for Relief

Everplay did not wait for Plaintiffs to effect service, choosing to appear voluntarily and, on August 31, answered and counterclaimed for infringement of the ’811 patent, for trademark and trade dress infringement, and for unfair competition. (Dkt. 8, 9.) The next day, September 1, UnionMax filed a request for *ex parte* reexamination of all 24 claims of the ’811 patent, assigned Control No. 90/016,557. (Dkt. 19-1; Ex. C) The request relies on nine of the ten references Plaintiffs listed in their complaint, applies the same combination to claim 1, and argues the same rationale—that a skilled artisan would combine Kim’s rotatable magnets with Ornstein and Wei to solve the problem of mismatched magnetic poles. *Compare* Dkt. 1 ¶¶ 30–32, *with* Dkt. 19-1 at 5, 11–13.

Meanwhile, Everplay prepared its motion for a preliminary injunction—including a technical expert’s element-by-element analysis and a fact declaration from its director in New Zealand, coordinated across a seventeen-hour time difference—and filed it on September 17. (Dkt. 12, 13.) Plaintiffs moved to stay four days later. (Dkt. 19.)

### E. The Reexamination Has Not Been Ordered and, if Ordered, Will Take Years

The Patent Office has not decided whether to order reexamination. It has issued only a notice of the filing date and assigned the request for that determination. (Dkt. 19-2.) Everplay has filed a patent owner paper explaining why the request raises no substantial new question of patentability. (Ex. B, Patent Owner Pre-Order Paper, filed Sept. 30, 2026.) Whether a reexamination will be ordered—a threshold and preliminary step—must be decided within three months, by about December 1, 2026. 35 U.S.C. § 303(a); 37 C.F.R. § 1.515(a). Ordering a

reexamination does not mean the claims have been found invalid. Rather, the patent owner is first entitled to file a statement, and the requester may file a reply, a process which itself takes up to six months. 35 U.S.C. § 304; 37 C.F.R. §§ 1.530, 1.535. Examination then proceeds, during which the Patent Office may issue office actions rejecting one or more of the claims, and during which the patent owner may make arguments or amend the claims to overcome the rejections. If the patent owner is dissatisfied, an examiner's final rejection may be appealed first to the Patent Trial and Appeal Board and then to the Federal Circuit. 35 U.S.C. §§ 134, 141. After any appeals are exhausted, the Patent Office will issue a reexamination certificate confirming, cancelling, or amending the claims. According to the statistics Plaintiffs submitted, the median time from request to certificate is 18.9 months and the average is 25.2 months. (Dkt. 19-3.)

## III. LEGAL STANDARD

Courts in this District weigh three factors: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *Norix Grp., Inc. v. Corr. Techs., Inc.*, 542 F. Supp. 3d 824, 830 (N.D. Ill. 2021); *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). "A stay is the exception, rather than the rule." *Gamon Plus, Inc. v. Campbell Soup Co.*, 2021 WL 9909704, at *3 (N.D. Ill. June 8, 2021). The movant bears the burden, *Think Prods., Inc. v. Acco Brands Corp.*, 2021 WL 4992534, at *2 (N.D. Ill. Aug. 3, 2021), and where "there is even a fair possibility that the stay . . . will work damage to some one else," the movant "must make out a clear case of hardship or inequity in being required to go forward." *Pfizer*, 640 F. Supp. 2d at 1007 (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Simplification is the most important factor. *Gamon Plus*, 2021 WL 9909704, at *1. And a court "is not obligated to 'freeze' its proceedings"

while the Patent Office decides whether to act. *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1316 (Fed. Cir. 2014).

