**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | Case No. 1:26-cv-09480 |
| v. | ) | Judge Sunil R. Harjani |
| Everplay Labs Limited, | ) | Magistrate Judge Karyn L. Bass Ehler |
| Defendant. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs/Counterclaim-Defendants OMZZ Trading Co., Limited and Ningbo UnionMax Technology Co., Ltd. (collectively, "Plaintiffs") respectfully submit this Response in Opposition to Defendant/Counterclaim-Plaintiff Everplay Labs Limited's ("Everplay") Motion for Preliminary Injunction (Dkt. 12).

## I. INTRODUCTION

Everplay seeks the extraordinary remedy of a preliminary injunction based on alleged infringement of Claim 1 of the '811 patent. The present record does not justify that drastic relief. Plaintiffs do not infringe the asserted claim, and Everplay's superficial photographic comparisons fail to establish a likelihood of proving infringement across the internal mechanical limitations of Claim 1. More fundamentally, Plaintiffs have raised substantial questions concerning the validity

of Claim 1 under both 35 U.S.C. § 103 (over Ornstein, Wei, Kim, U.S. Patent No. 10,217,388 to Alkas, and Korean Utility Model Reg. No. 20-0442713 to Kim ("Kim '713")) and 35 U.S.C. § 112(a) (for lack of written description support), which Everplay cannot show lack substantial merit. This unresolved validity question alone defeats Everplay's likelihood of success under clear Federal Circuit authority.

Everplay has also failed to prove that irreparable harm is likely absent preliminary relief. Everplay's assertions of seasonal sales losses, price erosion, and speculative confusion establish at most calculable economic harm, not irreparable injury. Moreover, Everplay establishes no causal nexus demonstrating that the specific internal connector and dowel structures claimed in the '811 patent drive consumer demand for the Accused Products. With the balance of equities and the public interest tipping decidedly against enjoining legitimate competition, Everplay's motion should be denied in its entirety.

## II. BACKGROUND

### A. The Asserted Patent and the Accused Products

Everplay asserts Claim 1 of U.S. Patent No. 12,551,811 (the "'811 patent"), which relates to a modular magnetized panel system. Plaintiffs market magnetic play panels under the "Umoving" brand on Amazon (ASINs B0F1F8XFQ6 and B0F1FC6SHD). Plaintiffs deny that the Accused Products infringe the asserted claim, which requires specific internal connector, recess, and dowel configurations that Everplay has not proven are practiced. Moreover, Claim 1 is invalid under 35 U.S.C. § 103 over prior art references, including Ornstein (U.S. Pub. No. 2016/0184727), Wei (CN 104274984), Kim (WO 2006/112679), Alkas (U.S. Patent No. 10,217,388, attached as Exhibit A), and Kim '713 (KR 20-0442713 Y1, attached with English translation as Exhibit B), and invalid under 35 U.S.C. § 112(a) for lack of written description.

### B. Procedural History and Pending Reexamination

Following Everplay's assertion of the '811 patent through Amazon's APEX process, Plaintiffs promptly initiated this declaratory-judgment action on August 7, 2026, to resolve the patent's validity. On September 1, 2026, Plaintiffs filed an *ex parte* reexamination request challenging all twenty-four claims of the '811 patent (Control No. 90/016,557; *see* Dkt. 19-1). Everplay filed its preliminary-injunction motion on September 17, 2026 (Dkt. 12), and an evidentiary hearing is currently scheduled for October 30, 2026 (Dkt. 30).

## III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The movant must establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Id.* at 20. If the movant fails to establish either of the first two threshold factors, the preliminary injunction must be denied. *Altana Pharma AG v. Teva Pharms. USA, Inc.*, 566 F.3d 999, 1005 (Fed. Cir. 2009).

