**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | Case No. 1:26-cv-09480 |
| v. | ) | Judge Sunil R. Harjani |
| Everplay Labs Limited, | ) | Magistrate Judge Karyn L. Bass Ehler |
| Defendant. | ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO STAY**

## I. INTRODUCTION

Plaintiffs and Counterclaim-Defendants OMZZ Trading Co., Limited and Ningbo UnionMax Technology Co., Ltd. ("Plaintiffs") respectfully submit this Reply in support of their Motion to Stay Proceedings Pending *Ex Parte* Reexamination of U.S. Patent No. 12,551,811 (the "'811 patent") (Dkt. 19). Defendant and Counterclaim-Plaintiff Everplay Labs Limited ("Everplay") opposes a stay primarily on the grounds that reexamination has not yet been ordered, that the proceedings would not sufficiently simplify this action, and that a stay would prejudice Everplay's competitive interests. (Dkt. 34.) Those objections do not outweigh the substantial efficiencies that a stay would provide, particularly at this early stage of litigation.

The pending *ex parte* reexamination request challenges all twenty-four claims of the '811 patent, the only patent currently asserted in this action. The United States Patent and Trademark

Office ("USPTO") is expected to determine by approximately December 1, 2026, whether to order reexamination. Although Everplay emphasizes that reexamination has not yet been ordered and that its outcome remains uncertain, certainty of cancellation is not a prerequisite to a stay. Reexamination may materially narrow the disputed patent claims, clarify their scope, or provide the Court with the USPTO's analysis of the prior art. Proceeding immediately with full patent discovery and claim construction risks unnecessary expense and duplicative litigation concerning claims that may subsequently be amended or canceled.

Nor does Everplay's pending motion for a preliminary injunction (Dkt. 12) require the entire action to proceed without interruption. Plaintiffs recognize the Court's obligation to consider the preliminary-injunction factors under *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842 (Fed. Cir. 2008). As expressly requested in their original Motion, however, Plaintiffs alternatively seek a stay of all other proceedings while the preliminary-injunction motion, which Plaintiffs opposed on October 14, 2026, is heard and resolved. Such an approach would preserve Everplay's opportunity to seek immediate relief while avoiding unnecessary litigation burdens. Everplay's allegations of competitive harm and tactical delay do not establish that ordinary discovery and other case-management proceedings must advance simultaneously with the preliminary-injunction proceedings.

Accordingly, Plaintiffs respectfully request that the Court grant their Motion and stay this action pending the USPTO's reexamination proceedings. Alternatively, the Court should stay all proceedings other than those necessary to resolve Everplay's preliminary-injunction motion. At a minimum, the Court should defer the applicable Local Patent Rule deadlines and entry of a scheduling order until the USPTO determines whether to order reexamination.

## II. ARGUMENT

### A. The Pending Preliminary-Injunction Motion Does Not Preclude a Stay of the Remaining Proceedings.

Everplay argues that its pending preliminary-injunction motion categorically precludes a stay, relying on *Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842 (Fed. Cir. 2008). (Dkt. 34 at 6.) But *Procter & Gamble* does not prohibit a stay under the circumstances presented here. Rather, the Federal Circuit vacated a stay because the district court had effectively denied an injunction motion without considering its merits. *Id*. at 847–49.

Crucially, the Federal Circuit expressly reaffirmed "the inherent power of the district courts to grant a stay pending reexamination of a patent" and their "broad discretion to manage their dockets, including the power to grant a stay of proceedings," holding only that a court should not enter a stay that effectively denies a pending preliminary-injunction motion without first addressing its merits. *Id.* at 849.

Nor do the differing standards between a USPTO "substantial new question of patentability" and a preliminary-injunction "substantial question of validity" prevent the Court from granting relief. The Court's assessment of validity at the preliminary-injunction stage is merely provisional and limited to Claim 1, whereas the USPTO's reexamination evaluates all twenty-four claims and can definitively cancel or amend the claims, thereby mooting or fundamentally reshaping Markman proceedings, expert discovery, and trial.

Indeed, Plaintiffs' alternative request directly respects this framework. As set forth in Dkt. 19 (at 11–13), Plaintiffs expressly requested that the Court stay all proceedings other than those necessary to resolve Everplay's preliminary-injunction motion. Plaintiffs have already timely filed their comprehensive Response in Opposition to Everplay's preliminary-injunction motion on

October 14, 2026 (Dkt. 39) and are prepared to proceed with the scheduled October 30, 2026 evidentiary hearing. Proceeding with the October 30 preliminary-injunction hearing while holding general discovery, Local Patent Rule disclosures, and scheduling deadlines in abeyance fully satisfies Procter & Gamble while avoiding the waste of judicial and party resources on claims currently challenged before the USPTO.

