IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | Case No. 1:26-CV-09480 |
| v. | ) | |
| EVERPLAY LABS LIMITED, | ) | |
| Defendant. | ) | |

**EVERPLAY LABS' REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**

Everplay Labs Limited ("Everplay") submits this reply in support of its Motion for Preliminary Injunction (Dkt. 12) against OMZZ Trading Co., Limited and Ningbo UnionMax Technology Co., Ltd. (collectively, "OMZZ").

## I. INTRODUCTION

After telling the Court it needs weeks to obtain evidence from personnel overseas, OMZZ's filed response rests on nothing more than attorney argument. *Compare* Dkt. 25 and Dkt. 26 at 1–2, *with* Dkt. 39. Instead, OMZZ continues to shift its invalidity theories, relying on the same primary patent reference (Ornstein) that the U.S. patent examiner considered before issuing the '811 patent and attaching two patent references, on which it had previously not relied, but no other documentary evidence. And while OMZZ insists it does not concede infringement of the only claim asserted in this motion, it continues to fail to articulate any particular claim element the Accused Products do not satisfy. In short, Everplay's likelihood of success evidence is unrebutted.

For the remaining injunction factors, OMZZ likewise resorts to attorney argument, but no hard evidence. Its arguments against irreparable harm, balance of equities, and public interest

cannot be squared with the record and do not overcome Everplay's uncontradicted sworn testimony. For security, OMZZ asks for a "substantial cash bond," but asks it to be based on sales and costs—not profits—and provides no evidence to support a calculation. The Court should therefore grant Everplay's motion and enter an injunction with a reasonable bond based on public information that is available and supports Everplay's calculation.

## II. ARGUMENT

### A. OMZZ Offered No Evidence to Carry Its Burden

The parties agree on the standard: an accused infringer can defeat a preliminary injunction by raising a "substantial question" of invalidity. Dkt. 13 at 10; Dkt. 39 at 3–4 (both citing *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017)). But "the burden is on the challenger to come forward with evidence of invalidity." *Tinnus*, 846 F.3d at 1205 (quoting *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1377 (Fed. Cir. 2009)). "There is no lower 'mere vulnerability' standard." *Natera, Inc. v. NeoGenomics Labs., Inc.*, 106 F.4th 1369, 1377 (Fed. Cir. 2024) (affirming injunction where the challenger offered "little more than conclusory argument"); *see also Tinnus*, 846 F.3d at 1201–02, 1208 (affirming preliminary injunction against toy sold on Amazon despite institution of parallel post-grant review USPTO proceedings).

OMZZ offers no evidence on which to find a substantial question of invalidity. It disclaimed an expert, Dkt. 26 at 1, and did not even provide the promised declarations from its own personnel. "It is not sufficient to merely allege that the individual elements of the claimed invention were each known in the prior art." *Natera*, 106 F.4th at 1377. OMZZ provides nothing on the level of ordinary skill, what the references would convey to a skilled artisan, a reason to combine them, an expectation of success, or how a skilled artisan would read the original

application. Its brief is the only source for each point, and "[a]ttorney argument is not evidence." *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017).

The examiner twice rejected the claims over Ornstein before allowing claim 1, Dkt. 13-18; Dkt. 13-19; Dkt. 13-22, which "suggests that there are important technical differences that a lay observer would not be able to assess without expert assistance." *Thomas & Betts Int'l v. Orbit Indus., Inc.*, No. 06-cv-03689-MMM-SS, 2007 WL 10146081, at *8 n.46 (C.D. Cal. Dec. 7, 2007). A challenger that offers no evidence of the level of ordinary skill cannot avoid the need for expert testimony by calling a mechanical invention simple. *Topfire Ltd. v. Cook*, No. 2:23-cv-02503-DAD-JDP, 2026 WL 2836761, at *15–16 (E.D. Cal. Sept. 22, 2026).

**B. Everplay Is Likely to Prove Infringement of Claim 1**

OMZZ says Mr. Fletcher's analysis rests "entirely on superficial external photographs." Dkt. 39 at 7. Not so. He obtained physical samples, Dkt. 13-7 ¶ 49; measured with calipers "the depth that the outer face of magnets sat from the outer surface of the connector recess," *id.* ¶¶ 52–54; marked the magnets, let them rotate in the connector and mapped their polarity, *id.* ¶ 55; and documented an emptied accused connector beside its extracted magnets and a disassembled accused corner. *Id.* ¶¶ 63–64. His claim chart reads the connector, recess, magnet and dowel limitations, not the felt. *Id.* ¶ 63. OMZZ's "[m]ere visual similarity of external felt panels" (Dkt. 39 at 7) characterization is not a fair description of the analysis he performed. *See also* Ex. 10 (Fletcher Supp. Decl.) ¶¶ 52–57.

