**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

OMZZ TRADING CO., LIMITED et al,

Plaintiffs,

vs.

EVERPLAY LABS LIMITED,
Defendant.

Case No. 1:26-cv-09480

**SUPPLEMENTAL DECLARATION OF TIM P. FLETCHER**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 2

A. Scope of Opinions ..... 2

B. Compensation, Work Experience, and Education ..... 3

C. Specific Experience with Toys, Magnets and Textile Environments ..... 3

D. Software used ..... 4

E. Diametrically Magnetized Cylindrical Magnet - Definition ..... 4

II. SUMMARY OF CONCLUSIONS ..... 4

III. STATEMENT OF RELEVANT LEGAL PRINCIPLES ..... 4

A. Infringement of a utility patent ..... 5

B. Obviousness ..... 6

IV. LEVEL OF ORDINARY SKILL IN THE ART ..... 6

V. EVERPLAY MAGNETIC PLAY FORT AND THE ACCUSED PRODUCTS ..... 7

VI. ANALYSIS OF THE '811 PATENT IN LIGHT OF THE ACCUSED PRODUCTS ..... 7

VII. VALIDITY OF THE '811 PATENT: NONOBVIOUSNESS ..... 7

VIII. My Opinions Based on the Plaintiffs' Response ..... 7

A. Obviousness based on Ornstein in view of U.S. Patent No. 10,217,388 to Alkas ("Alkas") and Korean Utility Model Reg. No. 20-0442713 to Kim ("Kim '713") ..... 7

1. **Ornstein** ..... 7

2. **Alkas** ..... 10

3. **Kim '713** ..... 12

4. **The Combination of Ornstein, Alkas and Kim '713** ..... 13

B. Written Description ..... 15

C. Infringement ..... 17

IX. CONCLUSION ..... 25

# I. INTRODUCTION

## A. Scope of Opinions

1. My name is Tim P. Fletcher. I am an industrial designer and president of One BusinessDesign, LLC in Garner, North Carolina.

2. I understand that Everplay Labs, Limited ("Everplay" or "Defendant") alleges that OMZZ Trading Co., Limited et al. ("OMZZ" or "Plaintiffs") infringes multiple claims of U.S. Patent No. 12,551,811 (the '811 Patent) titled, "System, Panel and Method" in litigation that is currently pending in the Northern District of Illinois. A true and correct copy of the '811 Patent is Exhibit A to my declaration dated September 16, 2026 (Dkt. 13-7) ("Prior Declaration").

3. I have been retained by Everplay to review and analyze certain issues related to this lawsuit, and render expert opinions as set forth more fully below.

4. Specifically, I understand that Everplay alleges OMZZ's 20 and 24 Piece Magnetic Fort Building Kits – Amazon ASIN numbers B0F1F8XFQ6 and B0F1FC6SHD ("the Accused Product") infringe at least asserted claims 1, 2, 3, 4, 6, 7, 8, 12, 13, 16, 17, 18, 19, 20 and 21 ("the Asserted Claims") of the '811 Patent. For purposes of Everplay's motion for a preliminary injunction, I understand that only claim 1 is at issue, and my opinions below on OMZZ's new arguments address claim 1.

5. I have been asked by counsel for Everplay to review the PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION (Dkt. 39) ("Plaintiffs' Response"), the '811 Patent, the Asserted Claims, Everplay's "SUPERSPACE" product, the accused product, the patent law provided by counsel, and other documents, evidence, and testimony provided by counsel that is related to this litigation. In doing so, I have

been asked by counsel for Everplay to analyze statements made in Plaintiffs' Response. This declaration responds to matters raised for the first time in Plaintiffs' Response.

6. This declaration includes my opinions and bases regarding the analysis mentioned above relating to the '811 Patent and the accused product and is based upon information currently available to me. I reserve the right to supplement this declaration with additional analysis and opinions regarding this matter.

