IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | Case No. 1:26-CV-09480 |
| v. | ) | |
| EVERPLAY LABS LIMITED, | ) | |
| Defendant. | ) | |

**EVERPLAY LABS LIMITED'S RESPONSE TO THE DECLARATION OF YUAN XIA REGARDING PRELIMINARY INJUNCTION BOND AMOUNT (DKT. 52)**

Defendant and Counterclaim-Plaintiff Everplay Labs Limited ("Everplay") responds to the Declaration of Yuan Xia Regarding Preliminary Injunction Bond Amount (Dkt. 52) ("Xia Decl."), which Plaintiffs and Counterclaim-Defendants OMZZ Trading Co., Limited and Ningbo UnionMax Technology Co., Ltd. (together, "OMZZ") filed on November 3, 2026. At the October 30, 2026 hearing, the Court permitted OMZZ to file a sworn declaration limited "to the issue of security," and gave Everplay two days to respond, again "limited only to the amount of security." Hr'g Tr. 110:14–25.

## I. INTRODUCTION

OMZZ's general manager swears that an injunction would cost OMZZ $80,000 to $100,000 in net profit over the November–December holiday season, and $160,000 to $200,000 in net profit if the injunction remains in place through this litigation and the pending reexamination. Xia Decl. ¶¶ 9–10. OMZZ's proposed findings adopt those figures and explain that they "are stated in net profit, not gross sales, and therefore measure precisely the profit Plaintiffs stand to lose from a wrongful injunction." Dkt. 53 ¶¶ 28(b), 43. The declaration OMZZ has finally filed still does not

tell the whole story. It presents the holiday advertising OMZZ says it has committed to as a cost of the injunction, Xia Decl. ¶¶ 10, 15, but its account of how OMZZ calculated its net profit says nothing about the advertising and promotional fees OMZZ has already paid. *Id.* ¶ 6. To the extent OMZZ's figures are imprecise, they overstate its loss.

OMZZ nonetheless asks for a bond of at least $500,000. The additional $300,000 is not lost profit. It is, in the words of OMZZ's proposed findings, the "retail asset value" of 1,585 units of inventory. Dkt. 53 ¶ 28(c). Such an amount is excessive because an injunction would not take inventory from OMZZ, and OMZZ counts it on top of the profit it already claims on the same units. Xia Decl. ¶¶ 11, 15. The Court should set security at $100,000, which secures OMZZ's sworn holiday-season profit. If the Court chooses to secure OMZZ's projected profit for the full life of the injunction, security should not exceed $200,000, the top of OMZZ's own sworn figure.

## II. ARGUMENT

### A. Security Is Measured by OMZZ's Lost Profit

Rule 65(c) requires security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The burden of establishing the bond amount rests with the party to be restrained, who is in the best position to determine the harm it will suffer from a wrongful restraint." *Monster Energy Co. v. Wensheng*, 136 F. Supp. 3d 897, 911 (N.D. Ill. 2015). "In a patent infringement case, the Court may base a bond on an estimate of the defendant's potential lost profits and lost market share from an injunction determined to have wrongly issued," and a sales figure that "fails to account for the cost of those sales" does not measure that loss. *Lashify, Inc. v. Qingdao Network Tech. Co.*, No. 25-cv-4183 (LJL), 2025 WL 2298837, at *4 (S.D.N.Y. Aug. 8, 2025) (citing cases).

OMZZ relies on the Seventh Circuit's instruction to "err on the high side." Dkt. 53 ¶ 41

(quoting *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000)). Erring on the high side of the right measure is different from substituting a different measure. OMZZ itself states its loss in net profit, "not gross sales," because net profit is what "measure[s] precisely the profit Plaintiffs stand to lose." Dkt. 53 ¶ 43. Its proposed findings also invoke "lost market share" and "the associated costs of relaunch," *id.* ¶ 42, but the declaration offers no evidence of either.

**B. At Most, OMZZ's Declaration Supports Security of $100,000 to $200,000**

From August 1 through October 31, 2026, OMZZ sold 1,254 units of the Accused Products for $395,752.36 in gross sales and about $65,520 in net profit. Xia Decl. ¶¶ 5–6. That is a net margin of about 16.6%, or about $52 per unit. OMZZ projects that it would sell about 1,500 units in November and December, for $80,000 to $100,000 in net profit, *id.* ¶ 9, or about $53 to $67 per unit. OMZZ says that if an injunction "remains in place through the Q4 holiday season and over the ensuing months pending resolution of this litigation and the pending *ex parte* reexamination," it "will suffer projected lost net profits exceeding $160,000 to $200,000." *Id.* ¶ 10.

