**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | Case No. 1:26-cv-09480 |
| v. | ) | Judge Sunil R. Harjani |
| Everplay Labs Limited, | ) | Magistrate Judge Karyn L. Bass Ehler |
| Defendant. | ) | |

**PLAINTIFFS AND COUNTERCLAIM-DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [ECF NO. 56]**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b)(2), Plaintiffs and Counterclaim-Defendants OMZZ Trading Co., Limited and Ningbo UnionMax Technology Co., Ltd. (collectively, "OMZZ" or "Plaintiffs") respectfully submit the following Objections to the November 10, 2026 Report and Recommendation ("R&R", ECF No. 56) regarding Defendant and Counterclaim-Plaintiff Everplay Labs Limited's ("Everplay") Motion for Preliminary Injunction (ECF No. 12).

## I. INTRODUCTION AND STANDARD OF REVIEW

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). On a report and recommendation for a dispositive motion, including a preliminary injunction under 28 U.S.C. § 636(b)(1)(B), the district judge "must

determine *de novo* any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). *De novo* review owes no deference to the magistrate judge's legal conclusions or mixed findings of law and fact. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009).

To defeat a preliminary injunction, the accused infringer need not prove invalidity by clear and convincing evidence; it need only raise a "substantial question" of validity, i.e., show the asserted claim is "vulnerable", which shifts the burden to the patentee to prove the defense "lacks substantial merit." *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1398–99 (Fed. Cir. 2022).

Specifically, OMZZ objects to the R&R's erroneous determinations regarding written description under § 112(a), obviousness under § 103, and the equitable factors governing preliminary injunctive relief, and, to preserve the issues, to the scope of the recommended injunction and the amount of the recommended security.

## II. SPECIFIC OBJECTIONS

### A. Objection 1: The R&R Erred in Concluding That Claim 1 Is Supported by Adequate Written Description Under 35 U.S.C. § 112(a) (R&R at 8, 41–43)

To satisfy the written-description requirement of 35 U.S.C. § 112(a), the specification as originally filed must "reasonably convey to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). The R&R erred both in its procedural characterization of OMZZ's challenge and in its substantive reliance on expert testimony that contradicts the intrinsic record.

### 1. Claim 1 Encompasses Both Clip-Retained and Clip-Free Genuses, and OMZZ Consistently Challenged the Absence of Structural Disclosure for the Clip-Free Genus

Claim 1, as amended on August 28, 2025 to overcome twice-repeated obviousness rejections over *Ornstein*, recites a connector "defining a first recess at a first end … and a second recess at a second end," a magnet "housed in" each recess, and a dowel end "received within" the respective recess ('811 Patent, col. 20, ll. 12–47). Because Claim 1 omits any retention clip (first introduced in dependent Claim 5), it encompasses two distinct schemes: (a) a clip-retained embodiment, where a separate clip mediates the connection among dowel, magnet, and connector, and (b) a clip-free embodiment, where the dowel end and magnet are co-located directly within the connector's recess.

### 2. The Application as Filed Discloses Only Clip-Retained Structures, and the Lone Clip-Free Sentence and Original Claims Are Purely Functional

Every figure depicting a dowel-connector-magnet assembly, Figures 13, 14, 15, 16, and 18, relies on a separate retention clip (e.g., clips 1306a/b, 1506a/b). The lone sentence mentioning clip omission states only that "a clip may not be provided and dowel 1308a may hold magnet 1300a in connector 1310" ('811 Patent, col. 17, ll. 42–45): a purely functional statement disclosing no structure showing how a dowel end is "received within" the recess absent a clip.

A functional statement of retention does not establish possession of a specific structural co-location, and disclosing a single species (the clip-retained structure) does not supply written description for a broader genus encompassing undisclosed clip-free structures. *See Ariad*, 598 F.3d at 1349–50; *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1345 (Fed. Cir. 2005).

