IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| OMZZ TRADING CO., LIMITED and NINGBO UNIONMAX TECHNOLOGY CO., LTD., | ) | |
| Plaintiffs, | ) | Case No. 1:26-CV-09480 |
| v. | ) | |
| EVERPLAY LABS LIMITED, | ) | |
| Defendant. | ) | |

**EVERPLAY'S RESPONSE TO PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Everplay Labs Limited ("Everplay") responds to the objections (Dkt. 58, "Obj.") of Plaintiffs and Counterclaim-Defendants OMZZ Trading Co., Limited and Ningbo UnionMax Technology Co., Ltd. (together, "OMZZ") to Magistrate Judge Bass Ehler's Report and Recommendation (Dkt. 56, "R&R"), which recommends that Everplay's Motion for Preliminary Injunction (Dkt. 12) be granted with security of $200,000.

## I. INTRODUCTION

The R&R followed a full evidentiary hearing. OMZZ requested and obtained a longer briefing schedule based on the assertion that it needed time to retain an expert and gather "evidence of their sales, their inventory, and the hardship an injunction would impose" from witnesses in China. R&R at 3–4. Notwithstanding prior representations to the Court, OMZZ filed no expert declaration, no lay declaration, called no witness, and sent no OMZZ personnel to the hearing. *Id.* at 4. OMZZ relied entirely at the hearing on attorney "argument" without offering any actual evidence documentary or testimonial. In contrast, Everplay's co-founder, Anthony Erwin, and its industrial-design expert, Tim Fletcher, testified live and were cross-examined. *Id.* The Magistrate

Judge found both credible. *Id.* at 10 n.4, 12 n.5, 26.

OMZZ's objections merely repeat attorney argument that was considered and rejected in the R&R. Additionally, OMZZ raises arguments that were not previously asserted and erroneously asks this Court to consider a declaration whose evidentiary value is limited to the amount of security, as expressly stated by the Magistrate Judge and agreed to by OMZZ's counsel. *Id.* at 49 n.9. OMZZ does not object to the findings that Everplay is likely to prove infringement or that the public interest favors an injunction. On de novo review of the rest of the findings, the result is the same. Because the R&R found the harm to Everplay is acute in the coming holiday weeks, Everplay asks the Court to promptly overrule OMZZ's objections (Dkt. 58), adopt the Report and Recommendation (Dkt. 56), grant Everplay's Motion for Preliminary Injunction (Dkt. 12), and enter the recommended preliminary injunction as further set forth below (Dkt. 56 at 57–60).[1]

## II. STANDARD OF REVIEW

The Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Unobjected findings are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The statute "calls for a de novo determination, not a de novo hearing," and the Court may rely on the Magistrate Judge's findings as it sees fit. *United States v. Raddatz*, 447 U.S. 667, 674, 676 (1980); *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir. 1995). "[I]f following a review of the record the district court is satisfied with the magistrate judge's findings and recommendations it may in its discretion treat those findings and recommendations as its own." *Goffman*, 59 F.3d at 671. A district court judge may

[1] OMZZ stated that it has "registered the Accused Products for Amazon's Black Friday and Cyber Monday promotional events." Dkt. 52 ¶ 10. Amazon's Black Friday event begins November 19. *See* https://www.aboutamazon.com/news/retail/when-is-amazon-black-friday-faq.

not reject a magistrate judge's material credibility findings based on a witness's live testimony, without first holding a de novo evidentiary hearing. *McIntosh v. Wexford Health Sources, Inc.*, 987 F.3d 662, 665–66 (7th Cir. 2021).

"[A]rguments not made before a magistrate judge are normally waived." *United States v. Melgar*, 227 F.3d 1038, 1040 (7th Cir. 2000). A party that waits "until its objection to the R&R" on a patent preliminary injunction "does not get a second bite at the apple." *Pathway IP LLC v. Individuals, Corps., Ltd. Liab. Cos., P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 24-cv-05218, 2025 WL 655237, at *6–7 (N.D. Ill. Jan. 30, 2025).