## IV. ARGUMENT

### A. The Court Should Decide the Preliminary-Injunction Motion First

A stay and a preliminary injunction rest on opposite premises. A preliminary injunction issues only if there is no substantial question of validity, while a stay pending reexamination is ordinarily warranted only if there is one. *Procter & Gamble Co. v. Kraft Foods Glob., Inc.*, 549 F.3d 842, 849 (Fed. Cir. 2008). For that reason, "the district court ordinarily should not grant both a preliminary injunction and a stay," *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 303 (Fed. Cir. 2009) (quoting *Procter & Gamble*, 549 F.3d at 849), and "[b]ecause it logically seems that there cannot simultaneously be a substantial issue of patentability and no substantial issue of patentability, stays pending reexamination are typically inappropriate in cases in which preliminary injunctions are appropriate." *Automated Merch. Sys.*, 357 F. App'x at 303.

A court may not use a stay to avoid deciding a pending injunction motion because doing so "effectively den[ies]" the motion "without considering and balancing the required factors." *Procter & Gamble*, 549 F.3d at 847. Plaintiffs effectively concede the point (Dkt. 19 at 10–11), but they improperly conflate the Patent Office's inquiry into whether there is a "substantial new question of patentability" with the "substantial question of validity" standard at issue for an injunction. *Procter & Gamble,* 549 F.3d at 848. A reexamination order, if one ever issues, will not answer the injunction motion. Only this Court can, and the injunction motion is fully scheduled, with an evidentiary hearing set for October 30. Plaintiffs' primary request, to stay "proceedings on Everplay's motion for a preliminary injunction" (Dkt. 19 at 13), should be denied outright.

### B. A Stay Would Not Simplify the Issues

#### i. No Reexamination Has Been Ordered

Courts generally decline to stay a case on a request the Patent Office has not acted on because any simplification is speculative. In *RR Donnelley & Sons Co. v. Xerox Corp.*, the court denied a stay where the Patent Office "ha[d] not granted the review," finding "Xerox's assumption that the PTO will grant its petitions based solely on statistics too speculative." 2013 WL 6645472, at *3 (N.D. Ill. Dec. 16, 2013) (addressing inter partes review); *see also Baxter Int'l, Inc. v. CareFusion Corp.*, 2017 WL 11624669, at *2 (N.D. Ill. May 31, 2017) (recounting prior denial before institution of inter partes review where "any efficiency gains from a stay were simply too speculative"); *Colorlab Cosmetics, Inc. v. Fairy Dust Ltd., Inc.*, 2008 WL 11517628, at *1 n.1 (N.D. Ill. Oct. 7, 2008) (motion "filed before the PTO had granted defendant's request for reexamination, was denied as premature").

Plaintiffs argue the Patent Office orders reexaminations in 92.7% of cases (Dkt. 19 at 4), but "the USPTO's decision to reexamine all claims in suit is statistically unexceptional." *Beijing Choice Elec. Tech. Co. v. Contec Med. Sys. USA Inc.*, 2024 WL 4784283, at *4 (N.D. Ill. Sept. 27, 2024) (quoting *Kove IO, Inc. v. Amazon Web Servs., Inc.*, 2022 WL 683666, at *5 (N.D. Ill. Mar. 8, 2022)). The bar for ordering a reexamination is low, and the grant rate says nothing about how claims ultimately fare in the substantive reexamination. Thus, it is "overly speculative to stay this case based on the possibility that the [accused infringers] will overcome the presumption of patent validity." *Gamon Plus*, 2021 WL 9909704, at *2 (quoting *Itex, Inc. v. Mount Vernon Mills, Inc.*, 2010 WL 3655990, at *2 (N.D. Ill. Sept. 9, 2010)).

Furthermore, these statistics have limited predictive value because the majority of the determinations predate the Patent Office's adoption of the pre-order submission procedure. See

Pre-order Procedure Regarding Substantial New Question Determination in Ex Parte Reexamination Proceedings, 1545 Off. Gaz. Pat. Office 217 (Apr. 28, 2026). The procedure permits a patent owner to submit a pre-order paper explaining why the alleged new teaching or teachings identified in the request do not raise a substantial new question of patentability. *Id.* at 217–18. The Patent Office adopted this procedure so it could be "better informed regarding the argued teaching(s) in the request." *Id.* at 217. The procedure was also adopted "in view of the recent increased volume of ex parte reexamination requests" and "to obtain information from the patent owner prior to making a determination regarding whether requester has established a substantial new question." *Id.* at 218. As a result, these historical grant rates are not necessarily predictive of grant rates under the new procedure. Everplay has exercised that opportunity by submitting its own pre-order paper. (Ex. B.)