In patent litigation, the patentee must show that it is likely to prove infringement and that its claim will likely withstand challenges to validity. *Natera, Inc. v. NeoGenomics Lab'ys, Inc.*, 106 F.4th 1369, 1375 (Fed. Cir. 2024). Importantly, to defeat a preliminary injunction, the accused infringer does not have to prove invalidity under the clear-and-convincing standard applicable at trial; rather, it need only raise a "substantial question" concerning validity or infringement. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1202, 1205 (Fed. Cir. 2017). The patentee must also demonstrate a direct causal nexus between the alleged infringement and the claimed irreparable harm. *Apple Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012).

## IV. ARGUMENT

### A. Everplay Has Failed to Establish a Likelihood of Success on the Merits.

#### 1. Substantial Questions Exist Regarding the Validity of the '811 Patent.

Everplay has failed to establish that Claim 1 will likely withstand Plaintiffs' invalidity challenges. At the preliminary injunction stage, Plaintiffs need not prove invalidity by clear and convincing evidence; they need only raise a "substantial question" of invalidity that Everplay cannot demonstrate lacks substantial merit. *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017). Plaintiffs have easily met this standard on multiple independent grounds.

As a threshold matter, Everplay overstates the deference owed to the Examiner. The Examiner allowed claim 1 only after Everplay amended it, and the sole stated reason for allowance was the newly added requirement that the recesses each receive a dowel. (Dkt. 13 at 11; Ex. 8.) The Examiner never applied Wei (CN 104274984) or Kim (WO 2006/112679), and never applied Kim (KR 200442713Y1) against the claims at all. Administrative deference therefore attaches at most to the narrow structural point the Examiner identified, not to the combinations Plaintiffs now present, which the Office never considered in the manner claimed.

First, as detailed in Plaintiffs' pending *Ex Parte* Reexamination Request (Dkt. 19-1 at 5–18), Claim 1 is obvious under 35 U.S.C. § 103 over Ornstein (U.S. Pub. No. 2016/0184727) in view of Wei (CN 104274984) and Kim (WO 2006/112679). Ornstein discloses the overall modular play-panel assembly including panels, frames, connectors, and magnets (Figs. 1–4, 31). Wei discloses a modular assembly comprising main pipes, corner/adapter connectors, end pieces housing magnets or magnetic metal within an internal cavity, and mating male-female cylindrical recesses that receive adjacent rod components to join the structure (Wei, Figs. 6, 8, claim 1).

Furthermore, Kim discloses both rod-and-ball magnetic connections (Figs. 3–4) and, specifically, a hemispherical magnet-receiving cavity with a pivot shaft that allows the magnet to rotate and automatically adjust its polarity to eliminate magnetic repulsion and enable multi-directional attraction (Kim, Figs. 13–15, ¶¶ [79]–[84]). Under *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 417–18 (2007), a person of ordinary skill in the art ("POSITA") seeking to construct modular, reconfigurable toy panels would have had clear reason to combine Ornstein's modular panel frame with Wei's recessed end-connector coupling structure and Kim's self-orienting rotatable magnet mechanism, raising a substantial question as to whether Claim 1 represents a patentable advance.

Second, and independently of the grounds set forth in the *ex parte* reexamination request, Claim 1 is also obvious under 35 U.S.C. § 103 over Ornstein in view of U.S. Patent No. 10,217,388 to Alkas ("Alkas," attached hereto as Exhibit A) and Korean Utility Model Reg. No. 20-0442713 to Kim ("Kim '713," attached hereto with English translation as Exhibit B), which directly refute Everplay's contention that a POSITA would not look to tubular or block connector systems (Dkt. 13 at 11–12). Ornstein discloses the overall modular game panel assembly including panels, frames, connectors, and magnets (Ornstein, Figs. 1–4, 31). Alkas expressly bridges panel systems and tubular frameworks, teaching modular frames constructed of "frame members 22 interconnected by tube connector assemblies 24" that support fabric or rigid panels (Ex. A, Figs. 1, 6–7, col. 2 l. 59–col. 3 l. 11), where each corner junction connector (26/32) carries angled tenons (34) mounting a cylindrical, diametrically polarized magnet (60) that rotates freely within the hollow frame member to self-align and magnetically couple adjacent frames from any orientation (id., Figs. 4–5, 7–9, col. 3 ll. 43–54, col. 4 l. 55–col. 5 l. 40, claims 1, 20). Kim '713 further teaches mounting such a rotatable magnet and a joining pin within the very same recess: a diametrically polarized rotatable magnet (14) with a central through-hole (15) is received within a recess/fitting hole (2)