**B. Reexamination Would Simplify the Issues and Reduce Litigation Burdens.**

Everplay argues that a stay would not simplify this litigation because reexamination has not yet been ordered, cancellation of all claims is uncertain, and *ex parte* reexamination does not impose statutory estoppel. (Dkt. 34 at 7–10.) Although the USPTO has not yet ordered reexamination, that fact does not categorically preclude a stay. The relevant inquiry is whether reexamination would meaningfully simplify the issues and reduce litigation burdens, rather than whether it would conclusively resolve every dispute. *See Pfizer Inc. v. Apotex Inc.,* 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009). Moreover, the USPTO is expected to determine whether to order reexamination by approximately December 1, 2026, providing a defined point at which the Court may reassess the appropriate course of proceedings.

The reexamination request challenges all twenty-four claims of the ’811 patent, the only patent presently asserted in this action. (Dkt. 19 at 2–4.) Everplay’s argument that third-party reexaminations result in complete cancellation of all claims in “only 16.1%” of cases overlooks the broader simplification value of reexamination. (Dkt. 34 at 2, 8–9.) Everplay ignores that, according to the USPTO historical statistics of record (Dkt. 19-3, Item 10.b), while 16.1% of third-party reexaminations result in complete cancellation, an additional 61.0% result in claims being changed, demonstrating that reexamination frequently narrows and reshapes the scope of disputes. In patent litigation, when claims are amended or narrowed during reexamination, the entire

landscape of infringement contentions, claim construction, and potential damages changes fundamentally. Even if certain claims are confirmed, the USPTO's expert consideration of the prior art materially assists the Court in resolving the remaining issues. *See Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983). Proceeding immediately with full patent discovery concerning claims subject to such potential reexamination modifications is the antithesis of judicial economy.

Everplay further contends that its trademark, trade dress, and unfair-competition counterclaims would remain unaffected by reexamination. (Dkt. 34 at 10.) Tellingly, however, Everplay did not even move for a preliminary injunction on any of those non-patent counterclaims; its preliminary-injunction motion and prior Amazon APEX complaint rest exclusively on Claim 1 of the '811 patent. (See Dkts. 12, 13.) Because the '811 patent is the clear centerpiece of this dispute and the non-patent counterclaims concern the exact same accused products, marketing channels, and financial records, proceeding piecemeal on those overlapping claims would guarantee duplicative discovery and wasted party and judicial resources. Nor do Everplay's references to pending continuation applications not presently asserted in this action undermine simplification. Unissued, unasserted patent applications have no legal bearing on the management of this docket; the '811 patent is the sole patent asserted before this Court.

Accordingly, the absence of a reexamination order, statutory estoppel, or certainty of complete claim cancellation does not eliminate the potential for meaningful simplification. At a minimum, deferring ordinary patent-litigation deadlines until the USPTO's imminent threshold determination would avoid potentially unnecessary expenditures while preserving the Court's ability to reassess the need for a longer stay.

**C. A Stay Would Not Unduly Prejudice Everplay or Confer an Improper Tactical Advantage.**

Everplay characterizes Plaintiffs' litigation strategy as a deliberate attempt to delay proceedings and preserve their sales through the holiday season. (Dkt. 34 at 11–13.) However, the timing of Plaintiffs' filings, without more, does not establish an improper tactical purpose. Plaintiffs filed this declaratory-judgment action following Everplay's assertion of the '811 patent through Amazon's APEX process, sought reexamination shortly after Everplay asserted its infringement counterclaim, and moved for a stay before substantial discovery or claim construction had begun. This sequence is consistent with a legitimate effort to resolve the patent-validity dispute efficiently, rather than evidence of dilatory intent. *See VirtualAgility Inc. v. Salesforce.com, Inc.,* 759 F.3d 1307, 1319 (Fed. Cir. 2014).

Nor does Plaintiffs' continued sale of the accused products, standing alone, establish improper conduct. Everplay's characterization of those sales as unauthorized copying assumes the very infringement allegations that remain disputed in this action. Although direct competition and potential lost sales are relevant to the prejudice inquiry, neither establishes that suspending ordinary litigation proceedings would itself cause undue prejudice.

Everplay further emphasizes its dependence on holiday sales and the potential difficulty of enforcing a monetary judgment against foreign entities. (Dkt. 34 at 10–12.) Those concerns do not require the entire action to proceed without interruption. Plaintiffs' alternative request expressly preserves Everplay's opportunity to pursue preliminary injunctive relief, allowing the Court to address its allegations of irreparable harm while deferring proceedings unnecessary to that determination. Everplay's decision to seek preliminary relief therefore supports allowing the injunction proceedings to continue, not necessarily denying a stay of all other proceedings.

Accordingly, Everplay has not established that a partial stay would confer an improper tactical advantage or cause undue prejudice sufficient to outweigh the efficiencies of awaiting the USPTO's determination.

**D. The Early Procedural Stage Favors a Stay.**

Everplay argues that this action is no longer at an early stage because the parties have already devoted resources to the pending preliminary-injunction proceedings. (Dkt. 34 at 12–13.) However, the relevant consideration is the extent to which the litigation has progressed and whether a stay would avoid substantial future expenditures. *See Trading Technologies International, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 874–77 (N.D. Ill. 2016).