OMZZ claims Mr. Fletcher did not do "non-destructive testing, physical cross-sectioning, or precise internal mechanical measurements," Dkt. 39 at 7, but his original declaration documents both non-destructive testing, Dkt. 13-7 ¶¶ 55–57, and caliper measurements. *Id.* ¶¶ 52–54. Cross-sectioning was unnecessary because the parts come apart, and a cross-section he has since made

of an accused connector shows the end of the dowel inside the connector, against the magnet. Ex. 10 ¶ 55. It is not enough to "simply dispute[] the sufficiency and accuracy of the expert's testimony," *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1089 (Fed. Cir. 1998), and yet here OMZZ's attacks are not even grounded in the expert's actual analysis.

Nor does OMZZ rebut Everplay's infringement case with any facts of its own. OMZZ says it does not concede infringement of claim 1, but it identifies no limitation the Accused Products lack. It says the magnets and dowels have not been shown to sit "in the manner claimed," Dkt. 39 at 7, but it never says which manner is missing. OMZZ's only specific non-infringement contention anywhere concerns a "clip" recited in claims 5 and 24, not claim 1. Dkt. 18 at 26.

It is not enough to "repeat[] … conclusory statement[s] … without explaining" how an accused product "necessarily avoids infringement." *Canon Computer*, 134 F.3d at 1089. Where an accused infringer "submit[s] no evidence to contest" infringement, it is reasonable to conclude there is a likelihood of success and to issue a preliminary injunction. *Atlas Powder Co. v. Ireco Chems.*, 773 F.2d 1230, 1233 (Fed. Cir. 1985).

### C. OMZZ Has Not Raised a Substantial Question of Validity

OMZZ does not carry its burden of raising a substantial question of validity. For obviousness, OMZZ must establish not only that the prior art can be assembled in a manner that teaches all the elements of the claimed configuration, but that a person of ordinary skill would have had a reason and motivation to make such a combination, and with a reasonable expectation of success. *Millennium Pharms., Inc. v. Sandoz Inc.*, 862 F.3d 1356, 1366 (Fed. Cir. 2017) (challenger must show "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so"). Neither OMZZ's original combination, nor

its new alternative, teaches all the elements, and OMZZ makes no showing with respect to motivation or expectation of success. OMZZ also introduces an argument about the statutory requirement for written description support, but that standard must be evaluated from the perspective of a person of ordinary skill. OMZZ offers no such evidence, and its attorney argument is rebutted by the plain language of the patent application as filed.

**i. Ground One: Ornstein, Wei and Kim WO.**

OMZZ's attorney argument does not accurately describe the prior art. OMZZ says Ornstein discloses the "overall modular play-panel assembly including panels, frames, connectors, and magnets," Dkt. 39 at 4, but it does not disclose the configuration as claimed. Ornstein's frame is an integral piece, which the examiner could read as a "connector and two dowels" only by reasoning to make it in "three pieces," Dkt. 13-19 at 3, and even then no dowel end is received within a recess that houses a magnet, the limitation she found missing, Dkt. 13-22 at 3. In Wei's adapter, the magnet is not merely "hous[ed]" within an internal cavity, Dkt. 39 at 4, it is "fixedly embedded" in a cavity of protrusion 31, behind the floor of recess 321. Dkt. 13-14 at 4–5 (¶ [0031]). A fixed magnet is not "able to rotate," as claim 1 requires. Moreover, the recess in Wei receives the mating pipe's own end piece or a loose connecting block, *id.* (¶¶ [0024]–[0025]), not a dowel end received in a recess that houses the connector's own rotatable magnet. In Kim WO, the connectors are metal balls, and its magnets sit in caps whose protrusion is inserted into a hollow rod. Dkt. 13-15 at 6–7. The "pivot shaft" OMZZ describes (Dkt. 39 at 5) merges two configurations, Figures 13 and 14, Dkt. 13-15 at 10–11, and the word "pivot" does not appear at all in Kim WO.