7. To the extent that additional information becomes available, I may continue my investigation and study, which may include a review of information and documents that recently have been or may be produced, as well as testimony from depositions that have not yet taken place in the litigation. I may also supplement my opinions in response to any additional information that becomes available to me, any matters raised by OMZZ and/or opinions or submissions provided by any of OMZZ's experts, or in light of relevant orders from the Court. I may supplement or formulate new opinions if there is a material change in the law, facts, or opinions offered by others between now and trial in this matter.

8. I have re-read my Prior Declaration. The statements in it are true and correct, and I reaffirm them.

**B. Compensation, Work Experience, and Education**

9. My compensation, background and qualifications are set forth in detail in my Prior Declaration (¶¶ 8–20) and my curriculum vitae (Exhibit B to my Prior Declaration).

**C. Specific Experience with Toys, Magnets and Textile Environments**

10. My Specific Experience with Toys, Magnets and Textile Environments is set forth in detail in my Prior Declaration (¶¶ 21–25). The only addition I would like to make is that during college I worked for a display and exhibit design and fabrication company, A. Brothers

Associates in Raleigh, NC. Also, while working for Stahlwood Mfg. Co. Inc. and Elumens Corp. I designed and fabricated trade show exhibits for these companies.

### D. Software used

11. For the purposes of creating graphics and modifying images that are used throughout this declaration, I used the CorelDraw suite. This suite includes CorelDraw, which is a competitor to Adobe Illustrator, and Corel Photo, which is a competitor to Adobe Photoshop.

### E. Diametrically Magnetized Cylindrical Magnet - Definition

12. My Diametrically Magnetized Cylindrical Magnet - Definition is set forth in detail in my Prior Declaration (¶¶ 27–31).

## II. SUMMARY OF CONCLUSIONS

13. As explained throughout this declaration, it is my opinion that the technical statements in Plaintiffs' Response are incorrect. It is further my opinion that, in designing the Accused Product, OMZZ copied the system for building a play area comprising two or more panels and key features of Everplay Magnetic Play Fort products and that the '811 Patent is nonobvious.

## III. STATEMENT OF RELEVANT LEGAL PRINCIPLES

14. I considered legal issues regarding claim construction, infringement, noninfringement, obviousness, and validity, as well as legal principles specific to utility patents.

15. I am not a legal expert. My understanding of the legal standards that I applied in reaching my opinions set forth in this declaration was provided to me by counsel for Everplay,

are known to me from prior testimony that I have given, or come from my reading of some of the pleadings and rulings in this case or other cases I have been involved in. In preparing this declaration, I have tried to faithfully apply these legal standards in rendering my opinions.

16. Below, I will describe the law that I applied in considering these legal issues and principles when reaching my opinions.

**A. Infringement of a utility patent**

17. I understand that whoever makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent, infringes the patent.

18. I understand that the claims of a patent define the invention covered by the patent.

19. I understand that when a product is accused of infringing a patent, the claims must be compared to the accused product to determine if the claims cover the accused product.

20. I understand that determining whether a given claim in the patent is infringed by the accused product requires a two-step analysis. First, the claim must be construed, and then the properly construed claim must be compared to what is accused of infringement.

21. I understand that Everplay bears the burden of proving that the accused products sold by OMZZ infringe at least one of the Asserted Claims of the ’811 Patent by a preponderance of the evidence.

22. It is my understanding that for a claim to be infringed, each and every limitation of the claim must be present in the accused product. A claim can be infringed if each and every claim limitation of the claim is either literally found in the accused product or is found by an equivalent.

### B. Obviousness

23. I understand that a patent is presumed valid and that the party challenging validity bears the burden of proving invalidity.

24. I understand that a claim is invalid as obvious only if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious, at the time of the invention, to a person of ordinary skill in the art. I understand that this analysis considers the scope and content of the prior art, the differences between the prior art and the claim, the level of ordinary skill in the art, and objective evidence such as commercial success, industry praise and copying.