These figures, if anything, overstate OMZZ's profit. The declaration lists the costs OMZZ deducted from gross sales to reach net profit: referral and FBA fulfillment fees, manufacturing, ocean freight, returns, storage and "routine operational overhead." Xia Decl. ¶ 6. Advertising and Amazon's deal and coupon fees are not on the list. OMZZ's own transaction reports show that from August through October the OMZZ-US storefront, which reportedly sold only the Accused Products, was charged $3,088.90 for advertising and $3,821.12 in deal and coupon fees. *Id.* Ex. A (native report). That is about $7.57 for each of the 913 units that storefront sold, or about 14% of the net profit OMZZ claims for it. *Id.* ¶ 5(a)–(b). The U-MOVING storefront, which sells other products, was charged $12,905.11 for advertising over the same period. *Id.* Ex. B (native report). If OMZZ did not deduct these costs, its net-profit figures overstate its profit by that amount.

The holiday projection has a similar gap. OMZZ says it has "registered the Accused Products for Amazon's Black Friday and Cyber Monday promotional events." Xia Decl. ¶ 10. Yet it projects $480,000 to $525,000 in revenue from about 1,500 units, *id.* ¶ 9, or $320 to $350 per unit, more than the $315.59 per unit it actually realized from August through October. *Id.* ¶ 5. A deal lowers the price.[1] OMZZ was selling the 20-piece set for $289.99 as recently as October 12 and the 24-piece set for $379.99 as recently as October 27, (Xia Decl. Ex. A (native report)), so a Black Friday deal on either product must be priced at or below those amounts, reducing the profit per unit further.

A bond of $100,000 secures OMZZ's entire projected holiday-season profit at the top of its own range. Xia Decl. ¶ 9. If the Court prefers to secure OMZZ's projected profit for the full duration of the injunction, the highest figure OMZZ's declarant attributes to that period is $200,000. *Id.* ¶ 10. Because OMZZ's figures leave out these costs, either amount errs generously on the high side of OMZZ's own sworn evidence and already includes a cushion. If circumstances change, the Court may "increase or decrease the amount as necessary to comport with its findings, or to account for changed circumstances." *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1142 (7th Cir. 1994).

---

[1] Amazon's rules for this year's Black Friday Week and Cyber Monday events require a Best Deal or Prime-exclusive discount to be at least 15% off the product's reference price, and a Lightning Deal at least 20% off, and require each to be priced at or below the product's lowest sales price over the past 60 days. *See* Amazon, Q4 2026 Peak Readiness Playbook, https://sellercentral.amazon.com/help/hub/reference/external/G4QH4XCRWUXRJBLY (last visited Nov. 4, 2026).

### C. The $500,000 Request Does Not Measure Lost Profit

#### i. It is the retail value of inventory the injunction does not take.

The declaration offers no arithmetic for its $500,000 figure. It combines "the retail value and sunk manufacturing/freight costs of the 1,585 stranded units," storage, "inventory destruction losses," and "pre-paid Black Friday promotional investments" into a single conclusion that the total "will exceed $500,000." Xia Decl. ¶ 15. OMZZ's proposed findings identify what drives the number: the 1,585 units represent "a retail asset value exceeding $500,000." Dkt. 53 ¶ 28(c). The arithmetic confirms it. At OMZZ's average selling price over the last three months ($395,752.36 for 1,254 units, or $315.59 per unit), 1,585 units are worth $500,213 at retail.

Retail value is not the proper measure of potential loss because an injunction would not destroy that inventory. The recommended order bars OMZZ from selling the Accused Products in the United States. It does not require OMZZ to destroy, recall or surrender any unit. Dkt. 51 at 40–42. If the injunction is later found wrongful, OMZZ still has the units and can sell them. A value the enjoined party can recoup when sales resume is not a cost of the injunction. *See Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1179 (C.D. Cal. 2017) (declining to include "buy back" costs in security because the enjoined party "may recoup such amounts if it resumes selling"). OMZZ says it might "authorize the forced liquidation or destruction" of its inventory. Xia Decl. ¶ 14. That would be OMZZ's choice, not a requirement of the injunction.