### 3. The R&R Erred as a Matter of Law by Crediting Expert Testimony That Fatally Contradicts the Plain Text of the Specification Regarding Figure 15

To bridge this gap, the R&R relied on the supplemental declaration of Everplay's expert, Mr. Fletcher, who pointed to Figure 15 to argue that the application describes "each dowel end within an end of the connector, with the magnet in the housing portion of that same end." (R&R at 8, 42–43, citing ECF No. 42-6 at 16, ¶ 49(b)).

Mr. Fletcher's testimony flatly contradicts the specification and cannot cure the § 112(a) deficiency. Figure 15 depicts a clip-retained embodiment, not a clip-free one: the specification states that "Dowel 1508a is held in a hole (e.g. a cavity or a recess) in clip 1506a" ('811 Patent, col. 18, ll. 39–40). Thus, in Figure 15 the connector (1510) houses the magnet, while the clip (1506a) defines the recess that receives the dowel (1508a); Figure 15 does not show a dowel end received directly within the connector's recess.

By stripping clip 1506a from his analysis while attributing the clip's dowel-receiving recess to the connector, Mr. Fletcher used a clip-retained species to manufacture support for a clip-free genus. Expert testimony cannot rewrite or contradict unambiguous intrinsic evidence, so the R&R erred as a matter of law in deferring to that characterization. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc) (discount expert testimony "clearly at odds with … the written description" (quoting *Key Pharms., Inc. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998))).

## B. Objection 2: The R&R Erred in Concluding That OMZZ Failed to Raise a Substantial Question of Obviousness Under 35 U.S.C. § 103 (R&R at 23–41)

The R&R committed multiple legal errors in holding that OMZZ failed to raise a substantial question of obviousness over *Ornstein* (U.S. Pub. No. 2016/0184727) in view of *Alkas* (U.S. Patent No. 10,217,388) and *Kim '713* (KR Utility Model No. 20-0442713).

### 1. The Combined Teachings of *Ornstein*, *Alkas*, and *Kim '713* Render Claim 1 Obvious, and Mr. Fletcher Failed to Rebut That Combination as a Whole

Rather than evaluating the combined teachings, the R&R adopted Mr. Fletcher's supplemental declaration, which attacks *Ornstein*, *Alkas*, and *Kim '713* individually and treats each reference's differences from Claim 1 as proof of nonobviousness (R&R at 31–37; ECF No. 42-6 ¶¶ 33–47). But "[n]on-obviousness cannot be established by attacking references individually where the rejection is based upon the teachings of a combination of references." *In re Merck & Co.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986).

A POSITA would have been motivated to combine *Ornstein*, *Alkas*, and *Kim '713* to achieve reliable, orientation-independent magnetic coupling. *Ornstein* provides the modular play-panel application; *Alkas* teaches self-aligning coupling using freely rotating diametric magnets in corner-connected frames; and *Kim '713* supplies a known recess-and-pin mechanism to house a rotating magnet securely. A POSITA seeking panels that assemble from any direction would look to *Alkas*'s self-aligning architecture and to *Kim '713*'s compact retention arrangement to optimize the internal magnet housing.

**Predictable and Compatible Combination:** These substitutions are routine design choices among a finite number of known solutions. Replacing *Alkas*'s protruding post-and-fastener with *Kim '713*'s recess-and-pin retention yields a more compact connector, and the diametric magnets continue to rotate and self-align in the same manner. The references' distinct commercial

contexts (a play fort, a display system, and a wooden block) do not make their complementary mechanical teachings mutually exclusive.

**2. The R&R Applied an Impermissibly Narrow Legal Standard to the Scope of Analogous Art Regarding *Alkas* (R&R at 33–34)**

In discounting *Alkas*, the R&R adopted Mr. Fletcher's opinion that a POSITA designing children's play panels would not consult *Alkas* because it is titled "DISPLAY SYSTEM" for trade-show displays assembled by professionals, not children's toys (R&R at 34, citing ECF No. 42-6 ¶ 38).