The presumed validity of a patent carries the patentee's burden until the accused infringer comes forward with evidence of invalidity. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376–77 (Fed. Cir. 2009). "[T]he initial burden is on [the accused infringer] to produce some evidence to raise a substantial question of validity." *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1399 (Fed. Cir. 2022). While it "need not have presented expert testimony," it must "provide something on which the district court could base a finding that there is a substantial question of validity." *Id.* at 1403.

## III. ARGUMENT

### A. Objection 1: The Application Describes Claim 1

Written description is a question of fact: whether the application "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). The only evidence of how a skilled artisan reads this application is Mr. Fletcher's unrebutted testimony that it describes claim 1, including "a dowel end received within the connector recess that houses the magnet." Dkt. 42-6 ¶ 49; Hr'g Tr. 79:25–81:9. OMZZ's counsel confirmed that OMZZ's only

evidence was "the plain language or face of the patents." Hr'g Tr. 103:3–12.

The application describes the claimed arrangement. Its summary states that "the first magnet is held in place in the first end of the first connector by the first dowel," that the housing portion "is formed in between the first end of the first connector and the first dowel," and that "each housing portion . . . comprises a recess." Dkt. 42-4 at 3. Even OMZZ admits that the application discloses an embodiment in which "a clip may not be provided and dowel 1308a may hold magnet 1300a in connector 1310." *Id.* at 29; Obj. at 3. Original claim 2 recited that "the first dowel is configured to hold the first magnet in the first end of the connector," and original claim 5 separately added clips. Dkt. 42-4 at 34–35; R&R at 8. The clip-free and clip arrangements were claimed side by side from the day the application was filed. These passages are not "purely functional," Obj. at 3. They say where the parts are.

Figure 15 confirms the point. OMZZ's argument that Mr. Fletcher misread Figure 15 appears nowhere in its opposition or proposed findings, and OMZZ did not cross-examine him on written description. The argument is, therefore, forfeited. *Melgar*, 227 F.3d at 1040. Even if it had not been waived, the argument is also wrong. Clip 1506a holds magnet 1500a in "[a] first housing portion inside connector 1510," and dowel 1508a is held in a hole in that clip. '811 patent 18:35–42. Clips of this kind, "similar to clips . . . 1506a, 1506b," are "clipped into" the connector, with a hole "for housing a dowel." *Id.* 19:33–39. The clip is inside the end of the connector, so the dowel end it holds is too, as the cross-section "taken through a connector 1510" shows. Dkt. 42-4 at 56 (Fig. 15). Mr. Fletcher did not "strip[]" the clip, Obj. at 4, he described what the figure shows. Dkt. 42-6 ¶ 49(b).

The issued claims are consistent. Dependent claim 5 adds to claim 1 "a first clip configured to hold the first magnet in the first recess of the first connector, wherein the first clip defines a hole

to hold the first dowel." '811 patent 20:59–63. Dependent claim 2 recites the clip-free arrangement: "the first dowel holds the first magnet in the first recess of the first connector." *Id.* 20:48–51. Both depend from claim 1, so a dowel held in a clip inside the recess, and a dowel holding the magnet in the recess without one, each has its end "received within" the recess. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc). There is no undisclosed "clip-free genus," and the *Ariad* and *LizardTech* genus cases, Obj. at 3, do not apply. Nor does *Phillips*'s caution about expert testimony at odds with the specification. Obj. at 4. Mr. Fletcher's testimony matches the specification. As the R&R noted, OMZZ's own opposition conceded that "the specification mentions an alternative arrangement operating without clips." R&R at 42 (quoting Dkt. 39 at 6).

**B. Objection 2: OMZZ Has Not Raised a Substantial Question of Obviousness**

OMZZ's objection should be overruled because it recites nothing more than attorney argument. The R&R rejected OMZZ's challenge because OMZZ "provided no evidence about why a person of ordinary skill would have been motivated to make the identified combinations" and relied on "conclusory attorney arguments." R&R at 26, 35–36. The objections do the same. Their new motivation theory, that a designer would swap the pin from Kim '713 into Alkas for a "more compact connector," Obj. at 5, was never made below and cites nothing to establish a motivation to combine. "[I]t is not enough for [the accused infringer] to merely demonstrate that elements of the claimed invention were independently known in the prior art." *Metalcraft of Mayville, Inc. v. Toro Co.*, 848 F.3d 1358, 1367 (Fed. Cir. 2017). Without an explanation of how or why the references would be combined to arrive at the claimed invention, a court is "left with only hindsight bias." *Id.*