**ii. Even if Reexamination Were Ordered, It Would Not Justify a Stay**

The grant of a reexamination request "is not probative of unpatentability" and "does not establish a likelihood of patent invalidity." *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 78 F.3d 1575, 1584 (Fed. Cir. 1996). Even a reexamination actually *ordered* on every claim "casts the validity of the patent into some doubt, but ***only to a small degree***." *Amphenol T&M Antennas, Inc. v. Centurion Int'l, Inc.*, 2002 WL 32373639, at *1–2 (N.D. Ill. Jan. 17, 2002) (emphasis added) (excluding reexamination evidence after earlier declining to continue trial). And the Federal Circuit has vacated the denial of a preliminary injunction based in part on the district court's deference to an *ex parte* reexamination requested while the motion was pending and later terminated by the Patent Office. *Trebro Mfg., Inc. v. FireFly Equip., LLC*, 748 F.3d 1159, 1163, 1165, 1169–72 (Fed. Cir. 2014). As a deeper look at Plaintiffs' statistics demonstrates, in reexaminations requested by third parties, the Patent Office canceled all claims in only 16.1% of

certificates. In other words, 83.9% of third-party reexaminations emerged with claims confirmed or changed. (Dkt. 19-3 at item 10.)

### iii. An *Ex Parte* Reexamination Does Not Bind Plaintiffs

A stay simplifies a case when the agency's decision will bind the parties, which is why decisions in this district granting stays often rest on the simplification that follows from statutory estoppel. *See, e.g.*, *SRAM, LLC v. RFE Holding (Canada) Corp.*, 2016 WL 11940537, at *1 (N.D. Ill. Dec. 21, 2016) (stay granted where movant would "be subject to the same statutory estoppel . . . negating any tactical advantage"); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 872 (N.D. Ill. 2016) (all parties joined instituted proceedings and "will be bound by the results").

*Ex parte* reexamination carries no estoppel. The estoppel provisions that govern *inter partes* and post-grant review, 35 U.S.C. §§ 315(e), 325(e), have no counterpart in the *ex parte* statutes, 35 U.S.C. §§ 302–307, and "[t]he PTO's validity decisions do not serve as an estoppel bar in district court." *Think Prods.*, 2021 WL 4992534, at *4; *cf. GPS Indus., Inc. v. Pro Link Solutions*, 2009 WL 8591841, at *3 (N.D. Ill. Feb. 25, 2009) (conditioning a stay on a stipulation barring the accused infringer from rearguing validity on grounds presented during the reexamination).

In this case, the reexamination request tracks the complaint's claim 1 obviousness combination and motivation-to-combine. *Compare* Dkt. 1 ¶¶ 30–32, *with* Dkt. 19-1 at 5, 11–13. Plaintiffs thus ask the Court to wait on their own second filing of the same invalidity theory, in a forum whose result will not bind them. If the Patent Office confirms the claims, Plaintiffs remain free to press the identical combination here. Only if the Patent Office rejects the claims would the proceeding "simplify" anything, and only in 16.1% are all claims rejected.