of a toy block (1), and a fixing pin (11, having shaft 13) is inserted through that same hole (15) into the recess (2), such that the magnet rotates freely in place around the pin inside the recess to self-align its N and S poles and magnetically couple adjacent components (Ex. B, Kim ’713, Figs. 1, 3–4, ¶¶ <30>–<42>, <45>–<46>). Under KSR, 550 U.S. at 417–18, a POSITA seeking to build a modular, reconfigurable game panel would have been naturally motivated to combine Ornstein’s modular panel frames with Alkas’s rotatable, diametrically polarized magnets mounted at the ends of corner frame connectors, and further with Kim ’713’s arrangement in which the rotatable magnet and the fixing pin occupy the same recess. Doing so is nothing more than a predictable combination of known elements performing their established functions.

Third, Claim 1 is also vulnerable under 35 U.S.C. § 112(a) for lack of written description support. To overcome Ornstein during prosecution, Everplay amended Claim 1 to require “a first dowel, a first end of which is received within the first recess of the first connector.” (Dkt. 13 at 11; Ex. 8.) Yet the application as originally filed contains no such disclosure. While the specification mentions an alternative arrangement operating without clips, it states only that the dowel holds the magnet in the end of the connector; it nowhere states or describes that an end of a dowel is received within a recess of the connector alongside the magnet. Because nothing in the original specification conveys with reasonable clarity to a POSITA that the inventors possessed the newly claimed recess-and-dowel structure at the time of filing, Claim 1 is invalid under § 112(a). *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc).

Finally, secondary considerations such as commercial success, industry awards, and alleged copying carry weight only if there is a direct causal nexus linking those benefits to the specific claimed internal mechanical structure of Claim 1. *See Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373–74 (Fed. Cir. 2019). Everplay’s marketing materials and the basis for its

industry awards focus on the overall consumer experience of life-size magnetic play panels, not the particular internal connector-recess-and-dowel arrangement of Claim 1 (nor can secondary considerations cure a § 112(a) written description failure). Because Plaintiffs have raised substantial questions of invalidity under both § 103 and § 112(a), preliminary injunctive relief is barred.

**2. Everplay Has Not Demonstrated a Likelihood of Proving Infringement.**

Everplay has also failed to carry its affirmative burden of demonstrating a likelihood of proving literal infringement or infringement under the doctrine of equivalents.

As a procedural note, a declaratory-judgment complaint under 28 U.S.C. § 2201 does not require element-by-element pleading of non-infringement. The detailed technical challenges to Claim 1 appear in this opposition brief and the ex parte reexamination request, and the absence of granular element-by-element pleading in the initial complaint does not eliminate substantial questions as to infringement or constitute a waiver of non-infringement defenses.

To support its infringement claims, Everplay relies exclusively on the declaration of Mr. Tim Fletcher (Dkt. 13-7 ¶¶ 52–63). However, Mr. Fletcher's infringement analysis is based entirely on superficial external photographs and speculative assumptions. Mr. Fletcher performed no non-destructive testing, physical cross-sectioning, or precise internal mechanical measurements of the Accused Products to verify whether the interior assembly satisfies each strict mechanical limitation of Claim 1, including whether the magnets and dowels are positioned and secured within the connector recesses "in the manner claimed." Mere visual similarity of external felt panels cannot substitute for rigorous proof of internal structural infringement.