As Plaintiffs explained in their Motion, no comprehensive discovery has commenced, no infringement or invalidity contentions have been exchanged, and no claim construction proceedings have occurred. (Dkt. 19 at 5–6.) Although the parties have devoted resources to the preliminary-injunction proceedings, those efforts do not establish that the broader patent litigation has substantially progressed. Nor would a partial stay render that preparation wasted, because the Court could proceed with the preliminary-injunction proceedings while deferring the broader litigation.

Thus, the resources already devoted to preliminary relief do not outweigh the substantial costs that remain to be incurred through discovery, claim construction, and subsequent proceedings. Staying those proceedings now would preserve, rather than undermine, judicial economy.

**E. The Court Should Reject Everplay's Proposed Estoppel Condition.**

Everplay alternatively requests that any stay be conditioned on Plaintiffs' agreement to be bound by the outcome of the reexamination. (Dkt. 34 at 13.) However, ex parte reexamination does not impose the statutory estoppel applicable to inter partes review under 35 U.S.C. § 315(e).

Courts have recognized that estoppel is not warranted merely because litigation is stayed pending *ex parte* reexamination. *See Chen v. Unisen, Inc.,* 2009 WL 2868729, at *3 (W.D. Wash. Sept. 4, 2009) (declining to bind a party to the results of *ex parte* reexamination).

Nor do Everplay's cited authorities justify imposing such a condition over Plaintiffs' objection. Notably, *Riparius Ventures LLC v. Skype Technologies S.A.*, 2009 WL 8590765 (N.D. Ill. June 9, 2009), involved inter partes reexamination, a materially distinct proceeding carrying statutory estoppel consequences under former 35 U.S.C. § 315(c). Similarly, in *GPS Industries, Inc. v. Pro Link Solutions*, 2009 WL 8591841 (N.D. Ill. Feb. 25, 2009), the accused infringer voluntarily stipulated to estoppel; the court did not force an involuntary waiver. Because Congress intentionally omitted statutory estoppel from *ex parte* reexaminations under 35 U.S.C. §§ 301–307, the Court should decline to impose an extra-statutory forfeiture of Plaintiffs' defenses.

Accordingly, the Court should decline to impose Everplay's proposed estoppel condition and evaluate the requested stay under the ordinary factors governing judicial economy, simplification, and prejudice.

### F. Alternatively, the Court Should Defer Case-Management Deadlines Pending the USPTO's Determination.

Even if the Court concludes that a stay pending completion of reexamination would be premature, a limited deferral of case-management deadlines remains warranted. The USPTO is expected to determine by approximately December 1, 2026, whether to order reexamination of all twenty-four claims of the '811 patent. Deferring the applicable Local Patent Rule deadlines and entry of a formal scheduling order (including at the upcoming October 29, 2026 initial status hearing, Dkt. 6) until that determination would avoid potentially unnecessary proceedings without committing the parties to an indefinite stay.

This limited relief would also address Everplay's concerns regarding uncertainty and delay while preserving the Court's ability to proceed with the pending preliminary-injunction motion. Plaintiffs therefore respectfully request, at a minimum, that the Court hold the applicable deadlines in abeyance, direct the parties to submit a joint status report within seven days of the USPTO's determination, and permit Plaintiffs to renew their stay request at that time. (Dkt. 19 at 12–13.)

## III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion to Stay Proceedings (Dkt. 19) as follows:

1. Proceed with the Preliminary-Injunction Determination and Temporarily Stay Remaining Proceedings Until the USPTO's Institution Decision: Proceed with the October 30, 2026 hearing and resolution of Everplay's Motion for Preliminary Injunction (Dkt. 12) (including any discovery, expert, or claim-construction determinations necessary to resolve that motion), while staying all other proceedings—including Rule 26(a)(1) initial disclosures, Local Patent Rule 2.1–2.3 disclosures and contentions, entry of a formal scheduling order at the October 29, 2026 status conference, and general discovery (or, at a minimum, all patent-related proceedings beyond the preliminary injunction)—until the USPTO determines whether to order ex parte reexamination of the '811 patent;

2. Reassess Continuation of the Stay Following the USPTO's Decision: Direct the parties to file a joint status report within seven days of the USPTO's determination whether to order reexamination, at which time the Court may determine—in light of the status of the preliminary-injunction motion and the scope of any reexamination ordered—whether to extend the stay through the conclusion of the reexamination proceedings; or

3. In the Alternative: If the Court prefers to rule on a full stay now, stay all proceedings in this action (or all proceedings other than Everplay's preliminary-injunction motion) pending the USPTO's reexamination proceedings, without imposing Everplay's proposed estoppel condition.

4. Plaintiffs further request such other relief as the Court deems just and appropriate.

Dated: October 15, 2026

Respectfully submitted,

/s/Zhiwei Hua
Concord & Sage PC
1360 Valley Vista Dr, Suite 140,
Diamond Bar CA 91765
Bar No. 6099105
huazhiwei@concordsage.com
Phone: (216)3923236

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 15, 2026, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record registered with the CM/ECF system pursuant to Local Rule 5.9 and Fed. R. Civ. P. 5(b)(2)(E).

/s/ Zhiwei Hua