The Patent Office has weighed these references. The examiner twice rejected the claims over Ornstein and allowed claim 1 after it was amended to recite the recess architecture. Dkt. 13-

18 to 13-22. Wei and Kim WO have been considered in two continuations, the claims of which have been allowed. Dkt. 13-16 at 3; Dkt. 13-17 at 3; Dkt. 34-1 at 2, 8–9. All OMZZ offers to overcome the deference owed to the examiner is its attorney's argument. *Cf. Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015) (noting "the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job").

Nor does OMZZ offer more than a conclusory argument that a person of ordinary skill in the art would have had a reason to combine these references. Dkt. 39 at 5. "One cannot show that a patent is obvious without evidence as to why a person having ordinary skill in the art would have combined the references to arrive at the claimed invention." *Scholle Corp. v. Rapak LLC*, 35 F. Supp. 3d 1005, 1014 (N.D. Ill. 2014). "Without any explanation as to how or why the references would be combined to arrive at the claimed invention, we are left with only hindsight bias that *KSR* warns against." *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1367 (Fed. Cir. 2017) (affirming preliminary injunction).

**ii. Ground Two: Ornstein, Alkas and Kim '713.**

In its opposition, OMZZ offers a new combination of references. Alkas and Kim '713 appear in neither the complaint's invalidity theory nor the reexamination request. Compl. ¶¶ 30–31; Dkt. 19-1 at 5, 7–8; *see* Dkt. 39 at 5.

Alkas was before the examiner during prosecution of the '811 patent. It appears on the Notice of References Cited issued with the Notice of Allowance, after updated searches in late October 2025. Ex. 11 (PTO-892) at 3; Ex. 12 (Search Notes) at 12, 14; *see* Dkt. 13-22 at 6. The '811 patent lists it as "cited by examiner" on its face. Dkt. 13-8 at 2–3.

Alkas discloses the opposite of the claimed recess. It is a trade-show display frame. Dkt. 39-1, col. 1:4–7. Its connector carries male tenons that "fit within" the hollow frame tubes, so the

frame member receives the connector, *id.*, col. 3:44–58, and its magnet turns on a post at the tip of the tenon, rotating "within the frame member" in the clearance of the tube. *Id.*, col. 4:51–64; *see* Dkt. 39 at 5. In contrast, the dowel of claim 1 is received within the connector's end recess, and the magnet is housed in that same recess. Ex. 10 ¶ 40.

Kim '713 does not close the gap. OMZZ's attorney argument claims it teaches a "joining pin" in a "recess" around which the magnet rotates "freely," Dkt. 39 at 5–6, but in OMZZ's own translation, it discloses a toy block whose "fixing pin," shaped like a thumbtack (a plate about 6 mm across and 0.3 mm thick on a pin about 4 mm long), is fitted so that it "penetrate[s]" the block, holding a small magnet that turns "only to the left or right in place." Dkt. 39-2 at 3–4, ¶¶ <33>, <34>, <37>, <41>, <46>. The pin joins no part to another but rather fastens a magnet into a block. This is not analogous to the dowel of claim 1, which spans two connectors. Dkt. 13-8, claim 1.

OMZZ says these references "directly refute Everplay's contention that a POSITA would not look to tubular or block connector systems," Dkt. 39 at 5, but this is a strawman. The point was that Wei and Kim WO lack the claimed recess and supply no reason to combine, Dkt. 13 at 11–12, and OMZZ's new references lack the recess too. A display frame with external tenons, plus a block with a thumbtack pin, does not yield a two-ended connector whose end recesses each house a magnet and receive a dowel end. Nor could the pieces simply be combined: moving Alkas's magnet out of the tube whose clearance lets it turn, and into a connector recess that also receives the frame member, changes what holds the magnet and how it turns. Ex. 10 ¶ 46. Moreover, OMZZ's stated reason to combine—that a skilled artisan would be "naturally motivated" to make "a predictable combination of known elements performing their established functions," Dkt. 39 at 6—is a formula the Federal Circuit rejected even from an expert as "not sufficient and . . . fraught with hindsight bias." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327

(Fed. Cir. 2012).

**iii. The objective evidence confirms that claim 1 is not obvious.**

Citing *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373–74 (Fed. Cir. 2019), OMZZ tries to dismiss Everplay's substantial objective indicia of non-obviousness on the ground that there must be a "direct causal nexus" linking them "to the specific claimed internal mechanical structure of Claim 1." Dkt. 39 at 6. But as *Fox Factory* itself recognizes, "presuming nexus is appropriate when the patentee shows that the asserted objective evidence is tied to a specific product and that product embodies the claimed features, and is coextensive with them," 944 F.3d at 1373 (internal quotation marks omitted), as is the case here. Dkt. 13-7 ¶ 59.