25. I understand that it is not enough to show that each element of a claim was known somewhere in the prior art. There must be a reason that would have led a person of ordinary skill to combine the references in the way the claim does, with a reasonable expectation of success, and the analysis must avoid hindsight that uses the patent itself as a roadmap.

## IV. LEVEL OF ORDINARY SKILL IN THE ART

26. It is my opinion that a person of ordinary skill in the art ("POSITA") at the time of invention of the '811 Patent would have had a minimum of a Bachelor's degree in Industrial Design, Mechanical Engineering, or related field and approximately 5 years of professional experience in the field of consumer products design and manufacturing. Additional graduate education could substitute for professional experience, or significant experience in the field could substitute for formal education. Thus, the more experience one has in a relevant field, the less formal education that may be required in order to attain the level of ordinary skill in the art, and vice versa.

27. I qualify as a person of ordinary skill in the art and meet these qualifications, at least as early as August 25, 2020, which is the earliest filing date of a foreign application to

which the ’811 Patent claims priority.

## V. EVERPLAY MAGNETIC PLAY FORT AND THE ACCUSED PRODUCTS

28. My statements regarding the EVERPLAY MAGNETIC PLAY FORT AND THE ACCUSED PRODUCT are set forth in detail in my Prior Declaration (¶¶ 44–57).

## VI. ANALYSIS OF THE ’811 PATENT IN LIGHT OF THE ACCUSED PRODUCTS

29. My statements regarding the ANALYSIS OF THE ’811 PATENT IN LIGHT OF THE ACCUSED PRODUCTS are set forth in detail in my Prior Declaration (¶¶ 58–77).

## VII. VALIDITY OF THE ’811 PATENT: NONOBVIOUSNESS

30. My statements regarding the VALIDITY OF THE ’811 PATENT: NONOBVIOUSNESS are set forth in detail in my Prior Declaration (¶¶ 78–94).

## VIII. MY OPINIONS BASED ON THE PLAINTIFFS’ RESPONSE

### A. Obviousness based on Ornstein in view of U.S. Patent No. 10,217,388 to Alkas (“Alkas”) and Korean Utility Model Reg. No. 20-0442713 to Kim (“Kim ’713”)

#### 1. Ornstein

31. OMZZ states that “Ornstein discloses the overall modular game panel assembly including panels, frames, connectors, and magnets (Ornstein, Figs. 1–4, 31).” Dkt. 39 at 5.

32. It is my opinion that the combination of Ornstein, Alkas, and Kim ’713 does not render claim 1 obvious.

33. During the prosecution of the ’811 Patent, in the Response to Final Office Action, the applicant summarized an interview in which Examiner Ford indicated that reciting the recesses in the ends of the connector, and how they receive the dowels, would likely overcome the cited references, including Ornstein (Dkt. 13-21). Excerpts from that summary are below:

> “Independent claim 1, 17, and 20 (as presented in Applicant's already filed response) were discussed. U.S. Patent Publication No. 2016/0184727 to Ornstein, et al. (“Ornstein”).....
>
> Regarding independent claim 1, no specific agreement was reached but Examiner Ford indicated that, in her view, additional description of the structure of the connectors would likely be necessary to overcome the rejection under 35 U.S.C. § 103 in view of the cited references. Specifically, Examiner Ford indicated that a further definition of the connector, e.g., reciting the recesses in ends of the connector and how they receive the first and second dowels therein, would likely overcome the cited references, which Examiner Ford described as having perpendicularly angled first and second dowels relative to one another. Additionally, Examiner Ford indicated that claiming the angle of the dowels relative to each other would overcome the cited references.
>
> More generally, Examiner Ford indicated that, in her view, the claims with further amendments along the lines of those discussed in the Examiner Interview could be distinguished from the discussed references, including Ornstein, Hoenigschmid, Rosen, and Xie, each of which fail to disclose

separate "connectors" and "dowels" as discussed and are of quite a different nature." Office Action Response dated August 28, 2025, pages 9-10.