Nor does the injunction require OMZZ to keep its inventory in the United States. The proposed order reaches only making, using, selling, offering to sell and importing within the United States. Dkt. 51 at 40 (¶ 3(a)). Nothing in it prevents OMZZ from redirecting the inbound units, or shipping units already here, to markets the injunction does not reach. *See* Xia Decl. ¶ 14 (saying only that it is "economically prohibitive to ship oversized magnetic panels back to China").

**ii. Most of the inventory was shipped while the motion was pending.**

Of the 1,585 units, 1,280 were still inbound on November 2, 2026. Xia Decl. ¶ 11(a)–(b); Dkt. 52-4 at 2. Only about 305 units were in Amazon's fulfillment centers. Xia Decl. ¶ 11; Dkt. 53 ¶ 28(c). OMZZ does not say when it manufactured or shipped the inbound units, but they were still in transit more than six weeks after Everplay moved for a preliminary injunction on September 17, 2026 (Dkt. 12), and three days after the evidentiary hearing. OMZZ committed that inventory knowing the motion was pending. The risk it chose to take is not a cost the injunction imposes.

**iii. The storage claim counts units that are not in storage.**

The declaration's $6,717.28 monthly storage figure applies Amazon's fourth-quarter per-unit rates to all 1,585 units, including the 1,280 units that are not yet in Amazon's fulfillment centers. Xia Decl. ¶ 13. OMZZ's proposed findings concede that this amount accrues only "once the inbound units are received." Dkt. 53 ¶ 28(d). At OMZZ's own rates, the units actually on hand cost about $1,401 a month to store (79 units of the 20-piece set at $3.46 and 226 units of the 24-piece set at $4.99). Xia Decl. ¶¶ 11, 13. OMZZ's net-profit figures also already deduct "return and storage expenses," *id.* ¶ 6, so adding storage costs would overcompensate OMZZ.

**D. The Court Should Consider the Declaration Only for the Amount of Security**

The Court limited OMZZ's submission to the amount of security. Hr'g Tr. 110:14–19; *see also id.* at 111:25–112:4 (confirming that evidence that "speaks not just to the security but also the harms" would be "out of bounds"). Several paragraphs of the declaration go to OMZZ's claimed hardship rather than its sales, such as allegations that the products are "core flagship products," account for particular percentages of revenue or operating profits, etc. Xia Decl. ¶¶ 4–5, 7, 10, 14. OMZZ's proposed findings use those statements on the balance of hardships, arguing that an injunction would "destroy Plaintiffs' primary business line." Dkt. 53 ¶ 39. The Court should

consider the declaration only for the amount of security, as it directed, and not as the hardship evidence OMZZ chose not to present at the hearing. *See* Dkt. 51 ¶ 93.

### E. Proposed Substitute Findings

To conform Everplay's proposed findings to the Xia declaration, Everplay submits as Exhibit A proposed substitute findings ¶¶ 95–97, a proposed addition to finding ¶ 93, and a proposed substitute conclusion ¶ 138, with an alternative ¶ 138 should the Court secure the full duration of the injunction. Everplay is also submitting Exhibit A in Word format to Proposed_Order_BassEhler@ilnd.uscourts.gov.

## III. CONCLUSION

Everplay respectfully requests that the Court set security under Rule 65(c) at $100,000. If the Court elects to secure OMZZ's projected lost profit for the full duration of the injunction, security should not exceed $200,000, the highest lost-profit figure OMZZ's own declarant offers.

Dated: November 4, 2026

/s/Mark T. Deming
Mark T. Deming, Ill. Bar No. 6299631
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
(312) 819-1900
mdeming@polsinelli.com

M. Lawrence Oliverio
*(pro hac vice)*
POLSINELLI PC
One International Place, Suite 3900
Boston, MA 02110
(617) 406-0335
loliverio@polsinelli.com

Andrew Z. Weaver
*(pro hac vice)*
POLSINELLI PC

1000 Louisiana Street
Suite 6400
Houston, TX 77002
(713) 374-1600
aweaver@polsinelli.com

*Attorneys for Everplay Labs Limited.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and Local Rule 5.9.

/s/Mark Deming