That reasoning conflates the two independent tests for analogous art. Even if a reference lies outside the inventor's field of endeavor, it is analogous if it "is reasonably pertinent to the particular problem with which the inventor is involved." *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004); *In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011); *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1237–38 (Fed. Cir. 2010) (*KSR* "directs us to construe the scope of analogous art broadly"). The relevant problem is not trade-show booths versus toys; it is how to construct lightweight, modular framed panels that magnetically couple edge-to-edge regardless of orientation. Mr. Fletcher admitted on cross-examination that *Alkas*'s cylindrical, diametrically polarized magnet rotates freely inside the frame so its poles self-align from any orientation (Hr'g Tr. at 89:25–91:9; R&R at 33–34), and he identified nothing about the display context that would prevent that coupling from operating in a play panel. Dismissing *Alkas* based on product labels rather than the shared mechanical problem is legal error.

**3. The R&R Misapplied the Law on "Teaching Away" as to *Kim '713* and Treated Routine Mechanical Adaptations as Nonobvious (R&R at 32–37)**

First, the R&R credited Mr. Fletcher's assertion that because *Kim '713*'s fixing pin (11) passes through a central hole in the magnet to hold it inside the block recess rather than spanning two blocks, *Kim '713* "teaches away from a magnet in a recess" and "would have made the magnets with a pin inserted through their middle," which purportedly "would not lead a POSITA to arrive at the claimed subject matter." (R&R at 32–33, 35, citing ECF No. 42-6 ¶¶ 41–45). That is legally and factually wrong on both counts:

- **No Teaching Away:** A reference teaches away only when it "criticize[s], discredit[s], or otherwise discourage[s]" the claimed solution. *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994). Far from discouraging a magnet in a recess, *Kim '713* affirmatively places its rotating magnet (14) inside insertion hole/recess (2) and touts the cost and assembly advantages of doing so (*Kim '713* ¶¶ [0028]–[0037], [0046]).
- **Claim 1 Does Not Exclude a Magnet With a Central Hole:** Nothing in Claim 1 excludes a rotatable magnet with a central hole or a pin/dowel engaging it; Claim 1 requires only a magnet housed in a connector recess, a dowel end received in that recess, and a rotatable magnet.

Second, the three adaptations in Mr. Fletcher's chart (ECF No. 42-6 ¶ 46; R&R at 37)—(1) reversing *Alkas*'s telescoping joint so the corner connector defines the recess receiving the frame rod; (2) substituting *Kim '713*'s recess-based retention for *Alkas*'s protruding post, fastener, and washer; and (3) having the retaining pin/dowel abut the recess floor and span as a single shared dowel between adjacent connectors—are textbook routine design choices among "a finite number of identified, predictable solutions." *KSR*, 550 U.S. at 416, 421 ("A person of ordinary skill is also a person of ordinary creativity, not an automaton."). Mr. Fletcher identified no technical

incompatibility preventing these substitutions; after the combination, the magnets rotate and self-align in the same manner.

Third, a retained expert is not mandatory at the preliminary-injunction stage (*see* R&R at 27, 30; *BlephEx*, 24 F.4th at 1403–04; *Wyers*, 616 F.3d at 1242), and OMZZ's showing rests on the references themselves. Nor does prosecution deference insulate Claim 1: although *Alkas* was among the references cited, the Examiner never applied *Alkas* in any rejection or evaluated the *Ornstein/Alkas/Kim '713* combination, and the USPTO's November 5, 2026 reexamination denial, which applied the different substantial-new-question standard, did not evaluate that combination either (R&R at 23–24 n.6, 34–35).

**4. The R&R Erred in Applying a Presumption of Nexus to Secondary Considerations Driven by Prior-Art Features and Massive Marketing (R&R at 37–41)**

Finally, the R&R erred as a matter of law by granting Everplay a "presumption of nexus" for secondary considerations (commercial success and design awards) merely because SUPERSPACE practices Claim 1 (R&R at 38–40). Under *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373–78 (Fed. Cir. 2019), the presumption is improper where the product includes significant unclaimed factors or the praised features were already known in the prior art. *See also WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1330 (Fed. Cir. 2016).