The theory is also wrong. OMZZ says a designer would combine the references for "orientation-independent magnetic coupling," Obj. at 5, which on OMZZ's own account Alkas

already provides. *Id.* at 6. A goal already met supplies no reason for further changes, and the changes OMZZ needs are the claimed invention: invert Alkas's joint so that the connector receives the frame member; move Alkas's magnet out of the frame tube into a connector recess that also receives the frame member; and turn Kim '713's 4 mm fixing pin, which passes through a ring magnet and joins nothing, into a dowel spanning two connectors. Hr'g Tr. 78:13–79:4; R&R at 37. That structure is exactly what the Examiner found missing from the prior art. Dkt. 13-22 at 8; R&R at 9. Calling those changes "routine design choices," Obj. at 5, is not evidence that anyone would make them. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007) (it is important to "identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does").

Contrary to OMZZ's assertion, Mr. Fletcher did not attack the references "individually." Obj. at 5 (citing *In re Merck & Co.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986)). His chart takes OMZZ's combination and shows what must change in each reference to reach claim 1, Dkt. 42-6 ¶¶ 46–47, and the R&R credited his testimony that no reference, "alone or in combination," has the claimed connector, R&R at 37; Hr'g Tr. 78:13–22. Explaining why each reference lacks what the combination needs is how a combination is evaluated, not a failure to evaluate it.

The R&R also considered OMZZ's "reasonably pertinent" argument, found no explanation or evidence behind it, and credited Mr. Fletcher's testimony that a designer of children's play panels would not look to trade-show display frames. R&R at 33–34. It found only that this "calls into question" whether Alkas is analogous art. *Id.* at 34. The result did not depend on it—even treating Alkas as analogous, OMZZ supplied no reason to combine and no evidence that the combination yields claim 1. *Id.* at 35–37. OMZZ's account of Mr. Fletcher's cross-examination, Obj. at 6, also stops one answer short. Asked whether Alkas's rotating magnet is "the same basic

mechanism the ’811 patent uses,” he answered: “No, not at all . . . . You are not putting it within the connector, you’re putting it in the pipe. It is not the same function.” Hr’g Tr. 91:10–16. Nor did the R&R apply the “teaching away” doctrine to Kim ’713. Obj. at 6–7. It found that Kim ’713’s pin is a holder through a ring magnet that joins nothing and has no second end in another connector. R&R at 32–33, 35. What a reference teaches bears on “whether a skilled artisan would be motivated to combine that reference with another reference,” whether or not it teaches away. *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1069 (Fed. Cir. 2018).

OMZZ concedes that Alkas was before the Examiner, who allowed claim 1 over it. Obj. at 8; R&R at 9–10. A challenger relying on such art bears “the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job.” *Shire LLC v. Amneal Pharms., LLC*, 802 F.3d 1301, 1307 (Fed. Cir. 2015). The R&R did not rest on that deference alone. R&R at 34–35. The USPTO has also denied co-plaintiff UnionMax’s request for reexamination, finding that nine references, including Ornstein, Kim WO and Wei, “taken alone, in combination, or in new light,” raise no substantial new question of patentability as to claim 1. *Id.* at 23–24 n.6. The R&R treated that denial as relevant, not controlling. *Id.* OMZZ cites the request as evidence of its good faith, Obj. at 11–12, but does not mention that it was denied.

Finally, OMZZ challenges only the presumption of nexus. Obj. at 8–9. The R&R found, “even without the presumption,” that the praise and demand for SUPERSPACE are the “direct result of the unique characteristics of the claimed invention,” and it relied separately on copying. R&R at 40. OMZZ does not object to those findings, and the presumption was proper anyway. The praise OMZZ quotes describes what the claimed structure does—that is, dowels received in the connector recesses form a rigid frame, so the infill can be light, and magnets housed in those