#### iv. Reexamination Cannot Touch the Lanham Act and Unfair-Competition Counterclaims, or the Patents Yet to Be Asserted

Everplay's trademark claim alleges that Plaintiffs purchased the SUPERSPACE mark as an Amazon advertising keyword to divert Everplay's customers. (Dkt. 9, Countercls. ¶¶ 45–46.) Its trade dress claim accuses Plaintiffs of copying the "style, product configuration and color scheme" of SUPERSPACE. (*Id.* ¶ 52.) The Patent Office will decide none of it. Plaintiffs' reliance on *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001), does not change that. Functionality is a Lanham Act question this Court will decide, and the keyword and unfair-competition claims do not depend on the patent at all. *See RR Donnelley*, 2013 WL 6645472, at *3 (refusing to let unchallenged claims "languish" behind a stay).

Nor would a stay pending reexamination of the '811 patent reach the other patents in the family. Two continuations have been allowed over every reference in the request: App. No. 19/353,521 (Dkt. 13-17) and App. No. 19/353,042 (Ex. A). Everplay is awaiting formal issuance of those patents and may still obtain additional patents.

### C. A Stay Would Unduly Prejudice Everplay

#### i. The Parties Are Direct Competitors, and Plaintiffs Are Selling Copies

Competition between the parties "can weigh in favor of finding undue prejudice." *VirtualAgility*, 759 F.3d at 1318. Plaintiffs' own case recognizes that when the parties "are direct competitors," that fact "counsel[s] in favor of denying the stay." *Trading Techs.*, 186 F. Supp. 3d at 877. Here, Plaintiffs sell a panel-for-panel copy of SUPERSPACE in the same Amazon subcategory, at roughly a 15% discount, with Amazon reviewers describing it as "[a] great alternative to SUPERSPACE." (Dkt. 13-1 ¶¶ 14–18, 24–25.) At least one customer has already confused the two. (*Id.* ¶¶ 26–27.) Everplay sells one product line, and its fourth quarter has grown

to account for 72.1% of annual sales. November 2025 alone accounted for about 53% of the year's U.S. sales. (*Id.* ¶¶ 29–30; Dkt. 13-6.) A sale lost in 2026 cannot be recovered in 2028.

**ii. Everplay Sought Preliminary Relief**

Courts in this District that have stayed cases pending Patent Office proceedings have consistently noted the patentee's failure to seek a preliminary injunction. In Plaintiffs' own lead case, the court found that the patentee's prejudice argument was "undermined by its failure to pursue a preliminary injunction," and that its "decision to forego seeking a preliminary injunction is particularly detrimental to its claim." *Trading Techs.*, 186 F. Supp. 3d at 878.[1] The same reasoning runs through the other decisions. *T-Rex Prop. AB v. Adaptive Micro Sys., LLC*, 2017 WL 372311, at *4 (N.D. Ill. Jan. 26, 2017) ("failure to seek a preliminary injunction severely undermines its claim of undue prejudice"); *Baxter Int'l, Inc. v. CareFusion Corp.*, 2017 WL 11624669, at *4 (N.D. Ill. May 31, 2017) (patentee's "decision not to seek injunctive relief" lessened prejudice); *Kove*, 2022 WL 683666, at *3 (patentee "never sought a preliminary injunction"). Everplay has done the opposite.

**iii. Money Damages Will Not Make Everplay Whole**

Plaintiffs say Everplay's damages "will continue to accrue." (Dkt. 19 at 10.) But Everplay has pleaded that the infringement is causing irreparable injury "for which damages are an inadequate remedy" (Dkt. 9, Countercls. ¶ 31), and Plaintiffs are foreign entities with no identified

---

[1] *Trading Technologies* is also distinguishable because it imposed a stay pending an already-instituted covered-business-method review, a different type of Patent Office review with a statutorily prescribed test for stays that includes a fourth factor "designed to place a thumb on the scales in favor of a stay." 186 F. Supp. 3d at 872–73 (quoting *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 480 (E.D. Va. 2014)).

assets in the United States. (Dkt. 13 at 17.) A stay that runs the clock toward an uncollectible judgment is prejudice, not its absence.