Because Everplay bears the burden of proof and relies on deficient, unverified photographic assertions, it has not shown a likelihood of success on infringement. Even if Everplay

had made a threshold showing, the substantial questions regarding the validity of Claim 1 independently preclude preliminary injunctive relief. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001).

**B. Everplay Has Failed to Demonstrate Irreparable Harm.**

Even if Everplay could establish a likelihood of success on the merits, it must independently prove that irreparable harm is likely absent an injunction. *Winter*, 555 U.S. at 22. The Seventh Circuit has emphasized that this requires "more than a mere possibility of harm," and even a showing that a "substantial risk 'could' arise" is not sufficient. *Orr v. Shicker,* 953 F.3d 490, 502 (7th Cir. 2020). Everplay has completely failed to meet this high evidentiary threshold.

**1. The Claimed Economic Harm Is Readily Quantifiable by Monetary Damages.**

Everplay primarily asserts that it will suffer lost sales and pricing pressure during the fourth-quarter holiday season, when it generates approximately 75% of its annual revenue. (Dkt. 13 at 4.) But the Federal Circuit has made clear that potential lost sales and price competition between market participants do not automatically equate to irreparable injury. *See, e.g., Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996) (holding that lost revenue and sales disruptions do not constitute irreparable harm where damages are calculable).

Here, all alleged harm claimed by Everplay, diverted Amazon sales, holiday revenue fluctuations, and price differentials, constitutes classic economic harm that is fully calculable and compensable through money damages, whether via lost profits or a reasonable royalty under 35 U.S.C. § 284. Furthermore, Everplay's claims of customer confusion and safety risks are purely speculative and based on a single alleged customer-service inquiry, which is legally insufficient to establish immediate, irreparable brand erosion.

**2. Everplay Has Failed to Establish the Requisite Causal Nexus.**

Under established Federal Circuit law, a patentee seeking a preliminary injunction must establish a causal nexus between the alleged infringement and the alleged injury. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364, 1367 (Fed. Cir. 2013). Everplay must demonstrate that the specific patented features, namely, the internal dual-end connector recess and dowel configuration claimed in Claim 1, actually drive consumer demand for the Accused Products.

Everplay provides no such evidence. At most, Everplay demonstrates that consumers are interested in generic modular play panels and magnetic connectivity in the abstract. (Dkt. 13 at 6–7.) Even assuming consumers desire rotatable-magnet multi-angle connection, that broad functional feature was already well known in the prior art, including the Kim and Alkas references. Consumer demand for "rotatable-magnet play panels" does not equate to consumer demand for the very specific internal mechanical arrangement recited in Claim 1: dual-end connector recesses that receive both a magnet and angled dowels in the claimed manner. Everplay impermissibly conflates general functional benefits with the specific structural claim limitations required to establish a causal nexus. Because consumer purchasing decisions on Amazon are driven by non-patented attributes and general unpatented functionality, including price point ($289 vs. $449), color options, panel count, and customer ratings, Everplay has failed to satisfy the essential causal nexus requirement.

**3. Speculation Regarding Foreign Corporate Status Does Not Justify an Injunction.**

Everplay asserts that monetary damages would be inadequate because Plaintiffs are foreign entities without documented physical assets in the United States. (Dkt. 13 at 8.) This argument is meritless. Everplay offers no evidence that Plaintiffs have ever evaded a judgment or engaged in improper asset dissipation.

To the contrary, Plaintiffs sell the Accused Products through the Amazon.com marketplace, where transactions and merchant funds are processed and held subject to domestic jurisdiction and established enforcement mechanisms. Speculative concerns regarding the convenience of post-judgment collection cannot substitute for proof of irreparable harm.

### C. The Balance of Equities Weighs Against an Injunction.

The Court must weigh the harm to Everplay absent an injunction against the harm Plaintiffs would sustain if an injunction were wrongfully granted. *Winter*, 555 U.S. at 24. Under Seventh Circuit law, the balance of harms operates on a sliding scale: the weaker the movant's likelihood of success, the more heavily the balance of harms must tip in its favor. *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023).