Rebutting the presumption takes evidence, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1329 (Fed. Cir. 2016), which OMZZ does not offer. OMZZ says Everplay's marketing and awards concern "the overall consumer experience," not the "connector-recess-and-dowel arrangement," Dkt. 39 at 6–7, but the consumer's experience comes from the arrangement. Panels join "from any direction" because magnets housed in the connector recesses are "able to rotate." Dkt. 13-8, claim 1. And life-size panels can be light because the dowels received in those same recesses form a rigid frame. Indeed, frameless prototypes failed for want of a material "strong enough, light enough, and inexpensive enough," and what "made the product feasible" was spinning magnets in corner connectors plus "lightweight rigid frame materials like bamboo." Dkt. 13-1 ¶ 8.

The winning Core77 entry credits "a frame that would house the magnets while allowing the panels to be lightweight." Dkt. 13-2 at 19, 24. The National Parenting Product Awards evaluators singled out the features: "there is no right or wrong way to assemble them. The panels are lightweight and the magnets are really strong." *Id.* at 27. And OMZZ copied the design, down to the 60 mm connector and 10 mm magnet. Dkt. 13-1 ¶ 17; Dkt. 13-7 ¶¶ 54, 57. These objective

indicia tie directly to the claimed configuration and confirm nonobviousness.

**iv. The application as filed describes the claimed structure.**

OMZZ argues the claim is "vulnerable" under § 112(a) for lack of written description. Dkt. 39 at 6. Written description asks whether the application "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). It is "a question of fact, judged from the perspective of one of ordinary skill in the art," *Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 127 F.4th 896, 914 (Fed. Cir. 2025) (affirming preliminary injunction) (citation omitted), and requires no "in haec verba" recitation, *Ariad*, 598 F.3d at 1352. Drawings count. *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322–23 (Fed. Cir. 2002).

OMZZ provides no evidence of how a person of ordinary skill in the art would read the application that became the '811 patent. It argues that the specification never describes a dowel end received in the recess "alongside the magnet." Dkt. 39 at 6. "Alongside" is OMZZ's word, not the claim's, and OMZZ concedes the specification "states only that the dowel holds the magnet in the end of the connector." *Id.* A dowel that holds a magnet in the end of a connector is a dowel received in that end. The application says so repeatedly:

| **Application as filed (Ex. 14)** | **Text** |
|---|---|
| Summary, p. 2 | the magnet is "held in place in the first end of the first connector by the first dowel"; "each housing portion . . . comprises a recess" |
| p. 28 | "a clip may not be provided and dowel 1308a may hold magnet 1300a in connector 1310" |
| Fig. 15; pp. 29–30 | cross-section "taken through a connector 1510": each dowel end sits within an end of the connector, with the magnet in the "housing portion" of that same end |
| Claims as filed, 2, 20 (pp. 33, 37); spec. pp. 7, 12 | "the first dowel is configured to hold the first magnet in the first end of the connector"; the magnet "can rotate in the at least one recess" |

Nor are the clip embodiments a different invention: claim 5 adds a clip to claim 1, so they are claim 1 embodiments. Dkt. 13-8, claim 5. As Mr. Fletcher explains, a person of ordinary skill in the art would understand the original application to support these claim elements. Ex. 10 ¶ 49 (annotated Fig. 15); *see* Dkt. 13-7 ¶¶ 42–43. A claim need not track the application "in exactly the same terms," *i.e.*, *in haec verba*, rather it suffices that a person of ordinary skill "would recognize upon reading the specification that the new language reflects what the specification shows has been invented." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002) (citation omitted).

Therefore, there is no substantial question of validity based on lack of written description.

### D. Everplay Will Suffer Irreparable Harm

#### i. The harm flows from the patented system.

OMZZ argues there is no nexus between Everplay's irreparable harm and the configuration of claim 1, but the test is "some connection between the patented feature and demand," not proof that the feature is "the exclusive reason for consumer demand." *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here the demand is for the product, and the product is the claimed system: SUPERSPACE embodies claim 1, and so do the accused products. Dkt. 13-7 ¶¶ 55, 59, 63; Dkt. 13 at 13.