34. I agree with the Examiner. Ornstein's frame portions 14, 16 are not separate connectors and dowels. In the final rejection, the Examiner proposed producing "the connector and two dowels as three pieces" (Dkt. 13-19 at 5). The Examiner then allowed claim 1 because the prior art of record did not make obvious connectors "housing a magnet in each of two end recesses and the recesses each receiving a dowel in the manner claimed" (Dkt. 13-22 at 8). Ornstein does not disclose that arrangement: in Ornstein, no end of a dowel is received within a recess that houses a magnet. Ornstein's text and the figures it references are below:

> "As shown in FIGS. 2 and 3, . . . the first and second **frame portions 14, 16** where the frame portions 14, 16 meet together when disposed around portions of the tile panel." (Ornstein, paragraph [0132], and FIGS. 2 and 3) (**emphasis added**)




FIG. 2




FIG. 3

2. **Alkas**

35. OMZZ states that "Alkas expressly bridges panel systems and tubular frameworks, teaching modular frames constructed of "frame members 22 interconnected by tube connector assemblies 24" that support fabric or rigid panels (Ex. A, Figs. 1, 6–7, col. 2 l. 59–col. 3 l. 11), where each corner junction connector (26/32) carries angled tenons (34) mounting a cylindrical, diametrically polarized magnet (60) that rotates freely within the hollow frame member to self-align and magnetically couple adjacent frames from any orientation (id., Figs. 4–5, 7–9, col. 3 ll. 43–54, col. 4 l. 55–col. 5 l. 40, claims 1, 20)." Dkt. 39 at 5.

36. Alkas is listed on the face of the '811 Patent as a reference cited by the Examiner, and it appears on the Notice of References Cited (PTO-892) that issued with the Notice of Allowance. The Examiner allowed the claims with both Ornstein and Alkas of record.

37. I performed a detailed review of Alkas and disagree with OMZZ's characterization of it, as explained below.

38. The description of Alkas on the face of the patent is DISPLAY SYSTEM. It is my opinion that a POSITA would not look to display systems, like those used in trade shows, to teach them about children's play environments. The panels mentioned in Alkas are for the purpose of holding graphics in place and not for play. While felt is sometimes used on display panels, their purpose is to fill a hole in a section where graphics have not been added. In my opinion Alkas is not analogous art.

39. Alkas explains that its frames may be provided with "one or more display panel or display element (not shown) with text, and/or images or any desirable information displayed thereon as is known in the art, for example on a substrate, a fabric, a rigid panel, or electronic displays," and that placing the magnets inside the frames preserves "the unobstructed outer profile of the frames . . . so as not to interrupt the graphics appearing on the external surfaces of the frames" (col. 3:1–9).

40. Alkas's connector is male; the connector of claim 1 is female. Alkas's connector body carries tenons, and the hollow frame member is "inserted over" a tenon (col. 3:44–58), so the opening that receives the joint is in the frame member, not in the connector. Alkas's magnet is carried on a separate magnetic assembly 28 and rotates inside the frame member, in the clearance of the tube (col. 4:51–64). In Alkas, the frame member receives the connector and surrounds the magnet.

In claim 1, the connector's end recess houses the magnet and receives the end of the dowel.

3. **Kim '713**

41. OMZZ states that Kim '713 "further teaches mounting such a rotatable magnet and a joining pin within the very same recess: a diametrically polarized rotatable magnet (14) with a central through-hole (15) is received within a recess/fitting hole (2) of a toy block (1), and a fixing pin (11, having shaft 13) is inserted through that same hole (15) into the recess (2), such that the magnet rotates freely in place around the pin inside the recess to self-align its N and S poles and magnetically couple adjacent components (Ex. B, Kim '713, Figs. 1, 3–4, ¶¶ <30>–<42>, <45>–<46>)." Dkt. 39 at 5–6.