As the R&R's own quotations confirm, evaluators praised SUPERSPACE because "[t]he panels are lightweight and the magnets are really strong" and "there is no right or wrong way to assemble them" (R&R at 38–39). Yet lightweight modular play panels were already disclosed in *Ornstein*, and any-orientation assembly via self-aligning diametric magnets in *Alkas* and *Kim*. No purchasing material identifies the hidden internal connector-recess-and-dowel geometry added in

August 2025 to secure allowance. Attributing SUPERSPACE's commercial success, driven by over $5 million in marketing, to that narrow internal geometry violates *Fox Factory* and *WBIP*.

### C. Objection 3: The R&R Erred in Finding Irreparable Harm, Inadequate Remedies at Law, and a Favorable Balance of Equities (R&R at 43–51)

Even where a patentee shows a likelihood of success, there is no presumption of irreparable harm in patent cases. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393–94 (2006). The movant must make a "clear showing" of immediate, non-speculative injury and a causal nexus tying that injury to the patented feature. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The R&R committed four distinct errors in evaluating the equitable factors.

#### 1. The R&R Misapplied the Causal-Nexus Requirement by Equating Unclaimed External Dimensions and Prior-Art Concepts With the Narrow Amended Feature of Claim 1

Everplay had to prove that the specific patented feature of Claim 1, not unclaimed attributes or prior-art concepts, drives consumer demand. *Apple Inc. v. Samsung Elecs. Co. (Apple I)*, 678 F.3d 1314, 1324 (Fed. Cir. 2012); *Apple Inc. v. Samsung Elecs. Co. (Apple II)*, 695 F.3d 1370, 1375 (Fed. Cir. 2012).

First, the R&R erroneously invoked *Genband US LLC v. Metaswitch Networks Corp.*, 861 F.3d 1378, 1384 n.2 (Fed. Cir. 2017), to suggest causal nexus has "little work to do" because Claim 1 covers "the panel system itself" (R&R at 44). But modular magnetic panels (*Ornstein*) and self-aligning rotating diametric magnets (*Alkas*) were already in the prior art; Claim 1 was allowed only after the August 2025 amendment narrowed it to an internal corner-connector recess housing both the magnet and the dowel end. Consumers cannot see inside the opaque connectors and do not buy play sets based on whether a dowel end sits inside a connector recess rather than a clip or

hollow tube. As Mr. Erwin acknowledged, awards, reviews, brand, and price differences ($449 versus $379.99) all drive demand (R&R at 11, 13, 44–46).

Second, the R&R relied on testimony that SUPERSPACE owners can buy OMZZ's panels as cheaper "add-on packs" because the panels are interchangeable, sharing the same 0.5-meter dimensions, 60-millimeter connector length, and magnet placement (R&R at 13–14, 16, 45–46). Yet Claim 1 claims no panel dimensions, connector lengths, or magnet spacing; and interchangeability turns on those external dimensions and magnet positions, not on how the dowel is retained inside the connector. Competitive harm flowing from unclaimed features cannot establish causal nexus. *See Apple II*, 695 F.3d at 1375.

### 2. Everplay Offered Zero Documentary Evidence to Substantiate Its Claims of "Disastrous" Loan Defaults, Layoffs, or Price Erosion

A preliminary injunction cannot rest on speculative harm or uncorroborated assertions. *Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022). A centerpiece of the R&R's irreparable-harm finding is Mr. Erwin's testimony that, because Everplay sells a single product line with fourth-quarter concentration and finances its July factory orders through loans (15% on ordering, 85% forty-five days post-production), any suppression of holiday sales would be "disastrous," forcing Everplay to "cut marketing, let staff go and pause the other children's products it has in development." (R&R at 12–13, 46–47).