recesses rotate, so panels join from any direction. *Id.* at 38–39. OMZZ's premise that nexus fails because individual features were known is the argument *WBIP* rejected. Nexus "is not limited to only when objective evidence is tied to the supposedly 'new' feature(s)." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1330 (Fed. Cir. 2016). And the presumption cannot be rebutted "with argument alone." *Id.* at 1329. OMZZ presented no evidence, only argument. R&R at 39. Its point that $5 million in marketing, not the claimed structure, drove sales, Obj. at 9, was argued at the hearing, Hr'g Tr. 127:17–22, and rejected. Everplay's marketing sells the mechanism, because "[i]t's so easy for kids to build things because of the mechanism that we've built." R&R at 45 (quoting Hr'g Tr. 46:1–6). Asked on cross-examination whether awards and reviews drive sales, Mr. Erwin answered, "I don't think the average consumer cares that much about a Core77 award," and that customers buy it "because the way it works, the way it functions." Hr'g Tr. 45:9–20. A copier, too, copies what makes the product work. *See* R&R at 40.

### C. Objection 3: The Equitable Factors Favor an Injunction

OMZZ challenges the presence of causal nexus, but Everplay needs only "some connection between the patented feature and demand," not proof that the feature is the only reason customers buy. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). The R&R found that connection on Mr. Erwin's credited testimony that customers buy SUPERSPACE for "the way it works, the way it functions"—i.e., light, rigid panels that join from any direction because of rotating magnets housed in corner connectors whose end openings also receive the dowels. R&R at 44–45. That the connector is opaque does not matter. Customers buy what the claimed structure does. Interchangeability is no different. Accused panels join to SUPERSPACE panels not because they are the same size but because they use "the same connector and magnet architecture, with the magnets in the same positions." *Id.* at 45. And a cheaper copy competing for the same customers

is how the harm occurs, not an alternative cause of it. *Id.* at 46.

OMZZ's complaint of "zero documentary evidence" of harm, Obj. at 10, was not made below and is wrong. Mr. Erwin's fourth-quarter sales figures came from records prepared by Everplay's chief financial officer from its Shopify and Xero systems, and they are in evidence. R&R at 12 (citing Dkt. 13-6; Hr'g Tr. 38:5–39:4). He testified from personal knowledge to how Everplay finances its holiday inventory and what suppressed holiday sales would do to a company of seven people. Hr'g Tr. 39:15–41:16. OMZZ asked him nothing about the loans, payment terms, staffing or consequences. *See id.* at 42:1–51:25. It elicited that Everplay tracks its financing, *id.* at 43:22–24, but never asked for the records. The Magistrate Judge found him "a credible and knowledgeable witness who supported his testimony with specific references and explanations." R&R at 10 n.4. While case law rejects speculative harm (*Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022)), there is no requirement that credited, unrebutted testimony must be corroborated with loan agreements. Further, the Court could not set aside the Magistrate Judge's credibility finding on this cold record without a new hearing. *McIntosh*, 987 F.3d at 665–66. Nor did the R&R rest on a past price cut. It found unrecoverable holiday sales, lost add-on sales to customers who cannot be identified, the loss of exclusivity Everplay has never licensed, and a threat to Everplay's price and standing as the originator. R&R at 46–47 (citing *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–45 (Fed. Cir. 2013)). That OMZZ's price stays below SUPERSPACE's while rising toward $400, Obj. at 11, is consistent with those findings.

The R&R did not shift the burden regarding adequacy of damages. It found, on Everplay's evidence, that OMZZ is based in Hong Kong and Ningbo, that its seller profiles list addresses only there, and that Amazon remits seller proceeds every fourteen days. R&R at 14, 48. OMZZ offered

nothing in response, and its counsel acknowledged that reaching OMZZ's funds held by Amazon would take post-judgment discovery. *Id.* at 48–49; Hr'g Tr. 103:13–105:2. A court "should assess whether a damage remedy is a meaningful one in light of the financial condition of the infringer." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155 (Fed. Cir. 2011). There, as here, the burden was the patentee's, but the infringer's "failure to submit rebuttal evidence regarding its ability to satisfy an award of money damages" was "troublesome." *Id.* It also cited with approval a decision finding damages inadequate where "all three defendants are foreign corporations and . . . there is little assurance that it could collect monetary damages." *Id.* at 1156.