**iv. The Timing Is Tactical**

Courts consider "the timing of the stay request" and "the relationship between the parties." *Trading Techs.*, 186 F. Supp. 3d at 877. The sequence here speaks for itself. Plaintiffs filed suit two days after Everplay paid Amazon's neutral, halting APEX. The reexamination request was filed the day after Everplay counterclaimed. The stay motion followed four days after Everplay moved for a preliminary injunction. A party that files a declaratory judgment action for a judgment of invalidity, then files a reexamination request on the same grounds, and then moves to stay its own lawsuit pending that request is seeking precisely the advantage the prejudice factor guards against. The effect, and the evident purpose, is to carry Plaintiffs' sales through the holiday season.

Plaintiffs' remaining points do not help them. Everplay did not sit on its rights. It invoked APEX as soon after issuance as possible and pursued it until this suit stopped it. And Plaintiffs' suggestion that Everplay could shorten the reexamination by waiving its patent owner's statement (Dkt. 19 at 10) asks Everplay to surrender its procedural rights in a proceeding Plaintiffs started.

**D. The Stage of the Case Does Not Favor a Stay**

Plaintiffs say the case is at its "very beginning." (Dkt. 19 at 1.) That is true only on paper. Because Everplay has sought preliminary relief, the core issues have been front-loaded. The parties are briefing infringement and validity of claim 1 on an expert record, and the Court will hold an evidentiary hearing on those issues this month. A stay would discard that work.

The burdens Plaintiffs invoke—contentions, document productions, and "translation, cross-border document collection" (*id.* at 6)—are of their own making. Nothing required Plaintiffs to sue. Every question they have raised had a forum without this lawsuit: infringement in APEX,

and validity in the very reexamination they now ask the Court to await. Plaintiffs would have had their full adjudication in time. What they would not have had is uninterrupted access to the market while they waited because Plaintiffs had every reason to expect that APEX would remove their listings. They ostensibly deny infringement (Dkt. 1 ¶ 27), but they sought no declaration of non-infringement (Dkt. 18 at 14), and even their answer identifies no limitation of claim 1 that their products lack—it names only a "clip" recited in claims 5 and 24 (*id.* at 26). The inevitable finding of infringement and delisting of their product was the consequence they sought to avoid through the filing of this lawsuit, and it worked because "Amazon has paused its evaluation pending this Court's decision." (Dkt. 19 at 3.) Plaintiffs now ask the Court to withhold that decision for as long as the Patent Office takes, so that the pause—and their sales—run through the reexamination's indefinite pendency. The cost of litigating in a forum Plaintiffs chose is no reason to stop the case.

### E. Any Relief Should Be Limited

If the Court is inclined to grant any relief, it should (1) decline to stay the injunction motion and defer any further stay until after ruling on it, consistent with *Procter & Gamble*, 549 F.3d at 849; and (2) condition any stay on Plaintiffs' stipulation that they will be bound by the outcome of the reexamination, as in *Riparius Ventures LLC v. Skype Techs. S.A.*, 2009 WL 8590765, at *1 (N.D. Ill. June 9, 2009); *see also GPS Indus., Inc.*, 2009 WL 8591841, at *3.

## V. CONCLUSION

The motion to stay should be denied. At a minimum, the Court should decide Everplay's motion for a preliminary injunction first and defer any consideration of a stay until after that ruling.

Dated: October 7, 2026

POLSINELLI PC

/s/Mark T. Deming
Mark T. Deming, Ill. Bar No. 6299631

POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
(312) 819-1900
mdeming@polsinelli.com

M. Lawrence Oliverio
*(pro hac vice)*
POLSINELLI PC
One International Place, Suite 3900
Boston, MA 02110
(617) 406-0335
loliverio@polsinelli.com

Andrew Z. Weaver
*(pro hac vice)*
POLSINELLI PC
1000 Louisiana Street
Suite 6400
Houston, TX 77002
(713) 374-1600
aweaver@polsinelli.com

*Attorneys for Everplay Labs Limited.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and Local Rule 5.9.

/s/Mark Deming