Here, Everplay's weak showing on the merits, faced with a substantial question of invalidity over Ornstein, Wei, Kim, Alkas, and Kim '713, heavily undermines its equitable position. While Everplay asserts that its business depends on fourth-quarter holiday sales, Plaintiffs face identical, catastrophic risks if abruptly enjoined. Like Everplay, Plaintiffs have already manufactured, imported, and committed substantial capital toward U.S. inventory and logistics for the holiday season.

Enjoining Plaintiffs prior to an adjudication of validity or infringement would inflict immediate, unrecoverable commercial destruction: it would paralyze Plaintiffs' established Amazon storefront operations, cause severe inventory stockpiling and storage liabilities, and permanently damage hard-earned consumer goodwill and seller metrics. Conversely, because Everplay's claimed harms are compensable via statutory damages, enjoining lawful commercial activity based on a vulnerable patent would impose disproportionate hardship on Plaintiffs. The balance of equities decisively favors denying the requested injunction.

### D. An Injunction Would Disserve the Public Interest

While the public interest favors enforcing valid patents, it is equally well established that the public has a paramount interest in full and free competition, unencumbered by invalid patent monopolies. *See Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (holding that the public interest is not served by granting a preliminary injunction where substantial questions of patent validity remain).

Enjoining the Accused Products under Claim 1, which is subject to substantial validity challenges over Ornstein, Wei, Kim, Alkas, and Kim '713, would improperly suppress lawful market competition and deprive consumers of affordable alternative play products during the holiday season. Because Everplay has not established a likelihood of validity, the public interest strongly disfavors granting preliminary injunctive relief.

### E. Any Injunctive Relief Must Be Strictly Narrowed and Conditioned on Substantial Security Under Rule 65(c)

Without conceding that any preliminary injunctive relief is warranted, Plaintiffs submit that any order entered by the Court must be strictly limited to the record and conditioned on substantial security.

First, Federal Rule of Civil Procedure 65(d)(1) requires an injunction to "be specific in terms" and "describe in reasonable detail" the restrained acts. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 885 (Fed. Cir. 2011). Accordingly, any injunction must be strictly limited to the two specific accused ASINs (B0F1F8XFQ6 and B0F1FC6SHD) and cannot extend to other non-asserted product models or commercial operations.

Second, Federal Rule of Civil Procedure 65(c) mandates that the Court require the movant to post security "in an amount that the court considers proper to pay the costs and damages sustained

by any party found to have been wrongfully enjoined." Because the requested relief coincides with the peak fourth-quarter holiday sales season, enjoining Plaintiffs would immediately paralyze existing inventory, logistics arrangements, and projected revenues. Everplay's request for minimal security must be rejected; any preliminary injunction must be conditioned on Everplay posting a substantial cash bond that fully reflects Plaintiffs' anticipated seasonal sales and inventory carrying costs in the event the injunction is later found to have been improvidently granted.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs/Counterclaim-Defendants respectfully request that the Court:

1. Deny Everplay's Motion for Preliminary Injunction (Dkt. 12) in its entirety; or
2. In the alternative, strictly limit any preliminary injunctive relief to the two specific accused ASINs (B0F1F8XFQ6 and B0F1FC6SHD), and condition any such relief upon Everplay posting a substantial cash bond pursuant to Federal Rule of Civil Procedure 65(c) that fully covers Plaintiffs' anticipated holiday sales and inventory carrying costs.

Plaintiffs further request such other and further relief as the Court deems just and proper.

Dated: October 14, 2026

Respectfully submitted,

/s/Zhiwei Hua
Concord & Sage PC
1360 Valley Vista Dr, Suite 140,
Diamond Bar CA 91765
Bar No. 6099105
huazhiwei@concordsage.com
Phone: (216)3923236

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2026, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered with the CM/ECF system pursuant to Local Rule 5.9 and Fed. R. Civ. P. 5(b)(2)(E).

/s/ Zhiwei Hua