The demand evidence is based on SUPERSPACE's innovative configuration. Everplay's launch campaign promised "Strong Magnets = Stable Structures." Dkt. 13-2 at 5. OMZZ's own listing promises "Strong Magnetic Connections for Stable Structures" and "walk-in forts." Dkt. 13-3 at 16. The accused products have no purchase-relevant feature apart from the configuration that enables that method of play. Where "the infringing product contains no feature relevant to consumers' purchasing decisions other than what the patent claims," the "causal-nexus inquiry

may have little work to do." *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 n.2 (Fed. Cir. 2017). OMZZ's contention that rotatable magnets were known (Dkt. 39 at 9) misses the point. Nexus runs to the claimed configuration as a whole, which no reference discloses. *Cf. WBIP*, 829 F.3d at 1330. And the products' components are interchangeable—OMZZ's connectors and magnets line up with SUPERSPACE's, a "customer review" video on its listing features panels that "appear to be from a SUPERSPACE set," and the two parties' panels connect in a single structure. Dkt. 13-1 ¶ 17; Dkt. 13-7 ¶ 57. Thus, OMZZ's price comparison ("$289 vs. $449," Dkt. 39 at 9) does not break the chain. A lower price on a copy that connects to the patentee's panels is how the harm happens, not an alternative cause of it.

**ii. The harm cannot be measured or repaired with money.**

OMZZ calls Everplay's harm "fully calculable," Dkt. 39 at 8, yet the sales figures any calculation would need are OMZZ's, and OMZZ withheld them despite promising a declaration on "sales and inventory." Dkt. 26 at 2. Nor are the lost customers identifiable: the substitution surfaces only in Amazon reviews. Dkt. 13-1 ¶ 25; Dkt. 13-4 at 4. "[I]t is precisely the difficulty of pinning down what business has been or will be lost that makes an injury 'irreparable.'" *Hess Newmark Owens Wolf, Inc. v. Owens*, 415 F.3d 630, 632 (7th Cir. 2005); *see Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (affirming magistrate judge's injunction where lost customers were "not fully identifiable"); *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). In *DM Trans, LLC v. Scott*, by contrast, the parties could "identify the eleven customers." 38 F.4th 608, 619 (7th Cir. 2022).

Timing compounds the harm in this case. Everplay sells one product family. Dkt. 13-1 ¶ 29. In 2025, 72.1% of its net sales came in the fourth quarter, up every year since 2022, and November alone produced about 53% of its U.S. net sales. *Id.* ¶ 30; Dkt. 13-6. Customers are

substituting OMZZ's products for Everplay's. In a review dated June 26, 2026, a family that already owned "the original, Super Space tiles" explained that it bought Umoving because it was "on sale and more than half of what we paid." Dkt. 13-1 ¶ 25; Dkt. 13-4 at 4. A patentee may be unable to restore its price "as long as competition from [the infringer] remains," and a post-issuance Amazon review that took the patentee's product for the "off brand" supported a finding of harm to its "status as the innovator." *Tinnus*, 846 F.3d at 1207–08. The only case on which OMZZ relies, *Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578–79 (Fed. Cir. 1996), was a fact-specific finding based on "the structure of the cefaclor market" and the defendants' "adequate assets to satisfy any judgment," neither of which OMZZ offers any evidence of.

**iii. OMZZ has no identified U.S. assets.**

OMZZ does not deny that it has no identified U.S. assets. Its offices are in Ningbo and Hong Kong, Dkt. 26 at 2, and both Amazon seller profiles list only addresses there. Ex. 13 at 4–5, 10. OMZZ's answer is an unsworn sentence that Amazon "merchant funds are processed and held subject to domestic jurisdiction and established enforcement mechanisms." Dkt. 39 at 10. That is attorney argument about facts uniquely within OMZZ's control. *See Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011). It is also wrong. Amazon generally remits seller proceeds "on a bi-weekly (14 day) (or at our option, more frequent) basis." Ex. 15 (Amazon Services Business Solutions Agreement § S-5); *see id.* § P-1. A balance today is not an asset at judgment.

OMZZ's own counsel has explained to this District why that matters. Seeking a preliminary injunction against China-based marketplace sellers in a patent case, counsel argued that they "could continue to make infringing sales and regularly empty any domestic financial accounts, such as assets held by the third-party marketplaces, and move those funds outside of Plaintiff's

and the Court's reach," so that "Plaintiff's ability to collect damages through later legal remedies is bleak, at best." Pl.'s Reply at 5–6, *Marvel Tech. (China) Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 1:24-cv-5280 (N.D. Ill. Feb. 25, 2025), ECF No. 51. The court granted a preliminary injunction in part. *Id.*, ECF No. 71 (Sept. 10, 2025). The same reasoning applies here. A legal remedy is inadequate where the defendant has "no significant assets in the United States." *Foodcomm*, 328 F.3d at 305.