42. Kim '713 teaches a pin inserted through the middle of a magnet in order to allow the magnet to rotate around the pin. The '811 Patent claims "a first magnet housed in the first recess of a first connector of the plurality of connectors" and "a second magnet housed in the second recess of the first connector" and "a plurality of magnets, each magnet of the plurality of magnets positioned in a connector of the plurality of connectors such that the magnet is able to rotate".

43. A person of ordinary skill in the art implementing the teachings of Kim '713 would have made the magnets with a pin inserted through their middle. This would not lead a person of ordinary skill in the art to arrive at the claimed subject matter. Rather, using all three references, a person of ordinary skill in the art would not have been able to arrive at the claimed subject matter.

44. Furthermore, Kim ’713 has a “joining pin” which is a fixing pin (고정핀). I have used the translation provided by OMZZ. The fixing pin is a ~4 mm tack that is interference-fitted into the block’s insertion hole so that its tip penetrates the block (¶¶ <33>, <37>). It joins nothing, it has no second end, and it sits in a block, not a connector.

45. Kim ’713 states its object: “to provide a fixing pin (11) and rotating magnet (14) for toy blocks, configured so that the rotating magnet (14) is fitted onto the fixing pin (11), and the fixing pin (11) can be easily fitted into the insertion hole (2) of the block (1)” (Dkt. 39-2 ¶ <29>). The pin fastens a magnet into a block. It does not join one part to another. This also teaches away from a magnet in a recess.

### 4. The Combination of Ornstein, Alkas and Kim ’713

46. If this combination were attempted, the following chart describes what a POSITA have to change to arrive at the subject matter of Claim 1.

| Claim 1 of ’811 Patent | Required Change |
|---|---|
| A system for building a play area comprising: | |
| two or more panels, each of the two or more panels comprising: | |
| a plurality of connectors, each connector of the plurality of connectors defining a first recess at a first end of the connector and a second recess at a second end of the connector; | Alkas’s connector has male tenons that are received inside the hollow frame members (col. 3:44–58). It has no recess at its ends. A POSITA would have to invert Alkas’s joint so that the connector receives the frame member. |
| a plurality of magnets, each magnet of the plurality of magnets positioned in a connector of the plurality of connectors such that the magnet is able to rotate, the plurality of magnets comprising: | |

| Claim 1 of ’811 Patent | Required Change |
|---|---|
| a first magnet housed in the first recess of a first connector of the plurality of connectors; and | Alkas’s magnet rotates inside the frame member, in the clearance of the tube (col. 4:51–64). A POSITA would have to move the magnet out of the tube and into a recess of the connector that also receives the frame member, which changes what holds the magnet and how it turns. |
| a second magnet housed in the second recess of the first connector; and | Same change as for the first magnet. |
| a plurality of dowels comprising: | |
| a first dowel, a first end of which is received within the first recess of the first connector and a second end of which is received within the first recess of a second connector of the plurality of connectors; and | Kim ’713 – does not teach this as it would require changing Kim’s tack into a member that spans two connectors. |
| a second dowel, a first end of which is received within the second recess of the first connector and a second end of which is received within the first recess of a third connector of the plurality of connectors, wherein the first connector is coupled to the first dowel and the second dowel, the second dowel angled with respect to the first dowel; | Kim ’713 – does not teach this as it would require changing Kim’s tack into a member that spans two connectors. |
| wherein, for each of the two or more panels,- when an edge of a first panel of the two or more panels is brought towards an edge of a second panel of the two or more panels from any direction, at least one magnet of the plurality of magnets in each of the first panel and the second panel orientates such that a magnetic connection is formed between the first panel and the second panel. | |

47. Based on my review of OMZZ’s asserted combination, I find that one of ordinary skill in the art would not have found any teachings in the art to arrive at the claimed subject matter. Additionally, I see no reason without hindsight to combine the references.