Crucially, Everplay submitted no documentary or financial evidence to substantiate that narrative. Beyond historical fourth-quarter sales percentages, it produced no loan agreements, no bank statements, no balance sheets, no cash-flow projections, and no records showing any actual decline in U.S. sales volume, revenue, or margins since OMZZ launched the Accused Products in February 2026. Leaping from "fourth-quarter sales are important for a toy company" to company-

wide insolvency, layoffs, and halted development, without a shred of corroborating financial documentation from a company that has spent over $5 million on advertising, falls far short of the "clear showing" required by *Winter* and *Koninklijke Philips*.

The R&R's own findings refute price erosion: Everplay has maintained its $449 price without any reduction, while OMZZ's prices rose from $379.99 to approximately $400 (R&R at 13). Two Amazon reviews calling Umoving "on sale" or a "better value" (R&R at 13, 45) reflect ordinary price competition, not irreparable market destruction. Nor does Everplay's refusal to license the '811 Patent (R&R at 13, 47) fill the evidentiary void; standing alone, a desire for exclusivity does not establish irreparable harm. *eBay*, 547 U.S. at 393.

**3. OMZZ's Affirmative Initiation of This Lawsuit and Established Multi-Product U.S. Business Refute the R&R's Speculation That Money Damages Are Uncollectible**

The R&R also erred in concluding that money damages are inadequate simply because OMZZ is domiciled in Hong Kong and Ningbo, China, and Amazon remits proceeds on a 14-day cycle (R&R at 14, 48–49). It overlooked concrete proof that OMZZ has neither the incentive nor the intention to evade a future judgment:

- **Affirmative Invocation of Federal Jurisdiction and Investment in Active Litigation:** This is not a "Schedule A" default case against an anonymous overseas seller evading U.S. courts. After Everplay initiated an APEX takedown proceeding in July 2026, OMZZ did not abandon its storefronts or disappear; it retained U.S. counsel, paid federal filing fees, and filed this declaratory judgment action in August 2026, voluntarily submitting to this Court's jurisdiction (R&R at 1–2). It has since funded merits litigation, including a USPTO reexamination request, an evidentiary hearing, and sworn corporate

financial and inventory records (ECF No. 52). A company intending to flee a U.S. judgment does not litigate this way.

- **Established Multi-Product U.S. Storefronts and Physical Inventory Anchor:** As the R&R acknowledges (R&R at 7), OMZZ's storefronts ("OMZZ-US" and "U-MOVING") sell numerous non-accused children's furniture and play lines, toddler beds, play mats, modular sofa sets, alongside 1,585 units of bulky inventory allocated to U.S. fulfillment centers (ECF No. 52 & Exs. A–C). OMZZ cannot walk away from a federal judgment without sacrificing that entire U.S. business, its seller accounts, and its U.S. inventory.

Every Amazon transaction is recorded to the penny, so a reasonable royalty or lost profits under 35 U.S.C. § 284 are quantifiable. Unlike *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011), where the record proved the infringer's severe financial distress, there is no evidence here of insolvency or asset dissipation. The R&R instead rested on OMZZ's failure to prove it could pay, although the burden of a "clear showing" rests on the movant.

**4. The R&R Erred in Refusing to Weigh the Devastating Holiday-Season Hardship to OMZZ Under the Balance of Equities (R&R at 49 n.9)**

Finally, while crediting Everplay's uncorroborated speculation about fourth-quarter harm, the R&R struck and refused to consider the sworn Declaration of Yuan Xia (ECF No. 52) in weighing the balance of equities, ignoring proof that an injunction on the eve of Black Friday and Cyber Monday will strand 1,585 units of oversized inventory (305 already in U.S. Amazon FBA warehouses), inflict $6,717.28 per month in peak Q4 storage fees, and destroy nearly $300,000 in sunk manufacturing and freight costs (R&R at 49 & n.9, 55–56).

Under 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(3), this Court exercises plenary *de novo* review and may receive and consider further evidence. Disregarding sworn documentary evidence of OMZZ's irreversible holiday losses, while accepting Everplay's undocumented assertions at face value and overlooking the substantial § 112(a) and § 103 challenges, skewed the Seventh Circuit's sliding-scale inquiry. Properly weighed on the full record, the balance of equities tips sharply against preliminary injunctive relief.