OMZZ's counsel has made the same point to this District for a patentee opposed by China-based online-marketplace sellers who, like OMZZ, appeared and contested the motion. Such sellers could "regularly empty any domestic financial accounts, such as assets held by the third-party marketplaces, and move those funds outside of Plaintiff's and the Court's reach." Pl.'s Reply at 5–6, *Marvel Tech. (China) Co. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 1:24-cv-05280 (N.D. Ill. Feb. 25, 2025), ECF No. 51; *see* Dkt. 42 at 12–13. The objections still offer no evidence. Filing and litigating this suit says nothing about whether OMZZ will have reachable U.S. assets when judgment issues.

Finally, OMZZ asks the Court to weigh the hardship evidence in the declaration of Yuan Xia (Dkt. 52). Obj. at 12–13. At the hearing, the Magistrate Judge limited any post-hearing declaration "only to the issue of security," Hr'g Tr. 110:14–25, and when OMZZ's counsel asked whether information that "speaks not just to the security but also the harms" would be "out of bounds," she said, "Correct. . . . That's what you needed to do for today already." *Id.* at 111:25–112:9. Counsel answered, "Understood." *Id.* at 112:8. The R&R enforced that ruling, R&R at 49 n.9, and used the declaration in full in setting security. *Id.* at 55–57. Although the Court can

exercise its discretion to receive further evidence, *Goffman*, 59 F.3d at 671, OMZZ gives no reason to receive as hardship evidence a declaration it was told it could not use for that purpose, after it obtained a longer schedule to gather exactly that evidence and filed none. R&R at 3–4. Doing so would invite parties to hold back evidence until after a magistrate judge rules.

The declaration would not change the balance anyway. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986); *Robert Bosch*, 659 F.3d at 1156. The injunction reaches only U.S. acts and only the Accused Products, and destroys no inventory. R&R at 50, 58–59. OMZZ's own proposed findings conceded that the $6,717.28 monthly storage figure applies only "once the inbound units are received." Dkt. 53 ¶ 28(d). At OMZZ's rates the 305 units in storage cost about $1,400 a month, Dkt. 54 at 6, and nothing in the order requires OMZZ to keep them there. The "nearly $300,000 in sunk manufacturing and freight costs" the objections cite, Obj. at 12, is not in the Xia declaration. The only $300,000 figure in the record is Everplay's description of the gap between OMZZ's profit estimate and the *retail value* of its inventory. Dkt. 54 at 2. Any provable loss is secured by the bond, and against it stands a small company's only product line and the season that produces most of its revenue. R&R at 49. Under the sliding scale, and given Everplay's strong merits showing, the balance favors an injunction. *Grubhub Inc. v. Relish Labs LLC*, 80 F.4th 835, 844 (7th Cir. 2023).

**D. Objection 4: The Scope of the Recommended Order Is Proper**

OMZZ itself proposed limiting any injunction to the Accused Products "and products not more than colorably different therefrom." Dkt. 53 ¶ 44. The recommended order reaches another product only if it is not more than colorably different *and* infringes claim 1. R&R at 58–59 (rec. ¶

2(a)(ii)). That is the form the Federal Circuit approves. *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A,"* 52 F.4th 934, 946 (Fed. Cir. 2022). It matters here because the Magistrate Judge asked what would stop OMZZ "from changing its packaging from a 24-pack to a 23-pack," and OMZZ's counsel answered only that its concern was "existing listings, not creating new listings." Hr'g Tr. 116:18–24. OMZZ already sells through more than one storefront. Obj. at 12. An order confined to two ASINs could be evaded with a new set size or listing, and OMZZ does not object to ¶ 2(d), which bars using any new "seller account, storefront, product listing, ASIN, brand name, or business entity" to do what the order prohibits. R&R at 59.

Nothing in the order is "self-executing." Obj. at 13. *TiVo* governs any contempt proceeding, and Everplay would need to prove both that a new product is not more than colorably different and that it infringes, and that analysis accounts for "the policy that legitimate design-around efforts should always be encouraged." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 882–83 (Fed. Cir. 2011) (en banc); R&R at 52–53.