**E. The Balance of Equities Favors Everplay**

Although OMZZ promised declarations on "sales and inventory" and "the harm an injunction would cause," Dkt. 26 at 2, OMZZ's "identical, catastrophic risks" have no declaration behind them. Dkt. 39 at 10. In *Abbott*, OMZZ's own case, the balance favored the patentee because the accused infringer was "reluctan[t] or inab[le] to quantify the hardship, if any, it will face." *Abbott Labs. v. Andrx Pharms., Inc.*, 452 F.3d 1331, 1348 (Fed. Cir. 2006) (quoting district court). Nor are the risks identical. The proposed order reaches two products. UnionMax's U-MOVING brand store on Amazon sells at least toddler beds, a play mat, and a modular sofa set—none of which would be enjoined. Ex. 13 at 12–14. SUPERSPACE is "the entirety of Everplay's business." Dkt. 13-1 ¶ 29.

**F. An Injunction Would Not Disserve the Public Interest**

The "paramount interest in full and free competition" OMZZ attributes to *Abbott* (Dkt. 39 at 11) is not in the opinion. *Abbott* holds that "the public is best served by enforcing patents that are likely valid and infringed," and it found that the public interest favored denial only because likely success had not been shown. 452 F.3d at 1348. The question is whether an injunction would disserve the public interest, *Wesley-Jessen Div. of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 868 (7th Cir. 1983), and this one would not. Consumers can still buy SUPERSPACE

and other non-infringing play sets.

### G. The Proposed Order Is Limited to the Two Accused Products

OMZZ asks that any injunction be limited to the two accused ASINs. Dkt. 39 at 11. An ASIN is a listing, not a product. An order keyed to listings would lapse the moment the same kit was relisted under a new ASIN or sold through another channel. Everplay's proposed order is instead limited to the two accused products. It identifies each by ASIN, name and photograph; reaches the same product however listed and wherever sold; and reaches another product only if it is not more than colorably different and also infringes claim 1. Proposed Order ¶¶ 2–3 & n.1. That tracks the two-step test *TiVo*, OMZZ's own case, adopted. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882–83 (Fed. Cir. 2011) (en banc) (injunction properly reaches a product that is "not more than colorably different" and "actually infringes").

### H. Security Should Be Set at $100,000

OMZZ demands a "substantial cash bond" reflecting its "anticipated seasonal sales and inventory carrying costs," Dkt. 39 at 12, but offers no evidence of its sales, margins or inventory. The burden of establishing the amount is OMZZ's. *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015). The measure is lost profit, not gross "seasonal sales." *Cf. Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006).

Using the only sales evidence in the record (OMZZ having offered none), Everplay proposes a bond of $100,000. Amazon captures show OMZZ's two listings with "50+" and "100+" units "bought in past month," Dkt. 13-3 at 9, at prices between $289.99 and $379.99. *Id.* at 16. Counting each listing at 100 units a month at the higher price, gross sales would be about $76,000 a month, and lost profit at a 25% margin about $19,000 a month. A $100,000 bond covers more than five months of that profit.

## III. CONCLUSION

Everplay respectfully requests that the Court recommend a preliminary injunction issue in the form proposed at or promptly after the October 30 hearing. Everplay is prepared to lodge proposed findings of fact and conclusions of law before the hearing if the Court would find them useful.

Dated: October 21, 2026

POLSINELLI PC

/s/Mark T. Deming
Mark T. Deming, Ill. Bar No. 6299631
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
(312) 819-1900
mdeming@polsinelli.com

M. Lawrence Oliverio
*(pro hac vice)*
POLSINELLI PC
One International Place, Suite 3900
Boston, MA 02110
(617) 406-0335
loliverio@polsinelli.com

Andrew Z. Weaver
*(pro hac vice forthcoming)*
POLSINELLI PC
1000 Louisiana Street
Suite 6400
Houston, TX 77002
(713) 374-1600
aweaver@polsinelli.com

*Attorneys for Everplay Labs Limited.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and Local Rule 5.9.

/s/Mark Deming