### B. Written Description

48. OMZZ states that "While the specification mentions an alternative arrangement operating without clips, it states only that the dowel holds the magnet in the end of the connector; it nowhere states or describes that an end of the dowel is received within a recess of a connector alongside the magnet."

49. This is incorrect. I reviewed the application as filed (U.S. Application No. 18/023,046, Reply Ex. 14). In my opinion, it describes to a POSITA the subject matter of claim 1, including a dowel end received within the connector recess that houses the magnet:

    a. I understand that the written description requirement is satisfied if the application as filed reasonably conveys to a person of ordinary skill in the art that the inventor had possession of the claimed subject matter as of the filing date. I understand that the application need not use the same words as the claims, and that the drawings and the claims as originally filed are part of the disclosure.

    b. The application states that "the at least one magnet may comprise: a first magnet housed in a first end of the connector; and a second magnet housed in a second end of the connector, wherein the connector connects a first dowel and a second dowel" (p. 2). It also states that "the first magnet is held in place in the first end of the first connector by the first dowel," that "the at least one housing portion is formed in between the first end of the first connector and the first dowel," and that "each housing portion of the at least one housing portion comprises a recess" (p. 2). It further states

that "a clip may not be provided and dowel 1308a may hold magnet 1300a in connector 1310" (p. 28). Figure 15 of the application, which I have annotated below, shows the end of each dowel inside an end of the connector, with the magnet in that same end:




Fig.15

The application describes Figure 15 as a cross-section "taken through a connector 1510": each dowel end sits within an end of the connector, with the magnet in the "housing portion" of that same end (pp. 29–30).

c. OMZZ states that the application nowhere describes "that an end of a dowel is received within a recess of the connector alongside the magnet." Dkt. 39 at 6. Claim 1 does not use the word "alongside." It requires a magnet "housed in the first recess of a first connector" and a dowel, "a first end of which is received within the first recess of the first connector." The passages and figure above describe the arrangement of the housing portion holding the magnet in a recess at the end of the connector, formed

between the end of the connector and the dowel, and the dowel holding the magnet in that end.

**C. Infringement**

50. OMZZ states "Mr. Fletcher's infringement analysis is based entirely on superficial external photographs and speculative assumptions. Mr. Fletcher performed no non-destructive testing, physical cross-sectioning, or precise internal mechanical measurements of the Accused Products to verify whether the interior assembly satisfies each strict mechanical limitation of Claim 1, including whether the magnets and dowels are positioned and secured within the connector recesses "in the manner claimed.""

51. I disagree and will refute these allegations below.

52. OMZZ indicates that my review was limited to "superficial external photographs" – The technology of the '811 Patent teaches components, the combination of these components, and the orientation of these components. In my Prior Declaration, my photographs with annotations illustrate components, the combination of these components, and the orientation of these components. My analysis was not limited to photographs. As described in my Prior Declaration and below, I obtained physical samples, took them apart, removed and marked the magnets, and measured the parts with calipers (Prior Declaration ¶¶ 49, 52–55, 63–64).

53. Additionally, OMZZ asserts that I "performed no non-destructive testing, physical cross-sectioning, or precise internal mechanical measurements of the Accused Products"- First, I did perform non-destructive testing of the Accused

Products and the Everplay Magnetic Play Fort products. As shown in my Prior Declaration and below:

a. Using the square panels I have from SUPERSPACE and the Accused Product, I tested the interchangeability between each and its effect on function. I built two open cubes, or assemblies, for the purpose of giving a clear view as to which panels are from which party and to make sure both assemblies of panels would function equally. Below are images showing the panels fit together and allowed the creation of a structure:

<table>
<tr><th>Assembly 1</th><th>Assembly 2</th></tr>
<tr><td>
</td><td>
</td></tr>
</table>