**D. Objection 4: The R&R Erred in Recommending an Injunction of Unreasonable Scope (R&R at 51–53, 57–60)**

To preserve these issues, which OMZZ raised in its Proposed Findings (ECF No. 53 ¶ 44), OMZZ specifically objects to three terms of the recommended injunction. First, the prohibition extending to any product "not more than colorably different" from an Accused Product (Recommended Order ¶ 2(a)(ii)) should not operate as a self-executing ban on products never adjudicated. Whether a later product is not more than colorably different and infringes Claim 1 requires the two-step *TiVo* inquiry in a contempt proceeding, on notice and an evidentiary showing by Everplay. *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869 (Fed. Cir. 2011) (en banc). The decree should state that expressly, so OMZZ is not exposed to contempt for good-faith design changes that were never before the Court.

Second, the 24-hour deactivation deadline (Recommended Order ¶ 3) is unreasonable: OMZZ's personnel are in Hong Kong and Ningbo, Amazon's listing and FBA systems are not within OMZZ's sole control, and the R&R identifies no exigency that 24 hours, rather than the three business days allowed for the compliance declaration, would serve. OMZZ objects and requests no fewer than five business days. Third, OMZZ objects to the notice and compliance provisions (Recommended Order ¶¶ 4–5) to the extent they require, within two and three business

days respectively, notice to every person in "active concert" and a sworn declaration identifying each such person and stating all U.S. inventory in OMZZ's "possession, custody, or control," including inventory held by Amazon, terms that are vague, exceed Rule 65(d), and build a contempt trap into the decree. These provisions should be limited to OMZZ's officers, agents, and fulfillment partners holding Accused Products, on the same five-business-day schedule.

### E. Objection 5: The R&R Erred in Recommending Security of Only $200,000 (R&R at 53–57)

OMZZ likewise preserves its objection, raised through the Xia Declaration (ECF No. 52) and its Proposed Findings (ECF No. 53 ¶ 42), to the recommended $200,000 bond. Rule 65(c) security must cover "the costs and damages sustained by any party found to have been wrongfully enjoined," and courts should "err on the high side" because recovery for a wrongful injunction is capped at the bond. *Mead Johnson & Co. v. Abbott Labs*, 201 F.3d 883, 888 (7th Cir. 2000). Wrongful-injunction damages are not limited to lost profits; they include lost market share and relaunch costs. *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006).

The R&R accepted OMZZ's sworn figures, $80,000–$100,000 in net profit for the holiday season and $160,000–$200,000 over the injunction's full duration (R&R at 56–57), yet set security at the top of the profit range while excluding every other sworn loss: $6,717.28 per month in FBA storage fees, and the manufacturing and freight costs sunk into 1,585 units (305 already in U.S. FBA warehouses, the balance inbound for the holiday season) that an injunction would strand (ECF No. 52 ¶¶ 11–15). A bond that ignores those categories does not "err on the high side." OMZZ objects and requests security of $500,000 as proposed; in the alternative, if any injunction issues, security should be set no lower than an amount covering full-duration lost profits plus

storage and stranded-inventory losses, and OMZZ preserves its right to seek modification if circumstances change.

## III. CONCLUSION

For the foregoing reasons, Plaintiffs and Counterclaim-Defendants respectfully request that the Court sustain these Objections under *de novo* review, decline to adopt the Report and Recommendation (ECF No. 56), and deny Everplay's Motion for Preliminary Injunction (ECF No. 12). In the alternative, if the Court adopts the R&R in any part, OMZZ requests that the Court modify the recommended injunction and security as set forth in Objections 4 and 5.

Dated: November 16, 2026

Respectfully submitted,

/s/Zhiwei Hua
Concord & Sage PC
1360 Valley Vista Dr, Suite 140,
Diamond Bar CA 91765
Bar No. 6099105
huazhiwei@concordsage.com
Phone: (216)3923236

*Counsel for Plaintiffs*