The deactivation, notice and compliance terms are also proper. OMZZ admits that it lists the Accused Products, sets their prices and controls its listings. R&R at 7 (citing Dkt. 18 ¶ 44). Paragraph 3 requires deactivation of offers, not removal of inventory, and lets OMZZ "cause" Amazon to deactivate them. The twenty-four hours run from notice of an order that takes effect only after Everplay posts security and files notice, and OMZZ has known the terms since November 10. In the peak selling weeks, five more business days of infringing sales would be the very harm the injunction exists to prevent. Paragraph 4 already limits notice to persons acting "with respect to the Accused Products, including any distributor, importer, or order-fulfillment service holding inventory," the limit OMZZ requests. Obj. at 13-14. And ¶ 5(c) is not vague—OMZZ's declarant has already sworn to its U.S. warehouse and inbound units. Dkt. 52 ¶ 11.

### E. Objection 5: $200,000 Errs on the High Side

The amount of security "rests within the sound discretion of a trial court." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1385 (Fed. Cir. 2006). The R&R set it at the top of OMZZ's own sworn estimate of its lost net profit over the full life of the injunction—$160,000 to $200,000—a figure that likely overstates OMZZ's profit because it deducts neither advertising nor promotional discounts. R&R at 55–57. OMZZ told the Magistrate Judge that its figures "measure precisely the profit Plaintiffs stand to lose from a wrongful injunction." Dkt. 53 ¶ 43. Security at the top of that range does "err on the high side." *Mead Johnson & Co. v. Abbott Labs.*, 201 F.3d 883, 888 (7th Cir. 2000).

The other categories OMZZ invokes failed for want of evidence. OMZZ did not explain how it reached $500,000, did not say where the 1,280 inbound units are or whether they can be redirected, accrued no storage fees on units not yet received, and offered no cost of shipping the panels to another market. R&R at 54 n.11, 56. That such units were still in transit more than six weeks after Everplay moved for a preliminary injunction means OMZZ committed that inventory knowing the motion was pending, and costs already spent to make and ship inventory are not losses caused by an injunction. The units remain OMZZ's to sell outside the United States now,[2] or here if the injunction is eventually dissolved. The only evidence of potential loss that OMZZ offered was lost profit, which the R&R secured in full. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012) (affirming a bond amount in the absence of any additional evidence presented by the enjoined party).

[2] Indeed, OMZZ already sells these products in Canada. *See* https://www.amazon.ca/Deluxe-Magnetic-Fort-Building-Panels/dp/B0F1F8XFQ6/

### F. Typographical Clarification of the Recommended Order

In overruling OMZZ's objection and entering the preliminary injunction, Everplay respectfully requests that the Court correct three internal cross-references in the recommended language of the preliminary injunction:

- in ¶ 3 (R&R at 59), "Paragraph 3" should read "Paragraph 2";
- in ¶ 5(a) (R&R at 60), "Paragraph 5" should read "Paragraph 4";
- and in ¶ 5(b) (R&R at 60), "Paragraph 4" should read "Paragraph 3."

*See* Dkt. 51 at 41–42. These typographic errors were carried over from Everplay's proposed order through the renumbering of paragraphs. The order and R&R are otherwise correct and should be adopted and entered as soon as possible, given the ongoing harm to Everplay now that the holiday season is underway.

## IV. CONCLUSION

Everplay respectfully requests that the Court overrule OMZZ's objections (Dkt. 58), adopt the Report and Recommendation (Dkt. 56), grant Everplay's Motion for Preliminary Injunction (Dkt. 12), and enter the recommended preliminary injunction (Dkt. 56 at 57–60) with the three cross-reference corrections set out above, as promptly as the Court's schedule allows.

Dated: November 17, 2026

POLSINELLI PC

/s/Mark T. Deming
Mark T. Deming, Ill. Bar No. 6299631
POLSINELLI PC
150 N. Riverside Plaza, Suite 3000
Chicago, IL 60606
(312) 819-1900
mdeming@polsinelli.com

M. Lawrence Oliverio
*(pro hac vice)*

POLSINELLI PC
One International Place, Suite 3900
Boston, MA 02110
(617) 406-0335
loliverio@polsinelli.com

Andrew Z. Weaver
*(pro hac vice)*
POLSINELLI PC
1000 Louisiana Street
Suite 6400
Houston, TX 77002
(713) 374-1600
aweaver@polsinelli.com

*Attorneys for Everplay Labs Limited.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure and Local Rule 5.9.

/s/Mark Deming