54. If what OMZZ meant to say is that I did not perform destructive testing of the Accused Product, I also disagree. From my Prior Declaration, below can be seen several examples of the destructive testing that I did perform:

a. I took apart the Accused Product to analyze the combination and positioning of the magnets and the connector:

| Claim 1 of '811 Patent | OMZZ Accused Product |
|---|---|
| a first magnet housed in the first recess of a first connector of the plurality of connectors; and |     |

b. I took apart the Accused Product to analyze the combination and positioning of the dowels and the connectors. I also removed the webbing on two sides to reveal the dowels along with the connectors:

| | |
|---|---|
| a second dowel, a first end of which is received within the second recess of the first connector and a second end of which is received within the first recess of a third connector of the plurality of connectors, wherein the first connector is coupled to the first dowel and the second dowel, the second dowel angled with respect to the first dowel; |   |

c. I took apart the Accused Product to analyze the combinations of and positions of the dowels, magnets and connectors:

| Claim 2 of '811 Patent | OMZZ Accused Product |
|---|---|
| The system as claimed in claim **1,** wherein the first dowel holds the first magnet in the first recess of the first connector and the second dowel holds the second magnet in the second recess of the first connector. | <br>I observed that the first dowel holds the first magnet in the first recess of the first connector and the second dowel holds the second magnet in the second recess of the first connector. |

d. I took apart the Accused Product to analyze the combination and positioning of the dowel and the sleeve:

| **Claim 3 of '811 Patent** | **OMZZ Accused Product** |
|---|---|
| The system as claimed in claim **1,** wherein at least one panel of the two or more panels further comprises fabric having sleeves through which the first dowel and second dowel pass through. |   |
| |   |

e. I took apart and annotated the magnets to analyze their movements:

| Claim 7 of '811 Patent | OMZZ Accused Product |
|---|---|
| The system according to claim **1,** wherein each of the first magnet and the second magnet is a diametrically magnetized cylindrical magnet. | <br><br><br><br>I marked each magnet with a black Sharpie® marker in order to aid in understanding their orientation.<br><br>Cylindrical Magnet |

55. OMZZ further asserts that I did no "physical cross-sectioning." Cross-sectioning was not necessary to see how these components are arranged, because the connectors, magnets and dowels of the Accused Product are separate parts that can be taken apart, as shown in the photographs above (Prior Declaration ¶¶ 55, 63–64). No physical cross-sectioning was performed previously because it was not required to understand the Accused Product in relation to the claimed subject matter. I have performed a cross-sectional analysis of both the Accused product and the SUPERSPACE product. I have annotated a photo of a physical cross-section of both the Accused Product and the SUPERSPACE product merely to reconfirm what I already knew, and this in no way changes my opinions:




56. OMZZ further alleges that I performed no "precise internal mechanical measurements" – When required, I did use precise mechanical measurements, using a set of digital calipers, as shown below:

I have analyzed samples of the SUPERSPACE products and the Accused Products. In my Prior Declaration (¶ 52), I stated that my analysis gave no consideration to ornamentality. That statement meant only that I was not comparing the ornamental appearance of the products. My analysis of how the parts are arranged was based on handling, taking apart and measuring the samples. **Same materials:** Both the SUPERSPACE and Accused Products are comprised of plastic connectors, wooden dowels and sheets of felt material. The wooden dowels are fixed in position, to the felt sheets using textile webbing material, forming a loop along the length of the wooden dowel, sewn on both edges to the felt panels. **Same dimensions:** Using a metric tape measure, I measured the length and height of each square panel. The SUPERSPACE

square panel and the Accused Product square panel were 0.5 meter in both length and height. **Magnet Positions:** Using a set of calipers, I measured the overall width of the connector, the depth that the outer face of magnets sat from the outer surface of the connector recess, as well as the magnets' length. An image showing these dimension locations are shown below:




In each case the dimensions were as follows:

| | **Connector Overall** | **Magnet Length** | **Recess to Magnet** |
|---|---|---|---|
| SUPERSPACE | 60 mm | 10 mm | 23 mm |
| Accused Product | 60 mm | 10 mm | 27 mm |

(Prior Declaration ¶¶ 52–54)

57. Additionally, OMZZ asserts that I did not verify "whether the magnets and dowels are positioned and secured within the connector recesses 'in the manner claimed.'" (Dkt. 39 at 7). I disagree. As shown directly above, I measured the recess depth and I measured the magnet length. And when I took the Accused Product apart, I observed that the first dowel holds the first magnet in the first recess of the first connector, and that the second dowel holds the second magnet in the second recess of the first connector, as shown in the photograph above (Prior Declaration ¶ 64). A dowel that holds the magnet in the recess is received within that recess.

| | |
|---|---|
| a first dowel, a first end of which is received within the first recess of the first connector and a second end of which is received within the first recess of a second connector of the plurality of connectors; and |  |

58. OMZZ states many assertions; however, they still do not identify any way that the Accused Products do not practice the claims of the ’811 Patent.

## IX. CONCLUSION

59. Based upon my experience and expertise, my review of the relevant documents in this case and the relevant legal principles, it is my opinion that (1) the Accused Products sold by OMZZ infringe at least claims 1, 2, 3, 4, 6, 7, 8, 12, 13, 16, 17, 18, 19, 20 and 21 of the ’811 Patent; (2) Everplay’s SUPERSPACE products embody the patented invention set forth in at least claim 1 of the ’811 Patent; (3) OMZZ’s new combination of Ornstein, Alkas and Kim ’713 does not render claim 1 obvious; (4) there are no written description issues with the '811 Patent; (5) OMZZ’s criticisms of my infringement analysis are incorrect.

60. I reserve the right to supplement my opinions in the future to respond to any arguments or evidence that may be raised by OMZZ’s experts and to take into account new information as it becomes available to me. I may prepare additional visual aids to use at trial to help illustrate my opinions, including animations, charts, or other demonstratives.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 21, 2026.

Tim P. Fletcher

# List of Materials Reviewed and Considered

**Documents:**

- U.S. Patent No. 12,551,811 (the "'811Patent")
- File History for the 12,551,811 Patent
- Defendant's Answer, Affirmative Defenses and Counterclaims to Complaint for Declaratory Judgement – "Counterclaim"
- Complaint for Declaratory Judgement
- U.S. Patent Publication No. 2016/0184727 ("Ornstein") - U.S. Patent No. 9,314,707
- Chinese Patent Publication No. CN 104274984 A ("Wei") – Machine Translation
- International Publication No. WO 2006/112679 A1 ("Kim")
- New Oxford American Dictionary- Third Edition (2010) - Page 521
- Declaration of Anthony Erwin
- Plaintiff's Response in Opposition to Motion for Preliminary Injunction
- U.S. Patent No. 10,217,388 ("Alkas,")
- Korean Utility Model Reg. No. 20-0442713 ("Kim '713")

**Web Sites**

- Everplay web site - https://www.everplay.space/
- SUPERSPACE web site - https://www.getsuperspace.com/
- SUPERSPACE Amazon web page - https://www.amazon.com/Superspace-Giant-Magnetic-Building-Panels/dp/B0G6SFC5V3
- OMZZ Amazon web page (for both 20 piece and 24 piece sets) - https://www.amazon.com/20-Piece-Magnetic-Fort-Building-Kids/dp/B0F1FC6SHD/ref=sr_1_5
- Images of magnet types - https://www.apexmagnets.com/news-how-tos/what-are-diametric-magnets-and-when-should-you-use-them/?srsltid=AfmBOoq2Jh2Rki5TQZZWyU4KmRfJI1bdIKFhnrCvyIgRVrxhDGB5RwLI

**Physical Products**

- Everplay SUPERSPACE panels
- OMZZ Accused Product panels